# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAP AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> VALTRUS INNOVATIONS LIMITED, <br><br> Defendant. | Civil Action No. _____ <br><br> **JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

Plaintiff SAP America Inc. ("SAP"), based on personal knowledge as to all acts or events that it has undertaken or witnessed, and upon information and belief as to all others, files this Original Complaint against Defendant Valtrus Innovations Limited ("Valtrus") and alleges as follows:

## NATURE OF THE ACTION

1. This action by SAP (1) seeks a determination that it does not infringe any enforceable claim of U.S. Patent Nos. 8,166,173 (the "'173 Patent"), 7,672,929 (the "'929 Patent"), 6,889,244 (the "'244 Patent"), 7,251,588 (the "'588 Patent"), 6,850,866 (the "'866 Patent"), and 9,229,984 (the "'984 Patent") (collectively, the "Patents-in-Suit"), and (2) seeks a determination that Valtrus has violated the Delaware Consumer Fraud Act.

## PARTIES & BACKGROUND

2. Plaintiff SAP America, Inc. is a Delaware corporation, with a principal address of 3999 West Chester Pike Newtown Square, Pennsylvania 19073. SAP America, Inc. is a wholly owned subsidiary of SAP SE and is contractually tasked with acting as the sole entity licensing SAP SE products in the United States.

3. Upon information and belief, Defendant Valtrus Innovations Limited is an Irish company, located at the Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

4. As represented by Valtrus, it is "the owner of an extensive portfolio of patents originating from Hewlett Packard Enterprise Company [HPE]. Valtrus' portfolio covers a range of products and technologies including servers, cloud and data centre management, memory, processors, WLAN, network analytics, power and many more related technologies. The portfolio includes patents whose use are ubiquitous in these areas. Valtrus is focused on licensing these patents to established players and new entrants in the applicable markets." (*See* https://www.valtrusinnovations.ie/).

5. Upon information and belief, Defendant Valtrus is the owner by assignment of the '173 Patent, which is entitled "Inviting Assistant Entity into a Network Communication Session." A true and correct copy of the '173 Patent is attached as Exhibit A.

6. Upon information and belief, Defendant Valtrus is the owner by assignment of the '929 Patent, which is entitled "Database Modification History." A true and correct copy of the '929 Patent is attached as Exhibit B.

7. Upon information and belief, Defendant Valtrus is the owner by assignment of the '244 Patent, which is entitled "Method and Apparatus for Passing Messages Using Fault Tolerant Storage System." A true and correct copy of the '244 Patent is attached as Exhibit C.

8. Upon information and belief, Defendant Valtrus is the owner by assignment of the '588 Patent, which is entitled "System for Metric Introspection in Monitoring Sources." A true and correct copy of the '588 Patent is attached as Exhibit D.

9. Upon information and belief, Defendant Valtrus is the owner by assignment of the '866 Patent, which is entitled "Managing Performance Metrics Describing a Relationship Between a Provider and a Client."  A true and correct copy of the '866 Patent is attached as Exhibit E.

10. Upon information and belief, Defendant Valtrus is the owner by assignment of the '984 Patent, which is entitled "Parameter Expressions for Modeling User Defined Function Execution in Analytical Data Processing Systems."  A true and correct copy of the '984 Patent is attached as Exhibit F.

11. Upon information and belief, Valtrus obtained its rights and interest to the Patents-in-Suit for some unknown consideration as part of an agreement or set of agreements between Valtrus and HPE.

12. Thereafter, on March 4, 2022, Valtrus sent SAP SE a letter asserting that "[Valtrus'] preliminary analysis reveals that SAP is currently making, using, selling, or offering for sale products and services that infringe (directly or indirectly) one or more of the Valtrus patents." (Ex. G).  In its March 4, 2022 letter, Valtrus included an exemplary list of SAP's products that allegedly infringe Valtrus' patents. (*Id.*)  On September 7, 2022, Valtrus sent SAP SE another letter again contending, "[a]t this time, our preliminary analysis reveals that SAP is currently making, using, selling, or offering for sale product and services that infringe (directly or indirectly) the Valtrus patents in the attached Table 1 shown with an exemplary of products and services that infringe one or more of its claims." (Ex. H).  Thereafter, on October 6, 2022, and November 1, 2022, Valtrus made presentations to SAP regarding a list of SAP products that allegedly infringed Valtrus' patents (including the Patents-in-Suit), the valuation of Valtrus' patent portfolio, an offer to license the Valtrus-patent portfolio, and next steps to discuss Valtrus' purported infringement claim charts. Throughout 2023 and into January 2024, SAP and Valtrus engaged in additional conversations in

which Valtrus identified SAP products that Valtrus alleges infringes its patents, including the Patents-in-Suit.

