# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAP AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>VALTRUS INNOVATIONS LIMITED, and PATENT PLATFORM SERVICES, LLC<br><br>Defendant. | Civil Action No. 1:24-cv-00054-GBW<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff SAP America Inc. ("SAP"), based on personal knowledge as to all acts or events that it has undertaken or witnessed, and upon information and belief as to all others, files this First Amended Complaint against Defendant Valtrus Innovations Limited ("Valtrus") and Patent Platform Services, LLC ("PPS") (collectively with Valtrus, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This action by SAP (1) seeks a determination that Defendants have violated the Delaware Consumer Fraud Act; (2) seeks a determination that Defendants have conspired to violate the Delaware Consumer Fraud Act; (3) seeks a determination that PPS knowingly and substantially assisted Valtrus to violate the Delaware Consumer Fraud Act, and (4) seeks a determination that SAP does not infringe any enforceable claim of U.S. Patent Nos. 8,166,173 (the "'173 Patent"), 7,672,929 (the "'929 Patent"), 6,889,244 (the "'244 Patent"), 7,251,588 (the "'588 Patent"), 6,850,866 (the "'866 Patent"), and 9,229,984 (the "'984 Patent") (collectively, the "Patents-in-Suit").

## PARTIES & BACKGROUND

2. Plaintiff SAP America, Inc. is a Delaware corporation, with a principal address of 3999 West Chester Pike, Newtown Square, Pennsylvania 19073. SAP America, Inc. is a wholly owned subsidiary of SAP SE and is contractually tasked with acting as the sole entity licensing SAP SE products in the United States.

3. Upon information and belief, Defendant Valtrus Innovations Limited is an Irish company, located at the Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

4. Upon information and belief, Defendant Patent Platform Services, LLC is organized in Delaware with its principal place of business at 7460 Warren Parkway, Suite 100, Frisco, Texas 75034.

5. As represented by Valtrus, it is "the owner of an extensive portfolio of patents originating from Hewlett Packard Enterprise Company [HPE]. Valtrus'[s] portfolio covers a range of products and technologies including servers, cloud and data centre management, memory, processors, WLAN, network analytics, power and many more related technologies. The portfolio includes patents whose use are ubiquitous in these areas. Valtrus is focused on licensing these patents to established players and new entrants in the applicable markets." (*See* https://www.valtrusinnovations.ie/).

6. On its website, PPS represents that it "is a premier provider of intellectual property licensing and consulting services including" but not limited to "[n]egotiation and closing of licensing deals[;] [p]atent asset management[;] [p]atent portfolio mining and licensing program development; [and] [m]anagement of strategic patent prosecution and litigation programs." (*See* https://www.patentplatformservices.com/about). PPS provides these services on behalf of

Defendant Valtrus, among other clients. (*See* https://www.patentplatformservices.com/our-clients).

7. Upon information and belief, Valtrus is the owner by assignment of the '173 Patent, which is entitled "Inviting Assistant Entity into a Network Communication Session."  A true and correct copy of the '173 Patent is attached as Exhibit A.

8. Upon information and belief, Valtrus is the owner by assignment of the '929 Patent, which is entitled "Database Modification History."  A true and correct copy of the '929 Patent is attached as Exhibit B.

9. Upon information and belief, Valtrus is the owner by assignment of the '244 Patent, which is entitled "Method and Apparatus for Passing Messages Using Fault Tolerant Storage System."  A true and correct copy of the '244 Patent is attached as Exhibit C.

10. Upon information and belief, Valtrus is the owner by assignment of the '588 Patent, which is entitled "System for Metric Introspection in Monitoring Sources."  A true and correct copy of the '588 Patent is attached as Exhibit D.

11. Upon information and belief, Valtrus is the owner by assignment of the '866 Patent, which is entitled "Managing Performance Metrics Describing a Relationship Between a Provider and a Client."  A true and correct copy of the '866 Patent is attached as Exhibit E.

12. Upon information and belief, Valtrus is the owner by assignment of the '984 Patent, which is entitled "Parameter Expressions for Modeling User Defined Function Execution in Analytical Data Processing Systems."  A true and correct copy of the '984 Patent is attached as Exhibit F.

13. Upon information and belief, Valtrus obtained its rights and interest to the Patents-in-Suit for some unknown consideration as part of an agreement or set of agreements between Valtrus and HPE.

