## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **SAP America, Inc.** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 24-cv-54-GBW** |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Valtrus Innovations Ltd. and Patent** | § | |
| **Platform Services, LLC** | § | |
| | § | |
| **Defendants.** | | |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, UNDER THE FIRST-TO-FILE RULE, AND FOR FAILURE TO STATE A CLAIM[1]

Dated: March 20, 2024

Of Counsel:

Matthew G. Berkowitz (PHV forthcoming)—LEAD ATTORNEY
Patrick Colsher (PHV forthcoming)
Navid Bayar (PHV forthcoming)
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
nbayar@reichmanjorgensen.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Khue V. Hoang (PHV forthcoming)
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com

*Attorneys for Defendants*

---

[1] Defendant Valtrus Innovations Ltd. moves under the first-to-file rule and under Rule 12(b)(6) only in the alternative, in the event the Court denies Valtrus's personal jurisdiction motion under Rule 12(b)(2).

**TABLE OF CONTENTS**

Page

NATURE AND STATE OF THE PROCEEDINGS ...........................................................1

SUMMARY OF THE ARGUMENT ...............................................................................1

FACTUAL BACKGROUND ............................................................................................3

    I.      The Parties and this Case Have No Ties to Delaware ........................................3

    II.     Valtrus's Licensing Discussions with SAP.......................................................5

    III.   Valtrus Sues in EDTX, And SAP Countersues in Delaware ............................6

LEGAL STANDARD........................................................................................................6

ARGUMENT.....................................................................................................................7

    I.      The Court Lacks Personal Jurisdiction Over Valtrus ........................................7

          A.  The Court Lacks General Personal Jurisdiction Over Valtrus...............7

          B.  The Court Lacks Specific Personal Jurisdiction Over Valtrus ..............8

          C.  SAP Fails to Make a Prima Facie Case for Jurisdiction and Is Not Entitled to Jurisdictional Discovery.................................................12

    II.     In the Alternative, this Declaratory Relief Case Should Be Dismissed or Transferred Under the First-to-File Rule ....................................13

    III.   SAP's State Law Claims Against Both PPS and Valtrus Must Be Dismissed For Failure to State a Claim.............................................................15

          A.  The DCFA Claim Fails ........................................................................16

          B.  SAP's Conspiracy and Aiding and Abetting Claims Fail to State a Claim ..........20

CONCLUSION.................................................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

Federal Cases

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) ..............................................................18

*ACCO Brands USA LLC v. Performance Designed Prods. LLC*,
  2024 WL 181545 (D. Del. Jan. 17, 2024) (Williams, J.)............................11, 12, 13

*Apple Inc. v. Zipit Wireless, Inc.*,
  30 F.4th 1368 (Fed. Cir. 2022) ......................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................7

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008)......................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................7

*BioMérieux, S.A. v. Hologic, Inc.*,
  2018 WL 4647483 (D. Del. Sep. 26, 2018) .....................................................13

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) .........................................................................14

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ.*,
  2022 WL 16921988 (D. Del. Nov. 14, 2022) (Williams, J.) ................................15

*Commc'ns Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020).......................................................................14

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).........................................................................................7

*Eames v. Nationwide Mut. Ins. Co.*,
  2008 WL 4455743 (D. Del. Sept. 30, 2008)......................................................18

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)........................................................................19

*Fatouros v. Lambrakis*,
  627 Fed. App'x 84 (3d Cir. 2015).......................................................................2

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)..........................................................................7

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*,
  737 F.3d 704 (Fed. Cir. 2013)......................................................................13

*GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*,
  888 F.3d 29 (3d Cir. 2018)..........................................................................12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)......................................................................................7

*Inno360, Inc. v. Zakta, LLC*,
  50 F.Supp.3d 587 (D. Del. 2014)................................................................12

*Johnson v. Ace Cash Express Inc.*,
  2015 WL 4397482 (D. Del. July 17, 2015) .................................................19

*LaSala v. Marfin Popular Bank Pub. Co.*,
  410 F. App'x 474 (3d Cir. 2011) ...................................................................8

*M-I Drilling Fluids UK Ltd. V. Dynamic Air Ltda.*,
  890 F.3d 995 (Fed Cir. 2018)......................................................................10

*Mallinckrodt v. E–Z Em Inc.*,
  670 F. Supp. 2d 349 (D. Del. 2009)............................................................14

*Martinez v. Union Officine Meccaniche S.P.A.*,
  2023 WL 3336644 (3d Cir. May 10, 2023) ...................................................9

*McDonough v. Gorman*,
  2017 WL 3528846 (D. Del. Aug. 16, 2017) ................................................10

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*,
  960 F.2d 1217 (3d Cir. 1992).........................................................................7

*Mobility Elecs., Inc. v. Am. Power Conversion Corp.*,
  2007 WL 9724768 (E.D. Tex. Oct. 10, 2007) ........................................14, 15

*Neifeld v. Steinberg*,
  438 F.2d 423 (3d Cir. 1971).........................................................................2

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
  263 F. Supp. 3d 498 (D. Del. 2017)........................................................7, 12

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007)...........................................................................8

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,*
   819 F.2d 434 (3d Cir. 1987)...................................................................6

*Reach & Assocs., P.C. v. Dencer,*
   269 F. Supp. 2d 497 (D. Del. 2003)......................................................10

*Registered Agents, Ltd. v. Registered Agents, Inc.,*
   880 F. Supp. 2d 541 (D. Del. 2012)........................................................8

*Robert Bosch LLC v. Alberee Prods., Inc.,*
   70 F. Supp. 3d 665 (D. Del. 2014).......................................................10

*RPost Holdings, Inc. v. Pesware, Inc.,*
   2014 WL 12712410 (E.D. Tex. Sept. 4, 2014) (Gilstrap, J.)................14

*Samsung Elecs. Co. v. Netlist, Inc.,*
   2022 WL 3027312 (D. Del. Aug. 1, 2022)...........................................15

*SCSW, LLC v. Ten: the Enthusiast Network Mags., LLC,*
   2016 WL 4445466 (D. Del. Aug. 22, 2016) .........................................19

