# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| VALTRUS INNOVATIONS LTD., | Civil Action No. 2:24-cv-21 |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| SAP AMERICA, INC. AND SAP SE, | |
| Defendants. | |

## DEFENDANTS SAP AMERICA, INC. AND SAP SE'S
## MOTION FOR INTRA-DISTRICT TRANSFER UNDER 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ............................................................................................................ 2

      A.    Case Overview ................................................................................................... 2

      B.    SAP's Relevant Witnesses and Evidence Are Located in Pennsylvania and Plano, Texas ................................................................................................................... 3

      C.    SAP Has No Connection to the Marshall Division ................................................. 3

      D.    Valtrus and Related Entities Are Centrally Located in the Sherman Division ....... 3

      E.    Key Third-Party Evidence Is Either Located in the Sherman Division or More Easily Accessible from the Sherman Division ....................................................... 5

II.   LEGAL STANDARD ................................................................................................... 6

III.  ARGUMENT .................................................................................................................. 7

      A.    Threshold Inquiry: This Suit Could Have Been Filed in the Sherman Division .... 7

      B.    Private-Interest Factors ..................................................................................... 7

            1.    Relative Ease of Access to Sources of Proof ............................................... 7

            2.    The Cost of Attendance for Willing Witnesses ......................................... 10

            3.    The Availability of Compulsory Process ....................................................11

            4.    All Other Practical Problems ................................................................... 13

      C.    Public-Interest Factors ..................................................................................... 13

            1.    Administrative Difficulties Flowing from Court Congestion ................... 13

            2.    The Local Interest in Having Localized Interests Decided at Home ........ 14

            3.    The Familiarity of the Forum with the Law That Will Govern the Case and the Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law ................................................... 15

IV.   CONCLUSION ............................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. Samsung Elecs. Co.*,
   968 F. Supp. 2d 852 (E.D. Tex. 2013) ...................................................................................11

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ...........................................................................................7, 8

*In re Apple*,
   No. 2021-181, 2021 WL 5291804 (Fed. Cir. 2021) .............................................................13

*Athalonz LLC v. Under Armour, Inc.*,
   No. 2:23-CV-00193-JRG, 2023 WL 8809293 (E.D. Tex. Dec. 20, 2023) ..............................8

*In re DISH Network L.L.C.*,
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. 2021) ........................................................13, 14

*Farmobile LLC v. Farmers Edge Inc.*,
   No. 2:21-cv-00411-JRG, 2022 WL 2653893 (E.D. Tex. July 7, 2022) .................................14

*Fintiv, Inc. v. Apple Inc.*,
   No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) .............................7

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ..................................................................................7, 8, 9, 13

*In re Google LLC*,
   No. 2021-171, 2021 WL 4592280 (Fed. Cir. 2021) .............................................................14

*In re Google LLC*,
   No. 2021-178, 2021 WL 5292267 (Fed. Cir. 2021) ...............................................................8

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ...........................................................................................14

*In re Horseshoe Ent.*,
   337 F.3d 429 (5th Cir. 2003) ...............................................................................................13

*In re HP Inc.*,
   826 F. App'x 899 (Fed. Cir. 2020) ......................................................................................11

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. 2021) .............................................................11

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ..................................................................................................7

*In re Netflix, Inc.*,
  No. 2022-110, 2022 WL 167470 (Fed. Cir. 2022) .................................................12

*Quest NetTech Corp. v. Apple, Inc.*,
  No. 2:19-CV-00118-JRG, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019)............................13

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ........................................................................... *passim*

*Red Hat, Inc. v. Valtrus Innovations, Ltd.*,
  No. 4:22-cv-05289-YGR, ECF No. 39 (N.D. Cal. Dec. 7, 2022)...........................................11

*In re Samsung Elecs. Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) .....................................................................................13

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) .......................................................................................8

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)...............................................................................6, 9

*Unicorn Energy GMBH v. Tesla, Inc.*,
  No. 2:20-CV-00338-JRG, 2021 WL 4034515 (E.D. Tex. Sept. 3, 2021) .................................9