13. During those conversations throughout 2023 and into 2024, Valtrus concealed the nature of its agreements with HPE, including the consideration exchanged for the portfolio of patents obtained from HPE, including the Patents-in-Suit.

14. Upon information and belief, Valtrus has also licensed the portfolio obtained from HPE, including the Patents-in-Suit to numerous companies. Valtrus, however, also concealed the nature of its licensing agreements with these licensees during its conversations with SAP.

15. Rather, upon information and belief, Valtrus has an established practice of concealing any consideration related to its patent portfolio from the prospective licensees with which it engages, such as SAP. By doing so, Valtrus hides the actual market value of its patents to extract licensing fees that far exceed that market value and are instead based on (1) the overall size or revenue of a licensing target, or (2) the avoidance of litigation expenses--neither of which is a valuation method for United States patent rights as recognized by any Court in the United States.

## JURISDICTION

16. This Court has subject matter jurisdiction over SAP's claims for declaratory judgment and the Delaware Consumer Fraud Act under 28 U.S.C. § 1331, 1332, 1338(a) and/or § 1367, and 2201-02.

17. To the extent necessary, the amount in controversy exceeds $75,000.

18. Upon information and belief, Valtrus claims to own all rights, title, and interest in the Patents-in-Suit and claims to possess all rights of recovery.

19. Upon information and belief, an actual and justiciable controversy exists between SAP and Valtrus regarding whether SAP's products infringe the Patents-in-Suit as set forth above in paragraph 12.

20. Upon information and belief, this Court has personal jurisdiction over Valtrus in this action. Personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2) because (1) this case relates to Valtrus' assertions of patent infringement and therefore arises under federal law; (2) Valtrus is an Irish corporation and lacks sufficient contacts with any state; and (3) Valtrus has sufficient contacts with the United States as a whole, directing its patent enforcement efforts toward various U.S. entities. For example, Valtrus has availed itself of various courts in the United States, asserting various claims for patent infringement. *See Valtrus Innovations Ltd v. Google LLC*, No. 3:22-cv-00066 (N.D. Tex. Jan. 10, 2022); *see also Valtrus Innovations Ltd. v. Google LLC*, No. 4:22-cv-00020 (N.D. Tex. Jan. 10, 2022); *see also Valtrus Innovations Limited v. AT&T Inc.*, No. 2:23-cv-00443-JRG (E.D. Tex. Sept. 27, 2023); *see also Valtrus Innovations Limited v. T-Mobile USA, Inc.*, No. 2:23-cv-00444-JRG (E.D. Tex. Sept. 27, 2023); *see also Valtrus Innovations Limited v. Verizon Commc'ns Inc.*, No. 2:23-cv-00445-JRG (E.D. Tex. Sept. 27, 2023). Upon information and belief, personal jurisdiction is also proper within this District because Valtrus purposefully availed itself of the privilege of doing business in Delaware by negotiating and licensing its patents to companies that are incorporated in Delaware and/or registered to do and currently conducting business in Delaware. Upon information and belief, personal jurisdiction is also proper within this District because Valtrus has purposefully availed itself of the privilege of doing business in Delaware directly or indirectly through its parent corporation, Key Patent Innovations, Ltd., agent, Patent Platform Services LLC, and/or other subsidiaries or agents; maintains pervasive, continuous, and systematic contacts with the State of Delaware through its

parent corporation, Key Patent Innovations, Ltd., agent, Patent Platform Services LLC, and/or other subsidiaries or agents; and conducts business in this District pertaining to the Patents-in-Suit, including but limited to efforts to license or enforce the Patents-in-Suit through its parent corporation, Key Patent Innovations, Ltd., agent, Patent Platform Services LLC, and/or other subsidiaries or agents.

21.     Venue is proper in this District under 28 U.S.C. § 1391(c) and 1400(b) because, among other reasons, Valtrus is a foreign company and as such may be sued in any judicial district in the United States in which Valtrus is subject to the Court's personal jurisdiction; Valtrus has conducted business in this District; or a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## COUNT I
## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT

22.     SAP incorporates and realleges the foregoing paragraphs.

23.     The Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528, protects against unlawful practices in, among other things, the advertisement of goods, intangibles, and/or services. Under the Consumer Fraud Act, advertisement includes any attempt by publication, dissemination, solicitation, and/or circulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in such goods, intangibles, and/or services. As defined in Section 2513 of the Delaware Consumer Fraud Act, unlawful practices include any deception, fraud, false pretense, false promise, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission.