14. Thereafter, on March 4, 2022, Defendants sent SAP SE a letter asserting that "[Valtrus's] preliminary analysis reveals that SAP is currently making, using, selling, or offering for sale products and services that infringe (directly or indirectly) one or more of the Valtrus patents." (Ex. G). In its March 4, 2022 letter, Defendants included an exemplary list of SAP's products that allegedly infringe Valtrus's patents. (*Id.*) On September 7, 2022, Defendants sent SAP SE another letter again contending, "[a]t this time, our preliminary analysis reveals that SAP is currently making, using, selling, or offering for sale product and services that infringe (directly or indirectly) the Valtrus patents in the attached Table 1 shown with an exemplary of products and services that infringe one or more of its claims." (Ex. H). Thereafter, on October 6, 2022, and November 1, 2022, Defendants made presentations to SAP regarding a list of SAP products that allegedly infringed Valtrus's patents (including the Patents-in-Suit), the valuation of Valtrus's patent portfolio, an offer to license the Valtrus-patent portfolio, and next steps to discuss Valtrus's purported infringement claim charts. Throughout 2023 and into January 2024, SAP and Defendants engaged in additional conversations in which Defendants identified SAP products that they allege infringe Valtrus's patents, including the Patents-in-Suit.

15. Upon information and belief, PPS acted as Valtrus's licensing agent throughout 2023 and into January 2024. PPS communicated on behalf of Valtrus with SAP discussing various matters, including, but not limited to, infringement and invalidity of Valtrus's patent portfolio including the Patents-in-Suit, valuation of Valtrus's patent portfolio including the Patents-in-Suit, and offers to license Valtrus's patent portfolio including the Patents-in-Suit. Upon information and

belief, PPS has a financial interest in Valtrus's licensing revenue relating to the Patents-in-Suit and Valtrus's broader portfolio.

16. During those conversations throughout 2023 and into 2024, Defendants concealed the nature of Valtrus's agreements with HPE, including the consideration exchanged for the portfolio of patents obtained from HPE, including the Patents-in-Suit.

17. Upon information and belief, Defendants licensed the portfolio obtained from HPE, including the Patents-in-Suit, to numerous companies. Defendants, however, also concealed the full nature of these licensing agreements with these licensees during their conversations with SAP. Upon information and belief, the limited information that Defendants supplied to SAP about their licensing agreements was inaccurate and misleading.

18. Rather, upon information and belief, Defendants have an established practice of concealing any consideration related to the subject patent portfolios from the prospective licensees with which they engage, such as SAP. By doing so, Defendants hide the actual market value of the patents under discussion to extract licensing fees that far exceed that market value and are instead based on (1) the overall size or revenue of a licensing target, or (2) the avoidance of litigation expenses—neither of which is an appropriate valuation method for U.S. patent rights as recognized by any court in the United States.

19. Upon information and belief, prior to Valtrus's acquisition of the HPE portfolio patents, HPE offered groups of those patents—including those patents specifically identified as allegedly relevant to SAP—to other potential purchasers for amounts far less (even orders of magnitude less) than Defendants' licensing demands to SAP.

20. In addition, while Defendants only identified a small subset of patents within its portfolio that could allegedly implicate SAP products and offerings, Defendants nonetheless only

offered and would only discuss a portfolio-wide license, which necessarily includes patents as to which Valtrus lacks a good faith basis to allege infringement by SAP and for which SAP need not take a license.

21. To provide additional time for Defendants to identify patents in Valtrus's portfolio on which Valtrus might have a good faith basis to allege infringement and to provide Defendants additional time to make reasonable licensing demands, SAP and Valtrus negotiated and entered into a standstill agreement dated October 18, 2023. As part of those negotiations, SAP requested that the parties agree to exclude from any future dispute plainly improper or inconvenient venues, and rather agree that any future suit be bought in venues where both parties had active litigation. Valtrus refused.

22. Upon expiration of the standstill agreement, Valtrus sued SAP in the Eastern District of Texas—an inconvenient venue unconnected to any SAP product allegedly at issue in the parties' discussions. Valtrus's Texas complaint alleges infringement of seven patents within the Valtrus portfolio. For the majority of those patents (six of seven), Valtrus, either directly or through PPS, had never specifically identified its basis for infringement nor had Defendants ever identified any SAP products potentially implicated by those patents in any of the parties' more than year long pre-suit discussions.