*Touchcom, Inc. v. Bereskin & Parr,*
   574 F.3d 1403 (Fed. Cir. 2009).............................................................11

*U.S. ex Rel. Tucker v. Nayak,*
   2008 WL 140948 (S.D. Ill. Jan. 11, 2008)...........................................18

*United States v. Eastwick Coll.,*
   657 Fed. App'x. 89 (3d Cir. 2016)........................................................18

*Zanotti v. Invention Submission Corp.,*
   2020 WL 2857304 (S.D.N.Y. June 2, 2020) .....................................2, 13

**State Cases**

*Airborne Health, Inc. v. Squid Soap, LP,*
   2010 WL 2836391 (Del. Ch. July 20, 2010)........................................21

*Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.,*
   2005 WL 578972 (Del. Ch. Mar. 3, 2005)............................................21

*Anschutz Corp. v. Brown Robin Cap., LLC,*
   2020 WL 3096744 (Del. Ch. June 11, 2020)........................................21

*Benning v. Wit Cap. Grp. Inc.,*
   2001 WL 38781 (Del. Super. Ct. Jan. 10, 2001), *rev'd on other grounds*, 792
   A.2d 188 (Del. 2001) ............................................................................17

*CLP Toxicology, Inc. v. Casla Bio Holdings*, LLC,
   2020 WL 3564622 (Del. Ch. June 29, 2020)...............................................................9, 10

*Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*,
   2014 WL 6703980 (Del. Ch. Nov. 26, 2014) ......................................................................21

*Largo Legacy Grp., LLC v. Charles*,
   2021 WL 2692426 (Del. Ch. June 30, 2021) ......................................................................20

*Marshall v. Priceline, Inc.*,
   2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006) .....................................................17, 18

*Metro. Life Ins. Co. v. Tremont Grp. Hldgs., Inc.*,
   2012 WL 6632681 (Del. Ch. Dec. 20, 2012) ......................................................................21

*MHS Cap. LLC v. Goggin*,
   2018 WL 2149718 (Del. Ch. May 10, 2018) ......................................................................21

*Nieves v. All Star Title, Inc.*,
   2010 WL 2977966 (Del. Sup. Ct. July 27, 2010) ........................................................17, 18

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
   872 A.2d 611 (Del. Ch. 2005), *rev'd on other grounds*, 901 A.2d 106 (Del.
   2006) .....................................................................................................................................17

**State Statutes**

Del. Code Ann. Title 10, § 3104(c) ...............................................................................................8

Delaware Consumer Fraud Act.......................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 4(k)(2).........................................................................................2, 8, 10, 11

Fed. R. Civ. P. 9(b) ...........................................................................................................18, 19

Fed. R. Civ. P. 12(b)(2)..........................................................................................6, 13, 15

Fed. R. Civ. P. 12(b)(6)................................................................................2, 7, 13, 15

**Other Authorities**

5B Fed. Prac. & Proc. Civ (Wright & Miller) § 1347 ...................................................2

## NATURE AND STATE OF THE PROCEEDINGS

Plaintiff SAP America, Inc. ("SAP America") filed its seven-count complaint against Valtrus Innovations, Ltd. ("Valtrus") at 5:02 P.M. on Jan. 15, 2024.  On Feb. 21, 2024, SAP America filed an Amended Complaint, which contained the same seven-counts against Valtrus, but also added (i) a new party, Patent Platform Services ("PPS"), as a defendant on one of those counts, and (ii) two new counts, one against PPS, and the other against PPS and Valtrus:

- Count I of the Amended Complaint alleges a violation of the Delaware Consumer Fraud Act ("DCFA") against both Valtrus and PPS.

- Count II alleges civil conspiracy against Valtrus and PPS.

- Count III alleges "aiding and abetting" against PPS.

- Counts IV-IX seek declarations of non-infringement of six patents owned by Valtrus.

Valtrus and SAP America are also litigating patent infringement in the U.S. District Court for the Eastern District of Texas ("Texas Action").  Specifically, two minutes before SAP filed its original complaint in this Court, Valtrus sued SAP America, as well as its German parent, SAP SE, for infringement of seven patents, one of which (U.S. Patent No. 6,889,244; Count VI) overlaps with a patent in this case.  The Texas Action is pending and set for a scheduling conference on March 25, 2024.  Valtrus has served infringement contentions in the Texas Action and SAP's invalidity contentions and technical document production are due on April 29, 2024.

## SUMMARY OF THE ARGUMENT

This case does not belong in this District—the Court has no personal jurisdiction over the main defendant, Valtrus, which is an Irish entity with ongoing litigation and activities in Texas, but no presence or activities whatsoever in Delaware.  Indeed, SAP's "upon information and belief" jurisdictional allegations fail to make even a *prima facie* showing of personal jurisdiction,

*see Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at *16 (S.D.N.Y. June 2, 2020), and therefore require that the case be dismissed, without allowing costly and burdensome jurisdictional discovery. *See Fatouros v. Lambrakis*, 627 Fed. App'x 84, 88 (3d Cir. 2015). Personal jurisdiction also cannot exist under Fed. R. Civ. P. 4(k)(2) because two necessary conditions of that rule (the unavailability of jurisdiction over Valtrus in other districts and comportment with due process) are not met.

Even if the Court had jurisdiction over Valtrus (which it does not), the case should be dismissed or transferred under a straight-forward application of the first-to-file rule.[2] Valtrus is the patent owner and true plaintiff, and filed its case first, in the Eastern District of Texas. That controls. Moreover, no relevant witnesses or documents are in Delaware, and nearly all of the invention-related documents are with the entity from whom Valtrus acquired the patents-at-issue, Hewlett Packard Enterprise ("HPE"), which has its corporate headquarters in Texas.

SAP's state law claims against both Valtrus and PPS also must be dismissed. Among other merits deficiencies, it is well-settled that each state law claim requires some alleged wrongful action to have occurred *in Delaware*. SAP America makes no such allegation (because it cannot) and therefore has no standing to bring them.