*Valtrus Innovations Ltd v. SAP Am., Inc.*,
  No. 2:24-cv-00021-JRG (E.D. Tex. Jan. 15, 2024) ...........................................................2

*Viking Techs., LLC v. Assurant, Inc.*,
  No. 2:20-CV-00357-JRG, 2021 WL 3520756 (E.D. Tex. June 21, 2021) ...............1, 7, 10, 15

*In re Vistaprint Ltd.*,
  628 F.3d 1342 (Fed. Cir. 2010)................................................................................12

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...............................................................................6, 10, 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ...........................................................................6, 8, 10, 15

**Statutes**

28 U.S.C. § 1404.................................................................................................................1

28 U.S.C. § 1404(a) ..............................................................................................5, 6, 10, 15

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(B)(ii) ............................................................................12

Fed. R. Civ. P. 45(c)(3)(A)(ii) ............................................................................11

Fed. R. Civ. P. 45(c)(3)(B)(iii) ...........................................................................11

Defendants SAP America, Inc. and SAP SE (collectively, "SAP") move to transfer this case to the Sherman Division of this District under 28 U.S.C. § 1404. The Court should transfer this case to the Sherman Division (i.e., the genesis and center of this dispute) because the overwhelming majority of relevant witnesses and evidence for both parties are located there. In particular, the parties engaged in pre-suit negotiations and discussed issues concerning purported infringement, invalidity, and licenses to the Asserted Patents. SAP, which has two offices within the Sherman Division, primarily communicated with Valtrus Innovations Ltd.'s ("Valtrus") licensing agent, Patent Platform Services LLC (PPS), which is headquartered in the Sherman Division. Further, Valtrus acquired the Asserted Patents from Hewlett Packard Enterprise (HPE), which presumably has relevant evidence concerning the value of the Asserted Patents and has an office located in the Sherman Division. Moreover, the Sherman Division, unlike this Division, has subpoena power over non-party witnesses, including PPS personnel, and is more convenient for all other out-of-state witnesses given the Sherman Division's proximity to the Dallas Fort Worth International Airport ("DFW Airport").

Instead, this case has little, if any, connection to the Marshall Division. Neither the parties nor relevant third-party entities have a physical location, relevant evidence, or a percipient witness in this Division. Indeed, the Court has granted a factually similar motion to transfer for convenience from the Marshall Division to the Sherman Division when four factors favored transfer and the remaining factors were neutral. *Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-CV-00357-JRG, 2021 WL 3520756, at *6 (E.D. Tex. June 21, 2021). SAP therefore requests that this Court follow its prior precedent and transfer this case to the Sherman Division because it "would be clearly more convenient than trial in the Marshall Division." *Id.*; *see also*, *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (finding that it was "extraordinary error" to deny transfer

to a more convenient division where three of eight factors favored transfer, other factors were

neutral, and no factors weighed against transfer).

I.     BACKGROUND

    A.     Case Overview

On January 15, 2024, Plaintiff Valtrus filed suit against SAP, asserting infringement of U.S.

Patent Nos. 6,823,409; 6,889,244; 7,152,182; 7,313,575; 6,691,139; 7,936,738, and 6,871,264

(collectively, "the Asserted Patents") in this Division. *Valtrus Innovations Ltd v. SAP America,*

*Inc.*, No. 2:24-cv-00021-JRG, ECF No. 1 ¶ 5 (E.D. Tex. Jan. 15, 2024) ("*EDTX Action*").  Valtrus

asserts infringement based on the following "Accused Products": SAP HANA, SAP HANA on

AMD EPYC, SAP Cloud Integration, SAP Data Services, and SAP Business Network Asset

Collaboration. (*See* ECF Nos. 1-8–1-13).  That same day and almost simultaneously, SAP America

filed its Complaint (and later its First Amended Complaint), which (1) requests declaratory

judgment that SAP does not infringe the '244 Patent or U.S. Patent Nos. 8,166,173 (the "'173

Patent"), 7,672,929; 7,251,588; 6,850,866; and 9,229,984 and (2) alleges that Valtrus and its

licensing agent, PPS, have violated the Delaware Consumer Fraud Act (along with related

conspiracy and aiding and abetting claims).  *SAP Am., Inc. v. Valtrus Innovations Ltd.*, No. 1:24-

cv-00054-GBW, ECF No. 1 ¶ 1; ECF No. 7 ¶ 1 (D. Del. Jan. 15, 2024) ("*Delaware Action*"); (Exs.