24.     In its correspondence and communications with SAP beginning on or around March 4, 2022—and including without limitation letters dated September 7, 2022; presentations dated October 6, 2022 and November 1, 2022; and communications through October 18, 2023—Valtrus

attempted by publication, dissemination, solicitation, and/or circulation to induce SAP to take a license to all or some of what Valtrus characterized as an "extensive portfolio of patents." For instance, in both its March 4, 2022 and September 7, 2022 letters, Valtrus represented its "intention to allow SAP to continue its use of these patents through a license from Valtrus" and informed SAP that Valtrus had "licensing terms" to discuss.

25. In conflict with these representations, and based on deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and/or concealment, suppression, or omission of material facts with intent that SAP rely upon such concealment, suppression, or omission, Valtrus did not have and never had reasonable, good-faith licensing terms to discuss with SAP. The only terms Valtrus presented to SAP did not attempt to reflect the value of the patents Valtrus identified based on any recognized form of valuation.  For example, Valtrus' terms did not reflect the incremental value of patents Valtrus identified to the exemplary SAP products Valtrus identified— or to any other SAP products.  In addition, Valtrus' terms did not reflect the incremental value of the identified patents as compared to the market value of the Valtrus portfolio as reflected in Valtrus' agreements with HPE or Valtrus' licensees, including, upon information and belief, licensees that are Delaware corporations and/or licenses obtained with the assistance of a Delaware licensing agent.  To the extent Valtrus attempted to tie the terms it presented to SAP to benchmark licenses from previous licensees of some or all of the patents in Valtrus' portfolio, upon information and belief, such licenses were not comparable because *inter alia* they related to different companies, with different patents at issue, in different industry segments, with different accused products, different extent and duration of use, and/or different facts and circumstances. Valtrus' own March 4, 2022 letter states that "Valtrus' portfolio covers a range of products and technologies including communication devices such as personal computers, tablets and

smartphones, networking devices, memory, processors, WLAN, network analytics, power and many more related technologies." Valtrus has not provided SAP with access to either its (1) agreement(s) with HPE or (2) any of purported benchmark license from a prior licensee. Rather, upon information and belief, Valtrus' licensing terms to SAP were deceptively, fraudulently, and unfairly based on (1) SAP's overall size or revenue, or (2) the avoidance of litigation expenses.

26. As a direct and proximate result of Valtrus' conduct in violation of the Delaware Consumer Fraud Act, SAP has suffered and will continue to suffer material harm, including without limitation the accrual of legal fees, expenses, and time to investigate, respond to, and defend against Valtrus' claims.

## COUNT II
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '173 PATENT

27. SAP incorporates and realleges the foregoing paragraphs.

28. Based on Valtrus' allegations that SAP infringes the '173 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '173 Patent.

29. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '173 Patent, at least because the SAP Service Cloud does not employ, incorporate, or otherwise make use of all the limitations of the '173 Patent's claims.

30. For example, claim 1 requires an "assistant entity" that is selected "from a group of assistant entities based upon the determined context of the existing communication session." But the SAP Service Cloud does not include the required "assistant entity" that is chosen based on "the determined context." Instead, an SAP bot is triggered whenever a customer searches on the

website—not based on any "determined context." Thus, the SAP Service Cloud does not meet the limitations of at least claim 1.

31. As another example, claim 1 requires a "service system" that determines the "context of the existing communication session based upon context data concerning the existing communication session." To the extent that Valtrus successfully argues that the SAP bot is the required "assistant entity"—disputed in paragraph 30—the SAP bot then cannot concurrently be the required "service system" that determines context of the communication session. Thus, the SAP Service Cloud does not meet the limitations of at least claim 1.

32. For at least these reasons, the SAP Service Cloud does not infringe the '173 Patent.

33. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '173 Patent.

## COUNT III
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '929 PATENT

34. SAP incorporates and realleges the foregoing paragraphs.

35. Based on Valtrus' allegations that SAP infringes the '929 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '929 Patent.

36. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '929 Patent, at least because the SAP HANA system does not employ, incorporate, or otherwise make use of all the limitations of the '929 Patent's claims.

37. For example, claim 1 requires that a system "determin[es] whether the database access command caused a change to the database." But the SAP HANA system does not make any such determination. Instead, SAP HANA triggers system replication without any determination step. Thus, the SAP HANA does not meet the limitations of at least claim 1.

38. For at least these reasons, the SAP HANA system does not infringe the '929 Patent.

39. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '929 Patent.

## COUNT IV
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '244 PATENT

40. SAP incorporates and realleges the foregoing paragraphs.

41. Based on Valtrus' allegations that SAP infringes the '244 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '244 Patent.

42. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '244 Patent, at least because the SAP Integration Suite does not employ, incorporate, or otherwise make use of all the limitations of the '244 Patent's claims.

43. For example, claim 1 requires that "a fault tolerant storage system (FTSS)" is used for "transmitting" and "storing" messages. But the SAP Integration Suite's Cloud Integration does not store data and messages prior to transmission. Thus, the SAP Integration Suite does not meet the limitations of at least claim 1.

44. For at least these reasons, the SAP Integration Suite does not infringe the '244 Patent.

45. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '244 Patent.

## COUNT V
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '588 PATENT

46. SAP incorporates and realleges the foregoing paragraphs.

47. Based on Valtrus' allegations that SAP infringes the '588 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '588 Patent.

48. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '588 Patent, at least because the SAP Solution Manager does not employ, incorporate, or otherwise make use of all the limitations of the '588 Patent's claims.

49. For example, claim 13 requires a "monitoring tool processing the monitoring data based at least in part on the corresponding metric definitions." But the SAP Solutions Manager's Event Calculation Engine does not process monitoring data using "the corresponding metric definitions" but instead by using configuration settings set up in the alerting directory. Thus, the SAP Solution Manager does not meet the limitations of at least claim 13.

50. For at least these reasons, the SAP Solution Manager does not infringe the '588 Patent.

51. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '588 Patent.

## COUNT VI
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '866 PATENT

52. SAP incorporates and realleges the foregoing paragraphs.

53. Based on Valtrus' allegations that SAP infringes the '866 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '866 Patent.

54. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '866 Patent, at least because the SAP Solution Manager does not employ, incorporate, or otherwise make use of all the limitations of the '866 Patent's claims.

55. For example, claim 1 requires a process of "evaluating the performance of the service." But the SAP Solution Manager is not directed to the performance of services but rather to the monitoring of technical components of a system. Thus, the SAP Solution Manager does not meet the limitations of at least claim 1.

56. For at least these reasons, the SAP Solution Manager does not infringe the '866 Patent.

57. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of

infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '866 Patent.

## COUNT VII
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '984 PATENT

58. SAP incorporates and realleges the foregoing paragraphs.

59. Based on Valtrus' allegations that SAP infringes the '984 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '984 Patent.

60. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '984 Patent, at least because the SAP HANA System does not employ, incorporate, or otherwise make use of all the limitations of the '984 Patent's claims.

61. For example, claim 1 requires "a user defined function" that includes both "an input expression" and "a parameter expression." But the SAP HANA system does not include user defined functions with both an input and parameter expression. Instead, the HANA system's user defined functions only include input expressions. Thus, the SAP HANA system does not meet the limitations of at least claim 1.

62. For at least these reasons, the SAP HANA system does not infringe the '984 Patent. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '984 Patent.

## JURY DEMAND

63. SAP hereby demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, SAP asks this Court to enter judgment in SAP's favor and against Valtrus by granting the following relief:

a) a declaration that SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any enforceable claim of the Patents-in-Suit;

b) a determination that Valtrus has violated the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

c) a judgment against Valtrus' for the amount of damages that SAP proves at trial;

d) a permanent injunction restraining Valtrus, and its respective officers, agents, servants, employees, attorneys, and any other persons acting on their behalf or in concert with them, from (a) charging or threatening, orally or in writing, that the Patents-in-Suit have been infringed by SAP under any subsection of 35 U.S.C. § 271 and/or (b) engaging in any additional related unlawful practices in violation of the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

e) a finding based upon 35 U.S.C. § 285 that Valtrus' continued enforcement of the Patents-in-Suit is exceptional; and

f) an award to SAP of its reasonable attorneys' fees, costs, and all interest, and

g) any such other and further relief as the Court finds just and proper.

| | |
|---|---|
| Dated: January 15, 2024 | Respectfully submitted, |
| | |
| | /s/ Monté T. Squire |
| **OF COUNSEL:** | Monté T. Squire (No. 4764) |
| | 1201 N. Market Street, Suite 501 |
| Aleksander J. Goranin (*pro hac* forthcoming) | Wilmington, DE  19801 |
| | Telephone:  (302) 657-4900 |
| **DUANE MORRIS LLP** | mtsquire@duanemorris.com |
| 30 South 17th Street | |
| Philadelphia, PA  19103-4196 | *Counsel for SAP America, Inc.* |
| Telephone:  (215) 979-1000 | |
| agoranin@duanemorris.com | |

Thomas M. Melsheimer (*pro hac* forthcoming)
Michael A. Bittner (*pro hac* forthcoming)
**WINSTON & STRAWN, LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX  75201
Telephone: (214) 453-6500
tmelsheimer@winston.com
Mbittner@winston.com

15