## JURISDICTION

23. This Court has subject matter jurisdiction over SAP's claims for declaratory judgment and the Delaware Consumer Fraud Act under 28 U.S.C. § 1331, 1332, 1338(a) and/or § 1367, and 2201-02.

24. To the extent necessary, the amount in controversy exceeds $75,000.

25. Upon information and belief, Valtrus claims to own all rights, title, and interest in the Patents-in-Suit and claims to possess all rights of recovery.

26.     Upon information and belief, an actual and justiciable controversy exists between SAP and Defendants regarding whether SAP's products infringe the Patents-in-Suit as set forth herein.

27.     Upon information and belief, an actual and justiciable controversy exists between SAP and Defendants regarding whether Defendants have violated the Delaware Consumer Fraud Act as set forth herein

28.     Upon information and belief, an actual and justiciable controversy exists between SAP and Defendants regarding whether Defendants engaged in civil conspiracy to violate the Delaware Consumer Fraud Act as set forth herein.

29.     Upon information and belief, an actual and justiciable controversy exists between SAP and PPS regarding whether PPS aided and abetted Valtrus in violating the Delaware Consumer Fraud Act as set forth above herein.

30.     Upon information and belief, this Court has personal jurisdiction over Valtrus in this action. Personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2) because (1) this case relates to Valtrus's assertions of patent infringement and therefore arises under federal law; (2) Valtrus is an Irish corporation and lacks sufficient contacts with any state; and (3) Valtrus has sufficient contacts with the United States as a whole, directing its patent enforcement efforts toward various U.S. entities. For example, Valtrus has availed itself of various courts in the United States, asserting various claims for patent infringement. *See Valtrus Innovations Ltd v. Google LLC*, No. 3:22-cv-00066 (N.D. Tex. Jan. 10, 2022); *see also Valtrus Innovations Ltd. v. Google LLC*, No. 4:22-cv-00020 (N.D. Tex. Jan. 10, 2022); *see also Valtrus Innovations Limited v. AT&T Inc.*, No. 2:23-cv-00443-JRG (E.D. Tex. Sept. 27, 2023); *see also Valtrus Innovations Limited v. T-Mobile USA, Inc.*, No. 2:23-cv-00444-JRG (E.D. Tex. Sept. 27, 2023); *see also Valtrus*

*Innovations Limited v. Verizon Commc'ns Inc.*, No. 2:23-cv-00445-JRG (E.D. Tex. Sept. 27, 2023). Upon information and belief, personal jurisdiction is also proper within this District because Valtrus purposefully availed itself of the privilege of doing business in Delaware by negotiating and licensing its patents to companies that are incorporated in Delaware and/or registered to do and currently conducting business in Delaware. Upon information and belief, personal jurisdiction is also proper within this District because Valtrus has purposefully availed itself of the privilege of doing business in Delaware directly or indirectly through its parent corporation, Key Patent Innovations, Ltd., agent, PPS, and/or other subsidiaries or agents; maintains pervasive, continuous, and systematic contacts with the State of Delaware through its parent corporation, Key Patent Innovations, Ltd., agent, PPS, and/or other subsidiaries or agents; and conducts business in this District pertaining to the Patents-in-Suit, including but limited to efforts to license or enforce the Patents-in-Suit through its parent corporation, Key Patent Innovations, Ltd., agent, PPS, and/or other subsidiaries or agents.

31. This Court has personal jurisdiction over PPS, an LLC organized and existing under the laws of the State of Delaware. Upon information and belief, personal jurisdiction is also proper within this District because PPS purposefully availed itself of the privilege of doing business in Delaware by negotiating and licensing on behalf of Valtrus to companies that are incorporated in Delaware and/or registered to do and currently conducting business in Delaware. Upon information and belief, personal jurisdiction is also proper within this District because PPS has purposefully availed itself of the privilege of doing business in Delaware directly or indirectly; maintains pervasive, continuous, and systematic contacts with the State of Delaware; and conducts business in this District pertaining to the Patents-in-Suit, including but limited to efforts to license or enforce the Patents-in-Suit on behalf of Valtrus.