At bottom, this case is a preemptive attempt by a patent infringer, SAP America, to deprive the true plaintiff, Valtrus, of its preferred forum, the Eastern District of Texas, where Valtrus has

---

[2] Valtrus moves under the first-to-file rule and Fed. R. Civ. P. 12(b)(6) only in the alternative. Valtrus does not intend to waive its personal jurisdiction arguments by moving in the alternative for dismissal under Fed. R. Civ. P. 12(b)(6) or under the first-to-file rule. *See* Fed. R. Civ. P. 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."); *see also Neifeld v. Steinberg*, 438 F.2d 423, 427 (3d Cir. 1971) ("Rule 12(b) allows a defendant to answer to the merits in the same pleading in which he raises a jurisdictional defense without waiving the jurisdictional defense."); 5B FED. PRAC. & PROC. CIV. (WRIGHT & MILLER) § 1347 (4th ed; Feb. 2024 Supp.) (explaining that personal jurisdiction is not waived where a defendant moves in the alternative on other grounds).

multiple other pending litigations.  The state law claims, which are based on little more than routine pre-litigation license negotiations occurring entirely *outside* of Delaware, have no merit and appear to have been asserted as a hook for SAP to argue that there are Delaware-specific issues that merit resolution in this Court.  But Delaware simply has no interest in, or connection to, this dispute, and Defendants' motion should be granted.

## FACTUAL BACKGROUND

### I.    The Parties and this Case Have No Ties to Delaware

Valtrus and its parent company, Key Patent Innovations, Ltd. ("KPI"), are both Dublin-based Irish entities. Declaration of Angela Quinlan ("Quinlan Decl.") at ¶3.  Valtrus has no employees in the United States.  Quinlan Decl. at ¶4.  Valtrus is the successor-in-interest to a substantial patent portfolio created by HPE or its predecessor entities.  *Id.* at ¶¶3, 12.  HPE is headquartered in Spring, Texas, with a primary U.S. facility in Frisco, Texas.  Ex. D (HPE U.S. Offices).  Valtrus's parent company, KPI, contracts with the newly-added defendant, PPS, to provide patent licensing consulting services to Valtrus.  Quinlan Decl. at ¶8.

PPS is a Delaware entity with its principal place of business in Frisco, Texas.  Declaration of Kalpana Kumar ("Kumar Decl.") at ¶3.  Numerous PPS employees are Texas residents who live near the Frisco headquarters, including the executive with primary responsibility for handling Valtrus's patent license discussions with SAP, and a technical fellow responsible for preparing certain claim charts used in the SAP license discussions. *Id.* at ¶7.  The remaining PPS employees involved in supporting the Valtrus patent licensing program reside in Pennsylvania and New

Jersey; none reside in Delaware.[3]  *Id*. at ¶7.  PPS has not conducted business with SAP in Delaware, nor has it asserted patents on Valtrus's behalf in Delaware against SAP.  *Id.* at ¶¶5-6.

SAP America is a subsidiary of German software company SAP SE.  D.I. 1 at ¶ 2.  SAP America has a regular and established place of business in Frisco, Texas and may be served with process through its registered agent, CT Corporation System in Dallas, Texas.  Ex. E at 3 (Affidavit Service on SAP); Declaration of Matthew Berkowitz ("Berkowitz Decl.") at ¶¶4, 9.

SAP does not allege that this case has any connection to Delaware aside from its own place of incorporation and that of PPS's.  *See generally*, D.I. 7.  Importantly, Valtrus (1) is not registered to conduct business in Delaware; (2) does not have a registered agent for service of process in Delaware; (3) does not have offices, employees, board members, contractors, equipment, bank accounts, or other assets in Delaware; (4) is not subject to and has never paid taxes in Delaware; (5) does not manufacture or sell products in Delaware; (6) has never granted a license of any patent to an entity with a principal place of business in Delaware; (7) has not conducted live, in-person meetings in Delaware concerning any of its patents (either directly or via PPS); (8) has not entered into Delaware for any business reason, including for the purpose of signing contracts; and (9) does not own, lease, or rent any property in Delaware.  Quinlan Decl. at ¶5; Kumar Decl. at ¶¶5-7.  Further, Valtrus has not enforced its legal rights against anyone in Delaware for any reason; all of Valtrus's pending U.S. patent lawsuits are in Texas federal courts, as noted in the Complaint.  Quinlan Decl. at ¶6.  Those lawsuits involve related issues, including a common patent.  *See* Ex. A (EDTX Complaint); Berkowitz Decl. at ¶2.  SAP does not allege anything to the contrary.

---

[3] PPS has one employee who resides in Delaware (Stephen Pomraning).  Kumar Decl. at ¶5. However, Mr. Pomraning has never been and currently is not involved in any aspect of the Valtrus licensing program.  *Id.*

## II.       Valtrus's Licensing Discussions with SAP

In January 2021, Valtrus acquired rights to the patents-in-suit from HPE ("Valtrus/HPE Transaction").  Quinlan Decl. at ¶¶3, 12.  Valtrus then began licensing negotiations with various companies.  When certain licensing discussions failed to result in mutually-acceptable deals, Valtrus initiated litigation to enforce its intellectual property rights in Texas, where both HPE and PPS are headquartered.  *Id.* at ¶12; Kumar Decl. at ¶3.

In March 2022, Valtrus notified SAP SE (SAP America's parent company, in Germany) of potential patent infringement and provided a list of patents which Valtrus believed it infringed, along with an identification of corresponding infringing SAP products.  Quinlan Decl. at ¶9.  The letter was sent by Ms. Quinlan (Managing Director of Valtrus in Ireland) to Mr. Christian Klein (CEO of SAP SE in Germany).  Ex. G to D.I. 7; Quinlan Decl. at ¶9.  Ms. Quinlan's letter notified SAP SE that ". . . preliminary analysis reveals that SAP is currently making, using, selling, or offering for sale products and services that infringe (directly or indirectly) one or more of the Valtrus patents," and requested a meeting.  Ex. G to D.I. 7.