A ¶ 1, R ¶ 1).

    B.     **SAP's Relevant Witnesses Are Located in Plano, Texas, and Evidence Is
            Accessible From Plano, Texas, and Allen, Texas**

SAP SE is incorporated and headquartered in Germany.  (Ex. A ¶ 3).  SAP America is a

wholly owned subsidiary of SAP SE and a Delaware corporation with its principal place of

business in Newtown Square, Pennsylvania.  (*Id.* ¶ 2).  SAP America owns and operates offices in

Plano, Texas, and Allen, Texas.  Pandya Decl. ¶ 5.  The Accused Products were primarily designed

and developed outside of the United States in Germany and India. *Id.* ¶ 13. The teams responsible for designing and developing the Accused Products at issue in this case are located in Germany and India with a few individuals located in California. *See id.* ¶ 14. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

### C. SAP Has No Connection to the Marshall Division

None of the evidence SAP expects to produce is located in the Marshall Division. SAP does not own property or equipment, conduct operations, lease office space, or store or maintain documents in the Marshall Division. *Id.* ¶ 9. Further, SAP does not have any witnesses in the Marshall Division, and critically, SAP does not have any witnesses who work on the Accused Products in the Marshall Division. *Id.* ¶ 8. SAP simply has no connection to this Division.

### D. Valtrus and Related Entities Are Centrally Located in the Sherman Division.

Valtrus and its parent company, Key Patent Innovations, Inc. (KPI), are incorporated and headquartered in Ireland. (Ex. B). Valtrus's exclusive licensing agent, PPS, is organized in Delaware and has its principal place of business in Frisco, Texas. (Exs. C; D; AA ¶ 4). PPS provides intellectual property licensing and consulting services, such as "[n]egotiation and closing of licensing deals[;] [p]atent asset management[;] [p]atent portfolio mining and licensing program development; [and] [m]anagement of strategic patent prosecution and litigation programs." (Ex. E at 1; Ex. AA ¶ 4). Although Angela Quinlan, the Managing Director of both Valtrus and KPI was involved in talks with SAP, Ms. Kapu Kumar, Founding Member and Executive Vice President of PPS, was the primary and most frequent point of contact during more than 12 months

of licensing negotiations before this case was filed. (Exs. R ¶ 14; Z; AA ¶¶ 4, 6); Pandya Decl. ¶ 12. While Ms. Quinlan resides in Ireland, Ms. Kumar is located in Aubrey, Texas, within the Sherman Division.[1] (Exs. F; G; AA ¶ 2). Ms. Kumar spearheaded the discussions with SAP, including organizing and leading teleconferences between the parties, distributing information related to Valtrus and its portfolio, and conveying all licensing proposals to SAP. (Ex. H; AA ¶¶ 4, 6); Pandya Decl. ¶ 12. On several occasions, Ms. Kumar was the only individual involved in communications with SAP personnel regarding the licensing of Valtrus's patent portfolio. Pandya Decl. ¶ 12. Specifically, Ms. Kumar is the primary PPS executive who made alleged false and misleading statements to SAP personnel during license negotiations. (Ex. R ¶¶ 16–22).

Through Ms. Kumar, PPS acted as Valtrus's licensing agent beginning in October 2022 and into January 2024. (Exs. I; R ¶ 15; Z). On behalf of Valtrus, PPS routinely communicated with SAP regarding various matters, including, but not limited to, infringement and invalidity of, valuation of, and offers to license Valtrus's patent portfolio including the Asserted Patents. (Exs. R ¶¶ 14–15; Z); Pandya Decl. ¶ 12. Therefore, documents relating to infringement, invalidity, and damages are located in Frisco, Texas, with Ms. Kumar.