32. Venue is proper in this District under 28 U.S.C. § 1391(c) and 1400(b) because, among other reasons, Valtrus is a foreign company and as such may be sued in any judicial district in the United States in which Valtrus is subject to the Court's personal jurisdiction; Valtrus has conducted business in this District; or a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

33. Venue is proper in this District under 28 U.S.C. § 1391(b)–(c) because, among other reasons, PPS is subject to personal jurisdiction in this District; PPS has conducted business in this District; or a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## COUNT I
## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
## (AGAINST ALL DEFENDANTS)

34. SAP incorporates and realleges the foregoing paragraphs.

35. The Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528, protects against unlawful practices in, among other things, the advertisement of goods, intangibles, and/or services. Under the Consumer Fraud Act, advertisement includes any attempt by publication, dissemination, solicitation, and/or circulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in such goods, intangibles, and/or services. As defined in Section 2513 of the Delaware Consumer Fraud Act, unlawful practices include any deception, fraud, false pretense, false promise, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission.

36. In its correspondence and communications with SAP beginning on or around March 4, 2022—and including without limitation letters dated September 7, 2022; presentations dated October 6, 2022 and November 1, 2022; and communications through October 18, 2023—

Defendants attempted by publication, dissemination, solicitation, and/or circulation to induce SAP to take a license to all or some of what Defendants characterized as an "extensive portfolio of patents." For instance, in both its March 4, 2022 and September 7, 2022 letters, Defendants represented their "intention to allow SAP to continue its use of these patents through a license from Valtrus" and informed SAP that Defendants had "licensing terms" to discuss.

37. In conflict with these representations, and based on deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and/or concealment, suppression, or omission of material facts with intent that SAP rely upon such concealment, suppression, or omission, Defendants did not have and never had reasonable, good-faith licensing terms to discuss with SAP. The only terms Defendants presented to SAP did not attempt to reflect the value of the patents Defendants identified based on any recognized form of valuation. For example, Defendants' terms did not reflect the incremental value of patents that they identified to the exemplary SAP products they identified—or to any other SAP products. In addition, Defendants' terms did not reflect the incremental value of the identified patents as compared to the market value of the Valtrus portfolio as reflected in Valtrus's agreements with HPE or Valtrus's licensees, including, upon information and belief, licensees that are Delaware corporations and/or licenses obtained with the assistance of a Delaware licensing agent. To the extent Defendants attempted to tie the terms they presented to SAP to benchmark licenses from previous licensees of some or all of the patents in Valtrus's portfolio, upon information and belief, such licenses were not comparable because *inter alia* they related to different companies, with different patents at issue, in different industry segments, with different accused products, different extent and duration of use, and/or different facts and circumstances. Defendants' own March 4, 2022 letter states that "Valtrus's portfolio covers a range of products and technologies including communication devices such as personal computers, tablets

and smartphones, networking devices, memory, processors, WLAN, network analytics, power and many more related technologies." In addition, while Defendants only identified a small subset of patents within Valtrus's portfolio that could allegedly implicate SAP products and offerings, Defendants nonetheless offered only a portfolio-wide license, which necessarily includes patents on which Valtrus lacks a good faith basis to allege infringement by SAP and for which SAP need not take a license. Defendants have also not provided SAP with access to either (1) Valtrus's agreement(s) with HPE or (2) any purported benchmark license from a prior licensee. Rather, upon information and belief, Defendants' licensing terms to SAP were deceptively, fraudulently, and unfairly based on (1) SAP's overall size or revenue, (2) the avoidance of litigation expenses, and (3) exceeded amounts for which the patents had been offered prior to their acquisition by Valtrus.

38. As a direct and proximate result of Defendants' conduct in violation of the Delaware Consumer Fraud Act, SAP has suffered and will continue to suffer material harm, including without limitation the accrual of legal fees, expenses, and time to investigate, respond to, and defend against Defendants claims.

## COUNT II
## CIVIL CONSPIRACY
## (AGAINST ALL DEFENDANTS)

39. SAP incorporates and realleges the foregoing paragraphs.

40. Civil conspiracy prohibits agreements between two or more entities to commit an unlawful act, such as a statutory violation.

41. Valtrus and PPS, willfully and knowingly combine, conspire, and agree together to violate the Delaware Consumer Fraud Act.

11

42. Upon information and belief, PPS conducts intellectual property licensing and consulting services including, but not limited to, negotiation of licensing deals, patent asset management, patent portfolio mining and licensing program development, and management of strategic patent prosecution and litigation programs on behalf of Valtrus.