In September 2022, Ms. Quinlan sent a follow-up letter to Mr. Klein, again requesting a discussion over potential licensing terms.  Ex. H to D.I. 7; Quinlan Decl. at ¶9.  SAP eventually responded, and subsequent presentations by Valtrus provided SAP SE substantial evidence of its infringement, leading to discussions between relevant individuals located in Germany, Ireland, Texas, Pennsylvania, and New Jersey.  D.I. 7 at ¶ 14; Quinlan Decl. at ¶9; Kumar Decl. at ¶6.

Unfortunately, the parties could not agree on licensing terms, and then filed competing complaints.

III.     **Valtrus Sues in EDTX, And SAP Countersues in Delaware**

On January 15, at exactly 5:00 PM Eastern Time, Valtrus sued both SAP SE and SAP America in the Texas Action for infringement of seven patents Valtrus acquired from HPE in the Valtrus/HPE Transaction.  Ex. B (EDTX Filing Confirmation); Berkowitz Decl. at ¶6.

SAP America then filed suit in this court at 5:02 PM Eastern Time.  D.I. 1; Ex. C (DE Filing Confirmation).  SAP America's suit requested a declaration of non-infringement of six Valtrus patents.  One of the patents (the '244 patent) is common to the Texas and Delaware actions; the remaining five (which Valtrus also acquired in the Valtrus/HPE Transaction) relate to many of the same SAP accused products as those accused in the Texas Action.  Berkowitz Decl. at ¶3.  As part of the Delaware Action, and in a transparent effort to forum shop, SAP America also alleged that Valtrus violated the DCFA by offering a proposed patent license fee that exceeded what SAP was willing to pay, and because Valtrus declined SAP's request that Valtrus disclose third-party confidential information about other patent license agreements and the Valtrus/HPE Transaction, all of which are subject to contractual confidentiality restrictions.   D.I. 1 at ¶¶ 22-26.

Weeks later, SAP America amended its complaint to add PPS as a defendant and to further allege that PPS violated the DCFA (Count I), engaged in a fraud conspiracy with Valtrus (Count II), and aided-and-abetted Valtrus's fraud (Count III).  D.I. 7.

## LEGAL STANDARD

***Rule 12(b)(2)***.  On a defendant's motion challenging personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of establishing that the court has personal jurisdiction. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). The plaintiff is required to provide sufficient facts to establish defendant's jurisdictional contacts with

the forum with "reasonable particularity." *See Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960

F.2d 1217, 1223 (3d Cir. 1992).

     ***Rule 12(b)(6)***.  A Rule 12(b)(6) motion tests the sufficiency of a complaint's allegations.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must . . . state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up, citation

omitted). Legal conclusions must be disregarded.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-

11 (3d Cir. 2009).

## ARGUMENT

## I.  The Court Lacks Personal Jurisdiction Over Valtrus

### A.  The Court Lacks General Personal Jurisdiction Over Valtrus

     SAP does not allege any facts supporting general personal jurisdiction over Valtrus in

Delaware because there are none.  *See generally*, D.I. 7.  General personal jurisdiction requires

substantial, continuous, and systematic contacts with the forum state.  *Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  The "paradigm all-purpose forums" for general

jurisdiction for a corporate defendant are its place of incorporation and principal place of business.

*Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014).  That is not the case here.  Valtrus is an

Irish entity with its principal place of business in Ireland.  *See* D.I. 7 at ¶ 3; Quinlan Decl. at ¶3.

So is its parent, KPI.  Quinlan Decl. at ¶7.  These facts preclude a finding of general personal

jurisdiction over Valtrus.  *See, e.g.*, *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d

498, 502 (D. Del. 2017) (finding no general or specific jurisdiction over defendant that "is not

registered to do business in the U.S., does not maintain a registered agent for service, own any real

property, offices, manufacturing plants, research facilities, have a mailing address or telephone

listing in the U.S., or engage in [U.S.] sales or product development.").

**B.      The Court Lacks Specific Personal Jurisdiction Over Valtrus**

SAP alleges no facts to support specific personal jurisdiction under Delaware's long-arm statute or under Fed. R. Civ. P. 4(k)(2).  Neither applies, as Valtrus has not transacted business in Delaware and is already subject to personal jurisdiction in Texas given its other litigations there.

***Delaware's Long-Arm Statute***.  SAP has failed to allege any facts suggesting that Valtrus purposefully directed its commercial activities towards Delaware.  In relevant part, subsections (1)-(4) of the Delaware long-arm statute provide that a court may exercise personal jurisdiction over any nonresident who in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

Del. Code Ann. tit. 10, § 3104(c); *see Registered Agents, Ltd. v. Registered Agents, Inc.*, 880 F. Supp. 2d 541, 545 (D. Del. 2012).  Under this statute, SAP must plead facts showing that: (1) Valtrus purposefully directed its activities at Delaware; (2) SAP's claims arise out of or relate to at least one of Valtrus's Delaware-related activities; and (3) the exercise of jurisdiction comports with the principles of fair play and substantial justice.  *See O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 317 (3d Cir. 2007).  SAP must adduce "specific facts"—not facts alleged "on information and belief"—indicating defendants directed conduct toward the forum state.  *See LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 477 (3d Cir. 2011). "[W]hat is necessary is a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317.

SAP's complaint fails on all accounts.  First, the complaint is devoid of any factual allegations tying Valtrus to Delaware or any suggestion that Valtrus aimed any activity at Delaware.  This is for good reason: there are no such facts.  As substantiated by Ms. Quinlan,

Valtrus, and its parent, KPI, are Irish entities with their principal place of business in Dublin, Ireland. D.I. 7 at ¶3; Quinlan Decl. at ¶3.  Neither Valtrus nor KPI has U.S. employees, and no board members reside in Delaware.  Quinlan Decl. at ¶¶5, 7.  Neither company is registered to conduct, or does conduct, business in Delaware.  *Id.* Plus, unlike in Texas, Valtrus has not filed any lawsuits in Delaware to enforce any legal rights of any kind.  *Id.* at ¶6.  Though Valtrus's parent (KPI) contracts with PPS (a Delaware corporation) to provide licensing consulting services to Valtrus, PPS's principal place of business is in Frisco, Texas.  *See* Kumar Decl. at ¶¶3, 5; *see also CLP Toxicology, Inc. v. Casla Bio Holdings*, *LLC,* 2020 WL 3564622, at *14 (Del. Ch. June 29, 2020) ("[C]ontracting with an entity that is incorporated within a forum state does not provide necessary connections between the contract and the forum to support a finding of jurisdiction.").  And, all PPS employees responsible for any Valtrus licensing activity, including preparing and presenting claim charts for and licensing the patents at issue, reside in Texas, Pennsylvania, and New Jersey—not in Delaware.  Kumar Decl. at ¶5.  Finally, the parties never met in Delaware. Quinlan Decl. at ¶¶9-10; Kumar Decl. at ¶¶5-6.