Thus, while key witnesses and documents from Valtrus and PPS are located in the Sherman Division, no such evidence is located in the Marshall Division.

---

[1] All PPS employees are either located within the Sherman Division or travel to the Sherman Division would be more convenient for them. In particular, Ms. Kumar and Dr. Jin-Meng Ho reside in Aubrey, Texas, and Plano, Texas, respectively, which are within the Sherman Division. (Ex. S). Ms. Amiee Pipes and Mr. Randy Mishler are located in Rockwall, Texas, and Dallas, Texas, respectively, both of which are closer to the Sherman Division than the Marshall Division. (*Id.*). At least six of PPS's 13 employees reside within commuting distance of PPS's Frisco office. (Ex. AA ¶ 5). The remaining PPS employees (i.e., Paul Seaman, Paul Riley, Pamela Riley, May Horimoto, David Rosenblatt, Stephen Pomraning, Bryan Giles, and Robert Marley) are located outside of Texas, and the Sherman Division's proximity to the DFW Airport makes travel more convenient than the Marshall Division. (Exs. O, S).

### E.    Key Third-Party Evidence Is Either Located in the Sherman Division or More Easily Accessible From the Sherman Division.

Importantly, Valtrus acquired the Asserted Patents from HPE, which has an office in Frisco, Texas, within the Sherman Division.  (Ex. I.)  Conversely, HPE has no offices within the Marshall Division.

SAP's investigation to date has not uncovered any third parties with relevant information in the Marshall Division.  The inventors of the Asserted Patents, all current or former employees of HPE, appear to currently reside in Georgetown, Texas; California; Colorado; Idaho; North Carolina; and France.  (Ex. J.)  In addition, ███████████ is headquartered in San Francisco, California, and incorporated in Delaware.  (Exs. K–L.) ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ is located in Princeton, New Jersey.  (Ex. M.)  Finally, for a number of the Asserted Patents, Valtrus primarily accuses AMD EPYC processor technology rather than anything developed or designed by SAP.  (ECF No. 1-8–1-13).  Advanced Micro Devices, Inc. (AMD) has offices in Austin, Texas, and one office near Houston, Texas.  (Ex. N.)

None of these relevant third-party entities has any connection to the Marshall Division.

## II.    LEGAL STANDARD

"[A] district court may transfer any civil action to any other district or division where it may have been brought."  28 U.S.C. § 1404(a).  If the threshold question as to whether a suit "might have been brought" in the transferee district is satisfied, it must be shown that the transferee venue is clearly more convenient than the venue chosen by the plaintiff.  *Radmax*, 720 F.3d at 288. Transfers for convenience between districts and divisions are governed by the same standard.  *Id.*

at 287–88 ((citing *In re Volkswagen AG*, 371 F.3d 201, 202–03 (5th Cir. 2004) ("*Volkswagen I*"); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

In evaluating a motion to transfer pursuant to § 1404(a), district courts consider the Fifth Circuit's non-exhaustive list of private and public interest factors. *Volkswagen I*, 371 F.3d at 203. The private interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* A plaintiff's choice of venue is not a factor in this analysis. *Volkswagen II*, 545 F.3d at 314–15; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1399–20 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor.").

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a); *Radmax*, 720 F.3d at 288 (observing that Section 1404(a) "applies as much to transfers between divisions of the same district as to transfers from one district to another"). With regard to intra-district transfers, transfer from one division to another should be granted when there are factors that favor the transferee division and no factor favors the transferor division. *Radmax*, 720 F.3d at 290. That principle applies even if the transferee division and the transferor division are geographically close. *Id.* at 288–90.

## III.   ARGUMENT

A.      **Threshold Inquiry: This Suit Could Have Been Filed in the Sherman Division**

As this Court has observed previously, "any case that could be filed in the Marshall Division could also be filed in any other division of the Eastern District of Texas, including the Sherman Division." *Viking*, 2021 WL 3520756, at *2.[2]  For the purposes of this Motion, SAP does not contest personal jurisdiction in this District.  *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.").  Accordingly, this action could have been brought in the Sherman Division.