43. Upon information and belief, PPS combined, agreed, and/or conspired with Valtrus to communicate, negotiate, analyze infringement and invalidity of Valtrus's patent portfolio including the Patents-in-Suit, and/or offer to license Valtrus's patent portfolio including the Patents-in-Suit, by failing to provide SAP with reasonable, good-faith licensing terms in violation of the Delaware Consumer Fraud Act as detailed in paragraphs 34–38.

44. As a direct and proximate result of Defendants' conduct in violation of the Delaware Consumer Fraud Act and Defendants' conduct to conspire violating the Delaware Consumer Fraud Act, SAP has suffered and will continue to suffer material harm, including without limitation the accrual of economic damages, legal fees, expenses, and time to investigate, respond to, and defend against Valtrus's claims.

## COUNT III
## AIDING AND ABETTING
### (AGAINST PPS)

45. SAP incorporates and realleges the foregoing paragraphs.

46. Aiding and abetting precludes an entity from knowingly and substantially assisting another to commit an unlaw fact, such as a statutory violation.

47. PPS knowingly and substantially assisted Valtrus to violate the Delaware Consumer Fraud Act by way of Valtrus's conduct, actions, communications, negotiations, infringement and invalidity analyses, and/or offers to license Valtrus's patent portfolio, including

the Patents-in-Suit, by failing to provide SAP with reasonable, good-faith licensing terms in violation of the Delaware Consumer Fraud Act as detailed in paragraphs 34–38.

48. As a direct and proximate result of Valtrus's conduct in violation of the Delaware Consumer Fraud Act and PPS's conduct to knowingly and substantially assist Valtrus in violating the Delaware Consumer Fraud Act, SAP has suffered and will continue to suffer material harm, including without limitation the accrual of economic damages, legal fees, expenses, and time to investigate, respond to, and defend against Valtrus's claims.

## COUNT IV
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '173 PATENT

49. SAP incorporates and realleges the foregoing paragraphs.

50. Based on Valtrus's allegations that SAP infringes the '173 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '173 Patent.

51. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '173 Patent, at least because the SAP Service Cloud does not employ, incorporate, or otherwise make use of all the limitations of the '173 Patent's claims.

52. For example, claim 1 requires an "assistant entity" that is selected "from a group of assistant entities based upon the determined context of the existing communication session." But the SAP Service Cloud does not include the required "assistant entity" that is chosen based on "the determined context." Instead, an SAP bot is triggered whenever a customer searches on the website—not based on any "determined context." Thus, the SAP Service Cloud does not meet the limitations of at least claim 1.

13

53. As another example, claim 1 requires a "service system" that determines the "context of the existing communication session based upon context data concerning the existing communication session." To the extent that Valtrus successfully argues that the SAP bot is the required "assistant entity"—disputed in paragraph 30—the SAP bot then cannot concurrently be the required "service system" that determines context of the communication session. Thus, the SAP Service Cloud does not meet the limitations of at least claim 1.

54. For at least these reasons, the SAP Service Cloud does not infringe the '173 Patent.

55. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '173 Patent.

## COUNT V
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '929 PATENT

56. SAP incorporates and realleges the foregoing paragraphs.

57. Based on Valtrus's allegations that SAP infringes the '929 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '929 Patent.

58. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '929 Patent, at least because the SAP HANA system does not employ, incorporate, or otherwise make use of all the limitations of the '929 Patent's claims.

59. For example, claim 1 requires that a system "determin[es] whether the database access command caused a change to the database." But the SAP HANA system does not make any

such determination. Instead, SAP HANA triggers system replication without any determination step. Thus, the SAP HANA does not meet the limitations of at least claim 1.

60. For at least these reasons, the SAP HANA system does not infringe the '929 Patent.

61. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '929 Patent.

## COUNT VI
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '244 PATENT

62. SAP incorporates and realleges the foregoing paragraphs.

63. Based on Valtrus's allegations that SAP infringes the '244 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '244 Patent.

64. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '244 Patent, at least because the SAP Integration Suite does not employ, incorporate, or otherwise make use of all the limitations of the '244 Patent's claims.

65. For example, claim 1 requires that "a fault tolerant storage system (FTSS)" is used for "transmitting" and "storing" messages. But the SAP Integration Suite's Cloud Integration does not store data and messages prior to transmission. Thus, the SAP Integration Suite does not meet the limitations of at least claim 1.