Although the complaint parrots the language of statutes and case law (*e.g.*, alleging on "information and belief" that Valtrus "purposefully availed itself of the privilege of doing business in Delaware," D.I. 7 at ¶ 30), it offers no facts or law in support.[4]  Instead, the only non-conclusory Delaware-related allegation is that SAP America and PPS are Delaware-organized entities.  D.I. 7 at ¶¶2, 4.  But it is black-letter law that the defendant's (Valtrus's) forum-state contacts control the jurisdictional analysis, not the plaintiff's (SAP's).  *See Martinez v. Union Officine Meccaniche*

---

[4] SAP alleges on "information and belief" that personal jurisdiction is proper because Valtrus has negotiated licenses with companies that are incorporated and/or registered to do and currently conduct business in Delaware.  Even if true, Valtrus is aware of no law suggesting that this gives rise to personal jurisdiction.  Valtrus simply does not conduct business in Delaware.  SAP does not even allege that Valtrus licensed a Delaware headquartered company.

*S.P.A.*, 2023 WL 3336644, at *1 (3d Cir. May 10, 2023) ("[I]t is essential in each case that there be some act by which *the defendant* purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." (emphasis added, citation omitted)).  And PPS's status as a Delaware LLC does not somehow generate jurisdiction over Valtrus.  *See CLP Toxicology*, 2020 WL 3564622, at *14 (Del. Ch. June 29, 2020) (contracting with Delaware-incorporated entity insufficient for jurisdiction).

Similarly, SAP's attempt to aggregate allegations of conduct concerning Valtrus with imprecise allegations concerning KPI, PPS, "*and/or* other subsidiaries or agents," (emphasis added) to establish long-arm jurisdiction has been rejected by courts.  *See McDonough v. Gorman*, 2017 WL 3528846, at *3 (D. Del. Aug. 16, 2017) (rejecting "aggregation of co-defendants' forum contacts in determining personal jurisdiction") (citation omitted).  And KPI is not even a named defendant (nor could it be), and, regardless, has no ties to Delaware.  *See Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 504 (D. Del. 2003).

***Fed. R. Civ. P. 4(k)(2)***.  SAP also alleges that Rule 4(k)(2) gives this Court jurisdiction over Valtrus.  D.I. 7 at ¶20.  Not so.  Rule 4(k)(2) allows a court to exercise personal jurisdiction over a defendant if "(1) the case arises under federal law and is not pending before the court pursuant to the court's diversity jurisdiction; (2) the foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction in any state; and (3) the foreign defendant has sufficient contacts with the United States as a whole to comport with constitutional notions of due process."  *See Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 680 (D. Del. 2014); *see also See M-I Drilling Fluids UK Ltd. V. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed Cir. 2018).

Rule 4(k)(2) does not apply here because, under the second factor, Valtrus is subject to personal jurisdiction in Texas, making exercising jurisdiction under Rule 4(k)(2) improper.  *See Robert Bosch LLC* 70 F. Supp. 3d at 680 (4(k)(2) only applies where "the foreign defendant lacks sufficient contacts with *any* single state to subject it to personal jurisdiction in any state" (emphasis added)).   Courts in Texas have jurisdiction over Valtrus because Valtrus has engaged in "enforcement activities" in that state.  Quinlan Decl. ¶6; *see Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (the relevant inquiry is whether "the defendant patentee purposefully directed such *enforcement activities at residents* of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." (cleaned up, emphasis added)); *see also ACCO Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545 at *3 (D. Del. Jan. 17, 2024) (Williams, J.) ("[T]he Federal Circuit has made clear that a declaratory judgment claim . . . 'arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit.'").   Additionally, many of the pre-litigation licensing discussions concerning the very patents-in-suit were conducted and led *in Texas* by a PPS employee, Kapu Kumar, on Valtrus's behalf.  Kumar Decl. ¶6.

Accordingly, SAP's reliance on Rule 4(k)(2) fails.

***Due Process Concerns.***  Exercising personal jurisdiction over Valtrus in Delaware is also inconsistent with due process considerations.  The due process issue is analyzed through five factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in further substantive policies."  *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1417 (Fed. Cir. 2009).  But none of these factors supports personal jurisdiction in Delaware: (1) it is plainly burdensome on Valtrus to be litigating this declaratory judgment suit in

Delaware when it is already litigating against SAP in EDTX; (2) Delaware has no unique interest in adjudicating this suit; (3) SAP could obtain the same relief in EDTX; (4) parallel related suits in different federal districts are not in the interest of the judicial system; and (5) there are no shared interests of substantive policy between Delaware and Texas.

Moreover, exercising jurisdiction over Valtrus would violate due process because Valtrus could not fairly foresee being hailed into Delaware federal court by merely attempting to negotiate a license with SAP outside of Delaware. *See Apple Inc. v. Zipit Wireless, Inc*., 30 F.4th 1368, 1374 (Fed. Cir. 2022) ("*Foreseeability . . . is critical to due process analysis*, and the Supreme Court has made clear that the focus is on whether a given defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (cleaned up, emphasis added)).  The lack of foreseeability is particularly apparent where Valtrus has no connections to Delaware, is involved in litigation in Texas, and is subject to jurisdiction there.