B.      **Private-Interest Factors**

1.      Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence . . . is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019).  The Federal Circuit has explained that in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer[,]" and "the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  This factor relates to the relative—not absolute—ease of access to non-witness evidence.  *See In re Radmax*, 720 F.3d at 288.  And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020).  This factor is not superfluous even though accessing electronic documents "presents a

---

[2] "There is no dispute that this case could have been originally filed in the Sherman Division of this district. There is no federal divisional venue statute in force, and the Local Rules of this Court do not restrict the divisions in which a civil action may be filed. Likewise, personal jurisdiction in a Texas federal court turns on the jurisdiction of Texas state courts." *Id.*

lesser inconvenience." *Volkswagen II*, 545 F.3d at 316.  This District has since observed that "electronically stored documents 'bear[] less strongly on the transfer analysis.'" *Athalonz LLC v. Under Armour, Inc.*, No. 2:23-CV-00193-JRG, 2023 WL 8809293, at *2 (E.D. Tex. Dec. 20, 2023) (quoting *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023)).

The Federal Circuit has explained that the location of document custodians and where documents are created and maintained may bear on the ease of retrieval.  *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. 2021).  Here, SAP has two offices located in the Sherman Division (Plano, Texas, and Allen, Texas), ███████████████████████████████ ████████████████████████████████████████████████[3]  Pandya Decl. ¶ 6; (Ex. X); *see In re Apple*, 979 F.3d at 1340 ("[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer."); *see also In re Radmax*, 720 F.3d at 288 (observing that the standard is "*relative* ease of access, not *absolute* ease of access" (emphasis in original)).  The overwhelming majority of documents are accessible within the Sherman Division.  Pandya Decl. ¶ 5.   Notably, SAP's documents are neither located nor accessible in the Marshall Division.  *Id.* ¶ 10.  This consideration is especially important because in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer."  *In re Genentech*, 566 F.3d at 1345.

Valtrus cannot point to documents or evidence located in the Marshall Division.  Indeed, Valtrus does not allege any connection to the Marshall Division in its Complaint, and Valtrus and KPI are headquartered in Ireland with no physical presence in the United States.  (ECF No. 1 ¶ 1; Ex. B).  Rather, all of Valtrus's documents are either located or accessible via its licensing agent,

---

[3] SAP also stores and maintains documents relating to the design and development of the Accused Products in Germany and India. Pandya Decl. ¶ 13

PPS, in Frisco, Texas.  (Exs. R ¶¶ 14–15; D; Z; AA ¶¶ 4, 6).  PPS was the central point of contact with SAP before the instant suit was filed.  (Exs. R ¶ 15; Z); Pandya. Decl. ¶ 12.  Documents within PPS's control include, infringement and invalidity analyses, technical documents concerning the operation of the Accused Products, prior art references, offers to license the Asserted Patents, and valuations of the Asserted Patents, all of which are exclusively located in the Sherman Division. (Exs. R ¶¶ 14–15; Z; AA ¶ 4, 6–7); Pandya Decl. ¶ 12.  Further, PPS, acting on behalf of Valtrus, acquired the Asserted Patents from HPE, which suggests that both PPS and HPE may have records concerning the sale and valuation of the Asserted Patents.  (ECF No. 1 ¶ 1).  Such documents are likely located in, or accessible from, PPS's office in Frisco, Texas, located in the Sherman Division. (Ex. D).  The overwhelming majority of documents are accessible or located within the Sherman Division, but no documents exist in the Marshall Division.  Accordingly, this factor strongly favors transfer.  *See In re TS Tech. Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (weighing this factor in favor of transfer when all of the physical and documentary evidence was located near the transferee venue and none was located in Texas).