66. For at least these reasons, the SAP Integration Suite does not infringe the '244 Patent.

67.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '244 Patent.

## COUNT VII
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '588 PATENT

68.     SAP incorporates and realleges the foregoing paragraphs.

69.     Based on Valtrus's allegations that SAP infringes the '588 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '588 Patent.

70.     SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '588 Patent, at least because the SAP Solution Manager does not employ, incorporate, or otherwise make use of all the limitations of the '588 Patent's claims.

71.     For example, claim 13 requires a "monitoring tool processing the monitoring data based at least in part on the corresponding metric definitions." But the SAP Solutions Manager's Event Calculation Engine does not process monitoring data using "the corresponding metric definitions" but instead by using configuration settings set up in the alerting directory. Thus, the SAP Solution Manager does not meet the limitations of at least claim 13.

72.     For at least these reasons, the SAP Solution Manager does not infringe the '588 Patent.

73.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of

infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '588 Patent.

## COUNT VIII
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '866 PATENT

74. SAP incorporates and realleges the foregoing paragraphs.

75. Based on Valtrus's allegations that SAP infringes the '866 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '866 Patent.

76. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '866 Patent, at least because the SAP Solution Manager does not employ, incorporate, or otherwise make use of all the limitations of the '866 Patent's claims.

77. For example, claim 1 requires a process of "evaluating the performance of the service." But the SAP Solution Manager is not directed to the performance of services but rather to the monitoring of technical components of a system. Thus, the SAP Solution Manager does not meet the limitations of at least claim 1.

78. For at least these reasons, the SAP Solution Manager does not infringe the '866 Patent.

79. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '866 Patent.

## COUNT IX
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '984 PATENT

80. SAP incorporates and realleges the foregoing paragraphs.

81. Based on Valtrus's allegations that SAP infringes the '984 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '984 Patent.

82. SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '984 Patent, at least because the SAP HANA System does not employ, incorporate, or otherwise make use of all the limitations of the '984 Patent's claims.

83. For example, claim 1 requires "a user defined function" that includes both "an input expression" and "a parameter expression." But the SAP HANA system does not include user defined functions with both an input and parameter expression. Instead, the HANA system's user defined functions only include input expressions. Thus, the SAP HANA system does not meet the limitations of at least claim 1.

84. For at least these reasons, the SAP HANA system does not infringe the '984 Patent. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '984 Patent.

## JURY DEMAND

85. SAP hereby demands trial by jury on all issues.

**PRAYER FOR RELIEF**

WHEREFORE, SAP asks this Court to enter judgment in SAP's favor and against Valtrus by granting the following relief:

a) a declaration that SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any enforceable claim of the Patents-in-Suit;

b) a determination that Defendants have violated the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

c) a determination that Defendants have conspired to violate the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

d) a determination that PPS aided and abetted Valtrus to violate the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

e) a judgment against Defendants for the amount of damages that SAP proves at trial;

f) a permanent injunction restraining Defendants, and its respective officers, agents, servants, employees, attorneys, and any other persons acting on their behalf or in concert with them, from (a) charging or threatening, orally or in writing, that the Patents-in-Suit have been infringed by SAP under any subsection of 35 U.S.C. § 271 and/or (b) engaging in any additional related unlawful practices in violation of the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

g) a finding based upon 35 U.S.C. § 285 that Defendants' continued enforcement of the Patents-in-Suit is exceptional; and

h) an award to SAP of its reasonable attorneys' fees, costs, and all interest, and

      i)      any such other and further relief as the Court finds just and proper.

Dated: February 21, 2024

**OF COUNSEL:**

Aleksander J. Goranin (*pro hac* forthcoming)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:  (215) 979-1000
agoranin@duanemorris.com

Thomas M. Melsheimer (*pro hac* forthcoming)
Michael A. Bittner (*pro hac* forthcoming)
**WINSTON & STRAWN, LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX  75201
Telephone: (214) 453-6500
tmelsheimer@winston.com
Mbittner@winston.com

Respectfully submitted,

*/s/ Monté T. Squire*
Monté T. Squire (No. 4764)
1201 N. Market Street, Suite 501
Wilmington, DE  19801
Telephone:  (302) 657-4900
mtsquire@duanemorris.com

*Counsel for SAP America, Inc.*