### C.    SAP Fails to Make a Prima Facie Case for Jurisdiction and Is Not Entitled to Jurisdictional Discovery

Under well-established law, SAP "bears the burden of alleging facts sufficient to make a *prima facie* case of personal jurisdiction." *Nespresso USA, Inc*., 263 F. Supp. 3d at 502.  SAP's amended complaint fails to do that.  However, where jurisdiction is challenged, as it is here, then SAP must prove the propriety of jurisdiction by a preponderance of the evidence through "affidavits or other competent evidence." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018); *Inno360, Inc. v. Zakta, LLC*, 50 F.Supp.3d 587, 592 (D. Del. 2014). Yet a plaintiff is not entitled to take discovery to try to obtain such evidence as a matter of course— it must have already made sufficiently specific factual allegations that would warrant allowing such discovery.  "Vague assertions" are insufficient and amount to little more than a "fishing expedition." *See Acco Brands USA, LLC*, 2024 WL 181545, at *5 (quoting *Genzyme Corp. v.*

*Novartis Gene Therapies, Inc.*, 2023 WL 1965090, at *6 (D. Del. Feb. 13, 2023)).  SAP fails to justify jurisdictional discovery since it relies almost exclusively on vague and conclusory allegations "upon information and belief," even in its First Amended Complaint (after weeks of additional research time).  *Id.*; *see also Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at *16 (S.D.N.Y. June 2, 2020) ("Conclusory allegations showing the presence of jurisdiction, particularly those stated only upon information and belief, are insufficient to establish that the court has personal jurisdiction over the defendant.") (cleaned up, citation omitted); *see also BioMérieux, S.A. v. Hologic, Inc.*, 2018 WL 4647483, at *2 (D. Del. Sep. 26, 2018) (prima facie case of jurisdiction requires identifying Delaware contacts with "reasonable particularity").

Accordingly, SAP's vague and conclusory personal jurisdiction allegations do not justify jurisdictional discovery and dooms its complaint from the start.

## II.    In the Alternative, this Declaratory Relief Case Should Be Dismissed or Transferred Under the First-to-File Rule

If the Court finds that there is no personal jurisdiction over Valtrus, it need not reach this other argument—Valtrus should be dismissed.[5]  However, even if the Court finds that there is personal jurisdiction over Valtrus, it should still dismiss or transfer the case to EDTX under the first-to-file rule.  "When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action."  *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).  And where the second-filed case is a declaratory judgment action, then the "district courts enjoy a double dose of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment

---

[5] Again, Valtrus does not intend to waive its personal jurisdictional arguments and seeks dismissal on other grounds, including under the first-to-file rule and under Rule 12(b)(6), only in the alternative, in the event the Court denies Valtrus's motion under Rule 12(b)(2).

action *and* discretion when considering and applying the first-to-file rule and its equitable exceptions." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (cleaned up).

Valtrus filed the Texas Action before SAP filed its declaratory judgment action in this Court. *Compare* Ex. B *with* Ex. C (showing EDTX action filed at 5:00 PM ET vs. DE action filed at 5:02 PM ET). It does not matter that the Texas Action was first filed by only minutes; the first-to-file rule is a bright-line rule in that regard and still applies. *See RPost Holdings, Inc. v. Pesware, Inc.*, 2014 WL 12712410, at *2 (E.D. Tex. Sept. 4, 2014) (Gilstrap, J.) (holding that even if suits were filed on the same day, "[t]his rule means precisely what it says: the first filed." (cleaned up)); *see also Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-606 (5th Cir. 1999). And under the first-to-file rule, this declaratory judgment action should be dismissed or transferred to EDTX. The two actions sufficiently overlap because the key parties are the same, the accused products will be largely the same,[6] and the patents either directly overlap (both suits involve the '244 patent) or involve related technologies. *See Mobility Elecs., Inc. v. Am. Power Conversion Corp.*, 2007 WL 9724768, at *4 (E.D. Tex. Oct. 10, 2007) (noting "federal courts [] recognize the wisdom of allowing a judge who has familiarity with the subject matter at issue to preside over subsequent litigation").

Cases in both Delaware and Texas provide support for transferring this case under the first-to-file rule: "In an instance where related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art, this Court has previously held that transfer is appropriate in the interests of justice." *Mallinckrodt v. E–Z Em Inc.*, 670 F. Supp. 2d 349, 357–

---

[6] Both cases involve at least SAP Hana and SAP Integration Suite, among other potentially overlapping products. Berkowitz Decl. ¶3; Ex. A.

14

58 (D. Del. 2009); *Mobility Electronics*, 2007 WL 9724768 at *3-4.  Moreover, when the shoe has been on the other foot, Texas has deferred to the first-filed *Delaware* actions.  *See Samsung Elecs. Co. v. Netlist, Inc.*, 2022 WL 3027312, at *3 (D. Del. Aug. 1, 2022) (holding that, since the "Delaware case was filed before the Texas Action" the Delaware court should "take the lead"); *cf. Cisco Sys., Inc. v. Ramot at Tel Aviv Univ.*, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) (Williams, J.) ("The first-filed case must conduct the first-filed-rule assessment.").

Texas is also a more convenient and appropriate forum for the parties to litigate.  SAP has an established place of business in Texas, does considerable business there, and has litigated numerous patent cases there in the past, in some instances without even moving to transfer. Berkowitz Decl. ¶4; Ex. A.  In contrast, Valtrus has never litigated in Delaware, has no physical or commercial presence in Delaware, and has never conducted any kind of business there.  Quinlan Decl. ¶6.  Further, the likely witnesses are not in Delaware, whereas at least some are in Texas, including potential third-party HPE witnesses who could not be subpoenaed in Delaware.  Quinlan Decl. ¶12. Similarly, HPE likely has relevant documents including invention records and, potentially, license agreements.

## III.   SAP's State Law Claims Against Both PPS and Valtrus Must Be Dismissed For Failure to State a Claim[7]

SAP's complaint asserts three state law claims all premised on purported consumer fraud: violation of the Delaware Consumer Fraud Act ("DCFA") against both Valtrus and PPS (Count I); civil conspiracy to violate the DCFA against both defendants (Count II); and aiding and abetting Valtrus's alleged violation of the DCFA against PPS (Count III).  D.I. 7.  But the DCFA claim must be dismissed because no conduct took place in Delaware (let alone conduct that would be

---

[7] Valtrus moves under Rule 12(b)(6) only in the alternative, in the event the Court denies Valtrus's motion under Rule 12(b)(2).

actionable under the statute), there is no effect in Delaware, and SAP's incorporation in Delaware is insufficient to bring a DCFA claim as a matter of law. And, without underlying consumer fraud, there can be no conspiracy and no aiding and abetting. In addition, a principal (Valtrus) cannot conspire with its agent (PPS), so those claims must be dismissed too.