### 2.    The Cost of Attendance for Willing Witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d at 1343–45.  "Party witnesses are generally deemed to be willing witnesses."  *Unicorn Energy GMBH v. Tesla, Inc.*, No. 2:20-CV-00338-JRG, 2021 WL 4034515, at *2 (E.D. Tex. Sept. 3, 2021).  The Fifth Circuit has adopted a "100-mile rule."  *Volkswagen I*, 371 F.3d at 204–05; *see also Volkswagen II*, 545 F.3d at 317.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204–05.

Here, ███████████████████████████████████████████████

████████████████████████████████████████████████████

███████  Pandya Decl. ¶ 14–15.  Travel to the Sherman Division is clearly more convenient because the distance between SAP's Plano Office and the Plano Courthouse as well as SAP's Plano Office and the Sherman Courthouse is two miles and approximately 47 miles, respectively, whereas travel to the Marshall Division from SAP's Plano Office (168 miles) is more than three times as far as the Sherman Courthouse and *84 times* as far as the Plano Courthouse.  (Ex. Y).  All other SAP witnesses knowledgeable about the Accused Products are located outside of Texas.[4]  As a result, travel to the Sherman Division will be more convenient and affordable for SAP's out-of-state witnesses given their proximity to the DFW Airport.  (Ex. O).

Further, negotiations concerning the Asserted Patents took place, at least partly, in Frisco, Texas, via PPS.  (Exs. D; AA ¶ 4); Pandya Decl. ¶ 12.  Ms. Kumar was the primary contact during pre-litigation communications between SAP and Valtrus.  (Exs. Z; AA ¶ 4, 7); Pandya Decl. ¶ 12. Ms. Kumar has knowledge related to infringement (such as Valtrus's infringement theories) and damages, including valuation of the Asserted Patents and Valtrus's licensing practices.  *Id.*  Given that PPS is Valtrus's licensing agent, Ms. Kumar is likely to be a willing witness because of her extensive knowledge concerning the Asserted Patents and value thereof as well as the functionality of the Accused Products.  *Id.*  Dr. Ho, who resides in Plano, Texas, is also a percipient, willing witness with pertinent knowledge of Valtrus's licensing practices.  (Ex. AA ¶ 7).  PPS is located in Frisco, Texas; Ms. Kumar resides in Aubrey, Texas; and Dr. Ho resides in Plano, Texas—all of which are within the Sherman Division.  (Exs. D; G; AA ¶¶ 2, 7).  Further, approximately half of

---

[4] SAP employees responsible for the development and design of the Accused Products are located primarily in Germany and India, including a few employees in California and one employee in Canada. Pandya Decl. ¶ 14.

PPS's employees commute to its Frisco office, also located in the Sherman Division.  (AA ¶ 5).  The cost and inconvenience for Valtrus to make Ms. Kumar, Dr. Ho, and other PPS employees available is higher in the Marshall Division than it is in the Sherman Division. (Exs. P–Q); *Viking Techs.*, 2021 WL 3520756, at *4 ("[I]t is inevitable that [the] [d]efendants' knowledgeable witnesses—likely including multiple corporate representatives—will be inconvenience[d] by having to travel from their homes and offices in North Texas to attend trial in the Marshall Division.").

Further, Valtrus will likely call Ms. Quinlan as a witness at trial given her unique knowledge on issues such as the business operations of Valtrus and the acquisition and value of the Asserted Patents.  (Exs. R ¶¶ 14–15; Z); Pandya Decl. ¶ 12.  Valtrus maintains that neither KPI nor Valtrus have employees in the United States.  *Red Hat, Inc. v. Valtrus Innovations, Ltd.*, No. 4:22-cv-05289-YGR, ECF No. 39 at 2–3 (N.D. Cal. Dec. 7, 2022); (Ex. T at 2–3).  Based on its prior representation, Valtrus cannot point to any willing witnesses within the United States, much less the Marshall Division.  As such, any willing witnesses Valtrus brings to trial, including Ms. Quinlan, will be less burdened traveling to the Sherman Division given its proximity to the DFW airport than traveling to the Marshall Division.  (*See* Exs. O–P).  Therefore, this factor favors transfer to the Sherman Division.