### A. The DCFA Claim Fails

The essence of SAP's DCFA claim is that Valtrus should have disclosed all confidential financial information that SAP wanted disclosed, and Valtrus's decision to not do so somehow amounted to illegal "concealment" (even though Valtrus had no duty to disclose such information and in fact was contractually prohibited from doing so under third-party confidentiality obligations). *See, e.g.*, D.I. 7 at ¶¶16-18, 35-37. Specifically, SAP alleges that Valtrus (1) "concealed the nature of Valtrus's agreements with HPE," (2) "concealed the full nature of these licensing agreements" with other licensees; and (3) "conceal[ed] any consideration related to the subject patent portfolio from the prospective licensees." D.I. 7 at ¶¶16-18. SAP also suggests that the failure to offer "reasonable, good-faith licensing terms"—by which it appears to mean, at a price that SAP wants—is somehow unfair and violates the statute. D.I. 7 at ¶¶37, 43, 47. These circumstances are routine in negotiations between parties; to allow SAP's allegations to go forward as claims of consumer fraud would vastly expand the reach of the Delaware statute and put everyday business transactions and licensing negotiations at risk of threatened litigation. But more fundamentally, given the absence of any connection to Delaware or impact on consumers in the state, SAP lacks standing to bring this claim, has not plead fraud with sufficient particularity, and has failed to identify actionable tortious conduct.

### 1. SAP lacks statutory standing to assert a fraud claim with no connection to Delaware

It is black letter law that the DCFA only covers wrongdoing taking place in whole or in part within Delaware, and that it is the plaintiff's burden to plead as much.  Indeed, the statutory scheme itself provides that the purpose of the DCFA statutory scheme is to protect "consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce *in part or wholly within this State . . . .*"  *See Marshall v. Priceline, Inc*., 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006) (quoting 6 Del. C. § 2512) (emphasis added).  The *Priceline* court was crystal clear about this: "there was no intent of the legislature to create any extraterritorial effects.  As such, the courts have consistently ruled that the DCFA is only applicable if the fraudulent conduct occurs within Delaware." *Id.* (collecting cases).  Further, mere incorporation in Delaware is not enough. *Id.* ("[W]hile incorporation may be enough to allow Delaware law to apply to a dispute, it is not enough to allow the DCFA to apply to fraudulent transactions which did not occur in Delaware.").

Other Delaware decisions have consistently held the same as in *Priceline*. *See Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at *4 (Del. Sup. Ct. July 27, 2010) ("[A] DCFA claim is available only when at least some part of the defendant's alleged fraudulent conduct occurred in Delaware.  A bare allegation that the defendant 'actively conducts business' in the state is insufficient to establish that the particular conduct forming the basis of the plaintiff's claim occurred in Delaware for purposes of the DCFA."); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co*., 872 A.2d 611, 631 (Del. Ch. 2005), *rev'd on other grounds*, 901 A.2d 106 (Del. 2006) ("[R]elief can only be granted under the [Delaware] Consumer Fraud Act for unlawful practices occurring or performed partly or wholly within Delaware."); *Benning v. Wit Cap. Grp. Inc.*, 2001 WL 38781, at *2, *10 (Del. Sup. Ct. Jan. 10, 2001), *rev'd on other grounds*, 792 A.2d 188 (Del. 2001)

(defendant was registered to do business within Delaware, but the plaintiff failed to establish the fraud took place within the State. As a result, the court determined the fraud claim was not appropriately brought before the Delaware Superior Court, pursuant to the DCFA.).

SAP's complaint fails to allege facts showing that either Valtrus or PPS engaged in any purportedly wrongful conduct in Delaware.  Thus, SAP lacks standing under the DCFA and the claim must be dismissed as to both defendants.  *Priceline, Inc.*, 2006 WL 3175318, at *2 (resolving DCFA claim at the pleading stage because "the Plaintiffs must first demonstrate standing in accordance with the statute by establishing the requirements under the DCFA are met").

This simple fact alone is sufficient to resolve *all* of the state law claims since there can be no aiding or abetting or conspiracy absent an underlying DCFA violation.

**2.  SAP failed to plead its fraud claim with particularity under Rule 9(b)**

Even if SAP had standing, which it does not, the DCFA claim must also be dismissed because it is not pled with particularity, as required by Rule 9(b), which requires that "the circumstances constituting fraud . . . be plead with sufficient particularity to place defendants on notice of the precise misconduct with which they are charged."  *See Eames v. Nationwide Mut. Ins. Co.*, 2008 WL 4455743, at *13 (D. Del. Sept. 30, 2008) (cleaned up) (citation omitted).  SAP's DCFA claim premised "upon information and belief" fails to provide the "who, what, when, where, and how" with respect to Defendants' alleged violation of the DCFA with any meaningful particularity.  *See United States v. Eastwick Coll.,* 657 Fed. App'x. 89, 93 (3d Cir. 2016); *see also* D.I. 7 at ¶30.

SAP fails to identify a single fraudulent statement by Valtrus or PPS.  *See U.S. ex Rel. Tucker v. Nayak*, 2008 WL 140948, at *4 (S.D. Ill. Jan. 11, 2008) (dismissing fraud claim under Rule 9(b) because plaintiff "has not identified the date, amount, content of, or payment in connection with even a single false or fraudulent claim or statement"); *Abraham v. Am. Home*

*Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 231 (E.D.N.Y. 2013) ("[T]he second amended complaint does not specify a single fraudulent statement.").  SAP relies on claims of concealment of (i.e., refusal to provide) purportedly relevant information—but even then, its conclusory allegations do not identify "what" specifically SAP alleges is a representation or statement by Valtrus that constituted actionable fraud, "where" this fraud occurred, or "how" the fraud was communicated.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).