### 3.    The Availability of Compulsory Process

The third factor relates to a court's ability to compel testimony of relevant witnesses. "A court cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same state and will not cause the witnesses to incur substantial travel expenses." *Affinity Labs of Tex. v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 857 (E.D. Tex. 2013); *see also* FED. R. CIV. P. 45(c)(3)(A)(ii), 45(c)(3)(B)(iii).  When third-party witnesses are "overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing

11

of unwillingness for each witness." *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. 2021) (citations omitted).  Courts cannot "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020).

Non-party witnesses, if any, are almost certainly located closer to the Sherman Division than to this Division.  For instance, a named inventor of the '409 Patent, Philip Jones, resides in Georgetown, Texas.[5]  (Ex. J at 20–21).  He is a senior consultant for HPE and has relevant knowledge concerning the technology claimed by the '409 Patent.  (*Id.* at 20).  Although he is within the subpoena power of both courts, he is located closer to the Sherman Division than to this Division. (Ex. V); FED. R. CIV. P. 45(c)(1)(B)(ii) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within the state where the person resides, is employed, or regularly transacts business in person, if the person is commanded to attend a trial and would not incur substantial expense.").  Also, HPE sold the Asserted Patents to Valtrus and has offices within the Sherman Division but not in this Division.  (Ex. I).  Therefore, HPE employees knowledgeable about claimed inventions and the sale of the Asserted Patents will be less burdened traveling to the Sherman Division than to the Marshall Division.

SAP, HPE, and PPS, each have offices within the Sherman Division, therefore, it is likely that unwilling witnesses, such as former employees, are likely to reside within the Sherman Division's 100-mile subpoena radius.  Pandya Decl. ¶ 5; (Exs. D; I); *see In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *3–4 (Fed. Cir. 2022) (holding that third-party witnesses need not have "'important' testimony," only relevant and material information).  Conversely, Valtrus fails

---

[5] All other named inventors of the Asserted Patents are located outside of Texas. (Ex. J). As previously mentioned, given the Sherman Division's proximity to Dallas's major airports, travel will be less costly and burdensome than travel to the Marshall Division.  (Exs. J, O).

to identify any connection between the Marshall Division and the parties.  (*See generally* ECF. No. 1).  Accordingly, this factor weighs in favor of transfer.

4.     All Other Practical Problems

With regard to "other practical problems that make trial of a case easy, expeditious and inexpensive," this factor addresses concerns based on "judicial economy." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010); *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *3 (E.D. Tex. Nov. 27, 2019).

This factor is neutral because this case is in its infancy.  Indeed, the Court will not enter a scheduling order until March 25, 2024; infringement and invalidity contentions have not been exchanged; no discovery has been exchanged; and major deadlines have not been scheduled (e.g., *Markman* hearing, close of fact and expert discovery, pre-trial conference, and trial). (*See* ECF. No. 16).  Transfer will create no practical problems because any delay associated with transfer is only relevant "in rare and special circumstances."  *Radmax*, 720 F.3d at 289 (quoting *In re Horseshoe Ent.*, 337 F.3d 429, 435 (5th Cir. 2003)).  Because this case is in its early stages, no such rare and special circumstances exist.

C.     **Public-Interest Factors**

1.     Administrative Difficulties Flowing from Court Congestion

"To the extent that court congestion is relevant [to a transfer motion], the speed with which a case can come to trial and be resolved may be a factor."  *In re Genentech*, 566 F.3d at 1347. However, "a court's general ability to set a fast-paced schedule is not particularly relevant to" the court congestion factor. *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. 2021) (quoting *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021)). Because this factor is frequently the "most speculative," where "other relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh all of those

other factors.'" *In re Apple*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. 2021) ((quoting *In re Genentech*, 566 F.3d at 1347)).

According to Lexis Litigation Analytics, the median time to trial for civil cases before this Court is 617 days. (Ex. W). The median time to trial for Judge Amos Mazzant is 580 days whereas Judge Sean Jordan has no such estimate. (*Id.*). While these statistics suggest that it is possible this case could reach trial sooner in the Sherman Division than this Division by approximately 37 days, that fact is "not particularly relevant to" the court-congestion factor. *In re DISH Network*, 2021 WL 4911981, at *4. This factor should be neutral.