For example, SAP states that Defendants' licensing offers "did not attempt to reflect the value of the patents Defendants identified based on any recognized form of valuation," (D.I. 7 at ¶ 37) but SAP fails to identify what it contends the true value of Valtrus's patents to be, what "recognized forms of valuation" it believes Valtrus was required to use, or what information was concealed from SAP in this regard.  *See SCSW, LLC v. Ten: the Enthusiast Network Mags., LLC*, 2016 WL 4445466, at *12 (D. Del. Aug. 22, 2016) ("Plaintiff fails to allege with sufficient specificity the purportedly fraudulent statement.").  SAP also states that Defendants have not provided SAP with access to either its "(1) Valtrus's agreement(s) with HPE or (2) any purported benchmark license from a prior license." D.I. 7 at ¶37.  But what is concealed about this?  SAP knew it wasn't being provided these documents, and fails to allege any facts that would show that not providing this information was fraudulent.  *See Johnson v. Ace Cash Express Inc.*, 2015 WL 4397482, at *4 (D. Del. July 17, 2015) (dismissing DCFA claim under Rule 9(b) where plaintiff "failed to show that Defendant had an obligation to disclose its business model and/or motivations to Plaintiff in connection with offering to do business with her.").  Trying to leverage vague allegations like this into a fraud claim is exactly why Rule 9 requires pleading with particularity.

### 3.   SAP's allegations do not constitute an actionable tort

The allegations here relate to routine, albeit failed, licensing negotiations.  This is not the type of conduct contemplated by the Delaware Consumer Fraud Act—and to so hold would put innumerable licensing discussions and ordinary commercial transactions at risk of litigation. Valtrus and PPS had no duty to disclose the terms of the Valtrus patent purchase agreement with HPE or Valtrus's licensing terms with other licensees as a precondition to persuading patent infringers like SAP to secure a license, particularly when all of the information sought by SAP is subject to confidentiality restrictions (which SAP is well-aware of).  To, in effect, create a right to disclosure of information of the party's choosing would be a dangerous precedent.  Likewise, to allow a claim that Valtrus did not offer "reasonable" licensing terms or did not "value" its patent portfolio the way SAP would like would dangerously expand the meaning of fraudulent concealment—this is simply a disagreement over price, thinly dressed as fraud.  At bottom, there is no precedent for such a legal claim, nor should there be.  Should SAP's novel claim survive dismissal, every patent negotiation with a company that happens to be incorporated in Delaware is potentially subject to a Delaware Consumer Fraud Act claim.  That cannot be the intent of the legislature and would have a chilling effect on all pre-litigation negotiations, resulting in a rush to the courthouse in lieu of out-of-court discussions.

### B.      SAP's Conspiracy and Aiding and Abetting Claims Fail to State a Claim

SAP's conspiracy claim alleges that Valtrus and PPS knowingly agreed to violate the DCFA, and its aiding and abetting claim alleges that PPS assisted Valtrus in violating the DCPA. D.I. 7 at ¶¶34-48.   Both these claims fail right out of the gate.  SAP alleges that PPS is "Valtrus's licensing agent."  D.I. 7 at ¶15.  This allegation defeats the claim.  As a matter of law, an agent can neither conspire with nor aid and abet its principal.  *Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *45 (Del. Ch. June 30, 2021) ("[L]ike civil conspiracy, officers and agents cannot

aid and abet their principal or each other in the commission of a tort."); *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005) ("A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."). "Accordingly, it is entirely sensible that, as a general rule, agents of a corporation cannot conspire with one another or aid and abet each other's torts." *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *17 (Del. Ch. June 11, 2020). Thus, under SAP's own allegations, Counts II and III fail and must be dismissed.

Moreover, both conspiracy and aiding/abetting "require predicate tortious conduct" under Delaware law. *See Metro. Life Ins. Co. v. Tremont Grp. Hldgs., Inc.*, 2012 WL 6632681, at *19 (Del. Ch. Dec. 20, 2012) (a conspiracy claim requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds . . . relating to . . . course of action; (4) one or more unlawful acts; and (5) damages as a proximate result thereof") (citation omitted); *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *23 (Del. Ch. Nov. 26, 2014) great (an aiding and abetting claim requires "(1) underlying tortious conduct, (2) knowledge, and (3) substantial assistance"). SAP's DCFA claim is the predicate tort for its conspiracy and aiding/abetting claims. *See* D.I. 7 at ¶¶34-38. For this reason, if the court dismisses the DCFA claim, it must also dismiss the conspiracy and aiding/abetting claims. *See MHS Cap. LLC v. Goggin*, 2018 WL 2149718, at *10, n. 126 (Del. Ch. May 10, 2018) ("Because MHS's fraud claim fails, its claims for aiding and abetting and conspiracy to commit fraud must be dismissed as well."); *see also Airborne Health, Inc. v. Squid Soap, LP*, 2010 WL 2836391, at *10 (Del. Ch. July 20, 2010) (same).

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grants this motion to dismiss this case or, alternatively, to transfer it to the Eastern District of Texas.

Dated: March 20, 2024                      Respectfully submitted,

Of Counsel:                                FARNAN LLP

Matthew G. Berkowitz (PHV                  /s/ Michael J. Farnan
forthcoming)—LEAD ATTORNEY                 Brian E. Farnan (Bar No. 4089)
Patrick Colsher (PHV forthcoming)          Michael J. Farnan (Bar No. 5165)
Navid Bayar (PHV forthcoming)              919 N. Market St., 12th Floor
Reichman Jorgensen Lehman & Feldberg       Wilmington, DE 19801
LLP                                        Tel: (302) 777-0300
100 Marine Parkway, Suite 300              bfarnan@farnanlaw.com
Redwood Shores, CA 94065                   mfarnan@farnanlaw.com
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
nbayar@reichmanjorgensen.com

Khue V. Hoang (PHV forthcoming)
Reichman Jorgensen Lehman & Feldberg
LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com            *Attorneys for Defendants*