### 2.  The Local Interest in Having Localized Interests Decided at Home

This factor analyzes the "significant connections between a particular venue and the events that gave rise to a suit." *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. 2021). This factor considers the relationship between the dispute and the community where the jury pool will be drawn, as "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (citations omitted). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

Here, the Sherman Division has a more legitimate interest in resolving this dispute (relative to the Marshall Division) because at least some of the events relevant to this case occurred there. As previously explained, pre-litigation communications concerning the Asserted Patents occurred via PPS whose headquarters are in Frisco, Texas. Pandya Decl. ¶ 12; (Ex. D). Also, SAP, HPE, and PPS, each have offices located in the Sherman Division. Pandya Decl. ¶ 5; (Exs. D, I). Further, several witnesses are physically present within the Sherman Division: Ms. Kumar and Dr. Ho (Exs. G; S at 19, 27; AA ¶ 2, 6); Mr. Tumu and Mr. Padakal, Pandya Decl. ¶¶ 14–15; and Mr. Jones (Exs.

J at 21; V).  No entity or individual related to this case has a physical presence within the Marshall Division.  Pandya Decl. ¶ 5; (Exs. B, D, I, K, M, N).  These circumstances provide the Sherman Division with a greater localized interest in this case.  But Valtrus does not specify a meaningful connection between SPE and this Division.  In fact, Valtrus fails to demonstrate that SPE has any physical presence in this Division.  Rather, all related entities, potential witnesses, and relevant documents are closer or within the Sherman Division.  *Farmobile LLC v. Farmers Edge Inc.*, No. 2:21-cv-00411-JRG, 2022 WL 2653893, at *6 (E.D. Tex. July 7, 2022) (holding that the localized interest factor weighs in favor of transfer "where a movant has a local interest in the transferee venue and no presence in the transferor venue").  Therefore, as this Court has previously held, this factor favors transfer. *Viking Techs.*, 2021 WL 3520756, at *7 ("The Court agrees with Defendants that this factor favors transfer because, relative to the Marshall Division, potential jurors in the Sherman Division have a greater interest in adjudicating the rights of businesses that have a material physical presence in their immediate community.").

3.   The Familiarity of the Forum with the Law that Will Govern the Case and the Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law

The remaining two public-interest factors are neutral and not applicable to this Motion.

## IV.   CONCLUSION

On balance, the public- and private-interest factors either favor transfer or are neutral.  As the Fifth Circuit has counseled, "The facts and circumstances of this case are wholly grounded in the transferee forum (the [Sherman] Division), which is a clearly more convenient venue, and this case has no connection to the Marshall Division."  *In re Radmax*, 720 F.3d at 290 ("In *Volkswagen II*, 545 F.3d at 318, we classified as an 'extraordinary error[]' the 'fact that not a single relevant factor favors the [plaintiffs'] chosen venue.'").  SAP therefore requests that the Court grant its Motion and transfer this case to the Sherman Division under 28 U.S.C. § 1404(a).

Dated:   March 20, 2024                  Respectfully submitted,

                                         By:   */s/ Thomas M. Melsheimer*
                                         Thomas M. Melsheimer
                                         State Bar No. 13922550
                                         tmelsheimer@winston.com
                                         M. Brett Johnson
                                         State Bar No. 00790975
                                         mbjohnson@winston.com
                                         Michael A. Bittner
                                         State Bar No. 24064905
                                         mbittner@winston.com
                                         **WINSTON & STRAWN LLP**
                                         2121 N. Pearl St., 9th Floor
                                         Dallas, TX 75201
                                         Telephone: (214) 453-6500

                                         **ATTORNEYS FOR**
                                         **SAP AMERICA, INC. and SAP SE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served by email on all counsel of record via email on March 20, 2024.

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned counsel certifies that on March 20, 2024, counsel for SAP conferred with counsel for Valtrus, and Valtrus opposes the Motion.

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer