Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **VALTRUS INNOVATIONS LTD.,** | **Civil Action No. 2:24-cv-21** |
|   Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| **SAP AMERICA, INC. AND SAP SE,** | |
|   Defendants. | |

## DEFENDANTS SAP AMERICA, INC. AND SAP SE'S
## MOTION FOR INTRA-DISTRICT TRANSFER UNDER 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

**Page**

I. BACKGROUND .................................................................................................... 2

    A. Case Overview ............................................................................................ 2

    B. SAP's Relevant Witnesses and Evidence Are Located in Pennsylvania and Plano, Texas ......................................................................................... 3

    C. SAP Has No Connection to the Marshall Division ................................... 3

    D. Valtrus and Related Entities Are Centrally Located in the Sherman Division ....... 3

    E. Key Third-Party Evidence Is Either Located in the Sherman Division or More Easily Accessible from the Sherman Division ...................................... 5

II. LEGAL STANDARD ........................................................................................... 6

III. ARGUMENT ........................................................................................................ 7

    A. Threshold Inquiry: This Suit Could Have Been Filed in the Sherman Division .... 7

    B. Private-Interest Factors ............................................................................. 7

        1. Relative Ease of Access to Sources of Proof ................................. 7

        2. The Cost of Attendance for Willing Witnesses ........................... 10

        3. The Availability of Compulsory Process ...................................... 11

        4. All Other Practical Problems ....................................................... 13

    C. Public-Interest Factors ............................................................................ 13

        1. Administrative Difficulties Flowing from Court Congestion ...... 13

        2. The Local Interest in Having Localized Interests Decided at Home ...... 14

        3. The Familiarity of the Forum with the Law That Will Govern the Case and the Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law ...................................... 15

IV. CONCLUSION .................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. Samsung Elecs. Co.*,
968 F. Supp. 2d 852 (E.D. Tex. 2013) ................................................................................. 11

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ........................................................................................ 7, 8

*In re Apple*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. 2021) ............................................................. 13

*Athalonz LLC v. Under Armour, Inc.*,
No. 2:23-CV-00193-JRG, 2023 WL 8809293 (E.D. Tex. Dec. 20, 2023) ............................. 8

*In re DISH Network L.L.C.*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. 2021) ...................................................... 13, 14

*Farmobile LLC v. Farmers Edge Inc.*,
No. 2:21-cv-00411-JRG, 2022 WL 2653893 (E.D. Tex. July 7, 2022) ................................. 14

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) ............................. 7

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ............................................................................. 7, 8, 9, 13

*In re Google LLC*,
No. 2021-171, 2021 WL 4592280 (Fed. Cir. 2021) ............................................................. 14

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. 2021) ............................................................... 8

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ........................................................................................... 14

*In re Horseshoe Ent.*,
337 F.3d 429 (5th Cir. 2003) ............................................................................................... 13

*In re HP Inc.*,
826 F. App'x 899 (Fed. Cir. 2020) ...................................................................................... 11

*In re Hulu, LLC*,
No. 2021-142, 2021 WL 3278194 (Fed. Cir. 2021) ............................................................. 11

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)........................................................................................................7

*In re Netflix, Inc.*,
   No. 2022-110, 2022 WL 167470 (Fed. Cir. 2022) .................................................12

*Quest NetTech Corp. v. Apple, Inc.*,
   No. 2:19-CV-00118-JRG, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019)...........................13

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) .......................................................................... *passim*

*Red Hat, Inc. v. Valtrus Innovations, Ltd.*,
   No. 4:22-cv-05289-YGR, ECF No. 39 (N.D. Cal. Dec. 7, 2022)...........................................11

*In re Samsung Elecs. Co.*,
   2 F.4th 1371 (Fed. Cir. 2021) ......................................................................................13

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ........................................................................................8

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008).................................................................................6, 9

*Unicorn Energy GMBH v. Tesla, Inc.*,
   No. 2:20-CV-00338-JRG, 2021 WL 4034515 (E.D. Tex. Sept. 3, 2021) .................................9

*Valtrus Innovations Ltd v. SAP Am., Inc.*,
   No. 2:24-cv-00021-JRG (E.D. Tex. Jan. 15, 2024) ......................................................2

*Viking Techs., LLC v. Assurant, Inc.*,
   No. 2:20-CV-00357-JRG, 2021 WL 3520756 (E.D. Tex. June 21, 2021) ...............1, 7, 10, 15

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010)..................................................................................12

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ..........................................................................6, 10, 14

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .......................................................................6, 8, 10, 15

**Statutes**

28 U.S.C. § 1404...........................................................................................................1

28 U.S.C. § 1404(a) .........................................................................................5, 6, 10, 15

**Other Authorities**

FED. R. CIV. P. 45(c)(1)(B)(ii)..........................................................................................................12

FED. R. CIV. P. 45(c)(3)(A)(ii) .........................................................................................................11

FED. R. CIV. P. 45(c)(3)(B)(iii) ........................................................................................................11

Defendants SAP America, Inc. and SAP SE (collectively, "SAP") move to transfer this case to the Sherman Division of this District under 28 U.S.C. § 1404.  The Court should transfer this case to the Sherman Division (i.e., the genesis and center of this dispute) because the overwhelming majority of relevant witnesses and evidence for both parties are located there.  In particular, the parties engaged in pre-suit negotiations and discussed issues concerning purported infringement, invalidity, and licenses to the Asserted Patents.  SAP, which has two offices within the Sherman Division, primarily communicated with Valtrus Innovations Ltd.'s ("Valtrus") licensing agent, Patent Platform Services LLC (PPS), which is headquartered in the Sherman Division.  Further, Valtrus acquired the Asserted Patents from Hewlett Packard Enterprise (HPE), which presumably has relevant evidence concerning the value of the Asserted Patents and has an office located in the Sherman Division.  Moreover, the Sherman Division, unlike this Division, has subpoena power over non-party witnesses, including PPS personnel, and is more convenient for all other out-of-state witnesses given the Sherman Division's proximity to the Dallas Fort Worth International Airport ("DFW Airport").

Instead, this case has little, if any, connection to the Marshall Division.  Neither the parties nor relevant third-party entities have a physical location, relevant evidence, or a percipient witness in this Division.  Indeed, the Court has granted a factually similar motion to transfer for convenience from the Marshall Division to the Sherman Division when four factors favored transfer and the remaining factors were neutral.  *Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-CV-00357-JRG, 2021 WL 3520756, at *6 (E.D. Tex. June 21, 2021).  SAP therefore requests that this Court follow its prior precedent and transfer this case to the Sherman Division because it "would be clearly more convenient than trial in the Marshall Division." *Id.*; *see also*, *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (finding that it was "extraordinary error" to deny transfer

to a more convenient division where three of eight factors favored transfer, other factors were neutral, and no factors weighed against transfer).

## I.    BACKGROUND

### A.    Case Overview

On January 15, 2024, Plaintiff Valtrus filed suit against SAP, asserting infringement of U.S. Patent Nos. 6,823,409; 6,889,244; 7,152,182; 7,313,575; 6,691,139; 7,936,738, and 6,871,264 (collectively, "the Asserted Patents") in this Division.  *Valtrus Innovations Ltd v. SAP America, Inc.*, No. 2:24-cv-00021-JRG, ECF No. 1 ¶ 5 (E.D. Tex. Jan. 15, 2024) ("*EDTX Action*").  Valtrus asserts infringement based on the following "Accused Products": SAP HANA, SAP HANA on AMD EPYC, SAP Cloud Integration, SAP Data Services, and SAP Business Network Asset Collaboration. (*See* ECF Nos. 1-8–1-13).  That same day and  almost simultaneously, SAP America filed its Complaint (and later its First Amended Complaint), which (1) requests declaratory judgment that SAP does not infringe the '244 Patent or U.S. Patent Nos. 8,166,173 (the "'173 Patent"), 7,672,929; 7,251,588; 6,850,866; and 9,229,984 and (2) alleges that Valtrus and its licensing agent, PPS, have violated the Delaware Consumer Fraud Act (along with related conspiracy and aiding and abetting claims).  *SAP Am., Inc. v. Valtrus Innovations Ltd.*, No. 1:24-cv-00054-GBW, ECF No. 1 ¶ 1; ECF No. 7 ¶ 1 (D. Del. Jan. 15, 2024) ("*Delaware Action*"); (Exs. A ¶ 1, R ¶ 1).

### B.    SAP's Relevant Witnesses Are Located in Plano, Texas, and Evidence Is Accessible From Plano, Texas, and Allen, Texas

SAP SE is incorporated and headquartered in Germany.  (Ex. A ¶ 3).  SAP America is a wholly owned subsidiary of SAP SE and a Delaware corporation with its principal place of business in Newtown Square, Pennsylvania.  (*Id.* ¶ 2).  SAP America owns and operates offices in Plano, Texas, and Allen, Texas.  Pandya Decl. ¶ 5.  The Accused Products were primarily designed

and developed outside of the United States in Germany and India. *Id.* ¶ 13. The teams responsible for designing and developing the Accused Products at issue in this case are located in Germany and India with a few individuals located in California. *See id.* ¶ 14. ███████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████

### C.    SAP Has No Connection to the Marshall Division

None of the evidence SAP expects to produce is located in the Marshall Division. SAP does not own property or equipment, conduct operations, lease office space, or store or maintain documents in the Marshall Division. *Id.* ¶ 9. Further, SAP does not have any witnesses in the Marshall Division, and critically, SAP does not have any witnesses who work on the Accused Products in the Marshall Division. *Id.* ¶ 8. SAP simply has no connection to this Division.

### D.    Valtrus and Related Entities Are Centrally Located in the Sherman Division.

Valtrus and its parent company, Key Patent Innovations, Inc. (KPI), are incorporated and headquartered in Ireland. (Ex. B). Valtrus's exclusive licensing agent, PPS, is organized in Delaware and has its principal place of business in Frisco, Texas. (Exs. C; D; AA ¶ 4). PPS provides intellectual property licensing and consulting services, such as "[n]egotiation and closing of licensing deals[;] [p]atent asset management[;] [p]atent portfolio mining and licensing program development; [and] [m]anagement of strategic patent prosecution and litigation programs." (Ex. E at 1; Ex. AA ¶ 4). Although Angela Quinlan, the Managing Director of both Valtrus and KPI was involved in talks with SAP, Ms. Kapu Kumar, Founding Member and Executive Vice President of PPS, was the primary and most frequent point of contact during more than 12 months

of licensing negotiations before this case was filed. (Exs. R ¶ 14; Z; AA ¶¶ 4, 6); Pandya Decl. ¶ 12. While Ms. Quinlan resides in Ireland, Ms. Kumar is located in Aubrey, Texas, within the Sherman Division.[1] (Exs. F; G; AA ¶ 2). Ms. Kumar spearheaded the discussions with SAP, including organizing and leading teleconferences between the parties, distributing information related to Valtrus and its portfolio, and conveying all licensing proposals to SAP. (Ex. H; AA ¶¶ 4, 6); Pandya Decl. ¶ 12. On several occasions, Ms. Kumar was the only individual involved in communications with SAP personnel regarding the licensing of Valtrus's patent portfolio. Pandya Decl. ¶ 12. Specifically, Ms. Kumar is the primary PPS executive who made alleged false and misleading statements to SAP personnel during license negotiations. (Ex. R ¶¶ 16–22).

Through Ms. Kumar, PPS acted as Valtrus's licensing agent beginning in October 2022 and into January 2024. (Exs. I; R ¶ 15; Z). On behalf of Valtrus, PPS routinely communicated with SAP regarding various matters, including, but not limited to, infringement and invalidity of, valuation of, and offers to license Valtrus's patent portfolio including the Asserted Patents. (Exs. R ¶¶ 14–15; Z); Pandya Decl. ¶ 12. Therefore, documents relating to infringement, invalidity, and damages are located in Frisco, Texas, with Ms. Kumar.

Thus, while key witnesses and documents from Valtrus and PPS are located in the Sherman Division, no such evidence is located in the Marshall Division.

---

[1] All PPS employees are either located within the Sherman Division or travel to the Sherman Division would be more convenient for them. In particular, Ms. Kumar and Dr. Jin-Meng Ho reside in Aubrey, Texas, and Plano, Texas, respectively, which are within the Sherman Division. (Ex. S). Ms. Amiee Pipes and Mr. Randy Mishler are located in Rockwall, Texas, and Dallas, Texas, respectively, both of which are closer to the Sherman Division than the Marshall Division. (*Id.*). At least six of PPS's 13 employees reside within commuting distance of PPS's Frisco office. (Ex. AA ¶ 5). The remaining PPS employees (i.e., Paul Seaman, Paul Riley, Pamela Riley, May Horimoto, David Rosenblatt, Stephen Pomraning, Bryan Giles, and Robert Marley) are located outside of Texas, and the Sherman Division's proximity to the DFW Airport makes travel more convenient than the Marshall Division. (Exs. O, S).

**E.    Key Third-Party Evidence Is Either Located in the Sherman Division or More Easily Accessible From the Sherman Division.**

Importantly, Valtrus acquired the Asserted Patents from HPE, which has an office in Frisco, Texas, within the Sherman Division.  (Ex. I.)  Conversely, HPE has no offices within the Marshall Division.

SAP's investigation to date has not uncovered any third parties with relevant information in the Marshall Division.  The inventors of the Asserted Patents, all current or former employees of HPE, appear to currently reside in Georgetown, Texas; California; Colorado; Idaho; North Carolina; and France.  (Ex. J.)  In addition, ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ is headquartered in San Francisco, California, and incorporated in Delaware.  (Exs. K–L.)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is located in Princeton, New Jersey.  (Ex. M.)  Finally, for a number of the Asserted Patents, Valtrus primarily accuses AMD EPYC processor technology rather than anything developed or designed by SAP.  (ECF No. 1-8–1-13).  Advanced Micro Devices, Inc. (AMD) has offices in Austin, Texas, and one office near Houston, Texas.  (Ex. N.)

None of these relevant third-party entities has any connection to the Marshall Division.

## II.    LEGAL STANDARD

"[A] district court may transfer any civil action to any other district or division where it may have been brought."  28 U.S.C. § 1404(a).  If the threshold question as to whether a suit "might have been brought" in the transferee district is satisfied, it must be shown that the transferee venue is clearly more convenient than the venue chosen by the plaintiff.  *Radmax*, 720 F.3d at 288.  Transfers for convenience between districts and divisions are governed by the same standard.  *Id.*

at 287–88 ((citing *In re Volkswagen AG*, 371 F.3d 201, 202–03 (5th Cir. 2004) ("*Volkswagen I*");

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

In evaluating a motion to transfer pursuant to § 1404(a), district courts consider the Fifth

Circuit's non-exhaustive list of private and public interest factors. *Volkswagen I*, 371 F.3d at 203.

The private interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the

availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of

attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case

easy, expeditious and inexpensive." *Id.* The public interest factors include: (1) "the administrative

difficulties flowing from court congestion"; (2) "the local interest in having localized interests

decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4)

"the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

A plaintiff's choice of venue is not a factor in this analysis. *Volkswagen II*, 545 F.3d at 314–15; *In

re TS Tech USA Corp.*, 551 F.3d 1315, 1399–20 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly

forbids treating the plaintiff's choice of venue as a distinct factor.").

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought[.]"

28 U.S.C. § 1404(a); *Radmax*, 720 F.3d at 288 (observing that Section 1404(a) "applies as much

to transfers between divisions of the same district as to transfers from one district to another").

With regard to intra-district transfers, transfer from one division to another should be granted when

there are factors that favor the transferee division and no factor favors the transferor division.

*Radmax*, 720 F.3d at 290. That principle applies even if the transferee division and the transferor

division are geographically close. *Id.* at 288–90.

## III.   ARGUMENT

A.      **Threshold Inquiry: This Suit Could Have Been Filed in the Sherman Division**

As this Court has observed previously, "any case that could be filed in the Marshall Division could also be filed in any other division of the Eastern District of Texas, including the Sherman Division." *Viking*, 2021 WL 3520756, at *2.[2]  For the purposes of this Motion, SAP does not contest personal jurisdiction in this District.  *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.").  Accordingly, this action could have been brought in the Sherman Division.

B.      **Private-Interest Factors**

1.      Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence . . . is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019).  The Federal Circuit has explained that in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer[,]" and "the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  This factor relates to the relative—not absolute—ease of access to non-witness evidence.  *See In re Radmax*, 720 F.3d at 288.  And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020).  This factor is not superfluous even though accessing electronic documents "presents a

---

[2] "There is no dispute that this case could have been originally filed in the Sherman Division of this district. There is no federal divisional venue statute in force, and the Local Rules of this Court do not restrict the divisions in which a civil action may be filed. Likewise, personal jurisdiction in a Texas federal court turns on the jurisdiction of Texas state courts." *Id.*

lesser inconvenience." *Volkswagen II*, 545 F.3d at 316. This District has since observed that "electronically stored documents 'bear[] less strongly on the transfer analysis.'" *Athalonz LLC v. Under Armour, Inc.*, No. 2:23-CV-00193-JRG, 2023 WL 8809293, at *2 (E.D. Tex. Dec. 20, 2023) (quoting *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023)).

The Federal Circuit has explained that the location of document custodians and where documents are created and maintained may bear on the ease of retrieval. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. 2021). Here, SAP has two offices located in the Sherman Division (Plano, Texas, and Allen, Texas), ███████████████████████████ ██████████████████████████████████████████████[3] Pandya Decl. ¶ 6; (Ex. X); *see In re Apple*, 979 F.3d at 1340 ("[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer."); *see also In re Radmax*, 720 F.3d at 288 (observing that the standard is "*relative* ease of access, not *absolute* ease of access" (emphasis in original)). The overwhelming majority of documents are accessible within the Sherman Division. Pandya Decl. ¶ 5. Notably, SAP's documents are neither located nor accessible in the Marshall Division. *Id.* ¶ 10. This consideration is especially important because in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech*, 566 F.3d at 1345.

Valtrus cannot point to documents or evidence located in the Marshall Division. Indeed, Valtrus does not allege any connection to the Marshall Division in its Complaint, and Valtrus and KPI are headquartered in Ireland with no physical presence in the United States. (ECF No. 1 ¶ 1; Ex. B). Rather, all of Valtrus's documents are either located or accessible via its licensing agent,

---

[3] SAP also stores and maintains documents relating to the design and development of the Accused Products in Germany and India. Pandya Decl. ¶ 13

PPS, in Frisco, Texas.  (Exs. R ¶¶ 14–15; D; Z; AA ¶¶ 4, 6).  PPS was the central point of contact with SAP before the instant suit was filed.  (Exs. R ¶ 15; Z); Pandya. Decl. ¶ 12.  Documents within PPS's control include, infringement and invalidity analyses, technical documents concerning the operation of the Accused Products, prior art references, offers to license the Asserted Patents, and valuations of the Asserted Patents, all of which are exclusively located in the Sherman Division.  (Exs. R ¶¶ 14–15; Z; AA ¶ 4, 6–7); Pandya Decl. ¶ 12.  Further, PPS, acting on behalf of Valtrus, acquired the Asserted Patents from HPE, which suggests that both PPS and HPE may have records concerning the sale and valuation of the Asserted Patents.  (ECF No. 1 ¶ 1).  Such documents are likely located in, or accessible from, PPS's office in Frisco, Texas, located in the Sherman Division.  (Ex. D).  The overwhelming majority of documents are accessible or located within the Sherman Division, but no documents exist in the Marshall Division.  Accordingly, this factor strongly favors transfer.  *See In re TS Tech. Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (weighing this factor in favor of transfer when all of the physical and documentary evidence was located near the transferee venue and none was located in Texas).

### 2.    The Cost of Attendance for Willing Witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d at 1343–45.  "Party witnesses are generally deemed to be willing witnesses." *Unicorn Energy GMBH v. Tesla, Inc.*, No. 2:20-CV-00338-JRG, 2021 WL 4034515, at *2 (E.D. Tex. Sept. 3, 2021).  The Fifth Circuit has adopted a "100-mile rule." *Volkswagen I*, 371 F.3d at 204–05; *see also Volkswagen II*, 545 F.3d at 317.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

Here,

██████████████████████████████████████

██████  Pandya Decl. ¶ 14–15.  Travel to the Sherman Division is clearly more convenient because the distance between SAP's Plano Office and the Plano Courthouse as well as SAP's Plano Office and the Sherman Courthouse is two miles and approximately 47 miles, respectively, whereas travel to the Marshall Division from SAP's Plano Office (168 miles) is more than three times as far as the Sherman Courthouse and *84 times* as far as the Plano Courthouse.  (Ex. Y).  All other SAP witnesses knowledgeable about the Accused Products are located outside of Texas.[4]  As a result, travel to the Sherman Division will be more convenient and affordable for SAP's out-of-state witnesses given their proximity to the DFW Airport.  (Ex. O).

Further, negotiations concerning the Asserted Patents took place, at least partly, in Frisco, Texas, via PPS.  (Exs. D; AA ¶ 4); Pandya Decl. ¶ 12.  Ms. Kumar was the primary contact during pre-litigation communications between SAP and Valtrus.  (Exs. Z; AA ¶ 4, 7); Pandya Decl. ¶ 12.  Ms. Kumar has knowledge related to infringement (such as Valtrus's infringement theories) and damages, including valuation of the Asserted Patents and Valtrus's licensing practices.  *Id.*  Given that PPS is Valtrus's licensing agent, Ms. Kumar is likely to be a willing witness because of her extensive knowledge concerning the Asserted Patents and value thereof as well as the functionality of the Accused Products.  *Id.*  Dr. Ho, who resides in Plano, Texas, is also a percipient, willing witness with pertinent knowledge of Valtrus's licensing practices.  (Ex. AA ¶ 7).  PPS is located in Frisco, Texas; Ms. Kumar resides in Aubrey, Texas; and Dr. Ho resides in Plano, Texas—all of which are within the Sherman Division.  (Exs. D; G; AA ¶¶ 2, 7).  Further, approximately half of

---

[4] SAP employees responsible for the development and design of the Accused Products are located primarily in Germany and India, including a few employees in California and one employee in Canada. Pandya Decl. ¶ 14.

PPS's employees commute to its Frisco office, also located in the Sherman Division.  (AA ¶ 5).
The cost and inconvenience for Valtrus to make Ms. Kumar, Dr. Ho, and other PPS employees
available is higher in the Marshall Division than it is in the Sherman Division. (Exs. P–Q); *Viking
Techs.*, 2021 WL 3520756, at *4 ("[I]t is inevitable that [the] [d]efendants' knowledgeable
witnesses—likely including multiple corporate representatives—will be inconvenience[d] by
having to travel from their homes and offices in North Texas to attend trial in the Marshall
Division.").

Further, Valtrus will likely call Ms. Quinlan as a witness at trial given her unique
knowledge on issues such as the business operations of Valtrus and the acquisition and value of
the Asserted Patents.  (Exs. R ¶¶ 14–15; Z); Pandya Decl. ¶ 12.  Valtrus maintains that neither KPI
nor Valtrus have employees in the United States.  *Red Hat, Inc. v. Valtrus Innovations, Ltd.*, No.
4:22-cv-05289-YGR, ECF No. 39 at 2–3 (N.D. Cal. Dec. 7, 2022); (Ex. T at 2–3).  Based on its
prior representation, Valtrus cannot point to any willing witnesses within the United States, much
less the Marshall Division.  As such, any willing witnesses Valtrus brings to trial, including Ms.
Quinlan, will be less burdened traveling to the Sherman Division given its proximity to the DFW
airport than traveling to the Marshall Division.  (*See* Exs. O–P).  Therefore, this factor favors
transfer to the Sherman Division.

### 3.    The Availability of Compulsory Process

The third factor relates to a court's ability to compel testimony of relevant witnesses. "A
court cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same
state and will not cause the witnesses to incur substantial travel expenses." *Affinity Labs of Tex. v.
Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 857 (E.D. Tex. 2013); *see also* FED. R. CIV. P.
45(c)(3)(A)(ii), 45(c)(3)(B)(iii).  When third-party witnesses are "overwhelmingly located within
the subpoena power of only the transferee venue, this factor favors transfer even without a showing

of unwillingness for each witness." *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. 2021) (citations omitted). Courts cannot "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020).

Non-party witnesses, if any, are almost certainly located closer to the Sherman Division than to this Division. For instance, a named inventor of the '409 Patent, Philip Jones, resides in Georgetown, Texas.[5] (Ex. J at 20–21). He is a senior consultant for HPE and has relevant knowledge concerning the technology claimed by the '409 Patent. (*Id.* at 20). Although he is within the subpoena power of both courts, he is located closer to the Sherman Division than to this Division. (Ex. V); FED. R. CIV. P. 45(c)(1)(B)(ii) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within the state where the person resides, is employed, or regularly transacts business in person, if the person is commanded to attend a trial and would not incur substantial expense."). Also, HPE sold the Asserted Patents to Valtrus and has offices within the Sherman Division but not in this Division. (Ex. I). Therefore, HPE employees knowledgeable about claimed inventions and the sale of the Asserted Patents will be less burdened traveling to the Sherman Division than to the Marshall Division.

SAP, HPE, and PPS, each have offices within the Sherman Division, therefore, it is likely that unwilling witnesses, such as former employees, are likely to reside within the Sherman Division's 100-mile subpoena radius. Pandya Decl. ¶ 5; (Exs. D; I); *see In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *3–4 (Fed. Cir. 2022) (holding that third-party witnesses need not have "'important' testimony," only relevant and material information). Conversely, Valtrus fails

---

[5] All other named inventors of the Asserted Patents are located outside of Texas. (Ex. J). As previously mentioned, given the Sherman Division's proximity to Dallas's major airports, travel will be less costly and burdensome than travel to the Marshall Division. (Exs. J, O).

to identify any connection between the Marshall Division and the parties. (*See generally* ECF. No. 1). Accordingly, this factor weighs in favor of transfer.

4.      All Other Practical Problems

With regard to "other practical problems that make trial of a case easy, expeditious and inexpensive," this factor addresses concerns based on "judicial economy." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010); *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *3 (E.D. Tex. Nov. 27, 2019).

This factor is neutral because this case is in its infancy. Indeed, the Court will not enter a scheduling order until March 25, 2024; infringement and invalidity contentions have not been exchanged; no discovery has been exchanged; and major deadlines have not been scheduled (e.g., *Markman* hearing, close of fact and expert discovery, pre-trial conference, and trial). (*See* ECF. No. 16). Transfer will create no practical problems because any delay associated with transfer is only relevant "in rare and special circumstances." *Radmax*, 720 F.3d at 289 (quoting *In re Horseshoe Ent.*, 337 F.3d 429, 435 (5th Cir. 2003)). Because this case is in its early stages, no such rare and special circumstances exist.

**C.      Public-Interest Factors**

1.      Administrative Difficulties Flowing from Court Congestion

"To the extent that court congestion is relevant [to a transfer motion], the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech*, 566 F.3d at 1347. However, "a court's general ability to set a fast-paced schedule is not particularly relevant to" the court congestion factor. *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. 2021) (quoting *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021)). Because this factor is frequently the "most speculative," where "other relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh all of those

other factors.'" *In re Apple*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. 2021) ((quoting *In re Genentech*, 566 F.3d at 1347)).

According to Lexis Litigation Analytics, the median time to trial for civil cases before this Court is 617 days. (Ex. W). The median time to trial for Judge Amos Mazzant is 580 days whereas Judge Sean Jordan has no such estimate. (*Id.*). While these statistics suggest that it is possible this case could reach trial sooner in the Sherman Division than this Division by approximately 37 days, that fact is "not particularly relevant to" the court-congestion factor. *In re DISH Network*, 2021 WL 4911981, at *4. This factor should be neutral.

### 2. The Local Interest in Having Localized Interests Decided at Home

This factor analyzes the "significant connections between a particular venue and the events that gave rise to a suit." *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. 2021). This factor considers the relationship between the dispute and the community where the jury pool will be drawn, as "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (citations omitted). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

Here, the Sherman Division has a more legitimate interest in resolving this dispute (relative to the Marshall Division) because at least some of the events relevant to this case occurred there. As previously explained, pre-litigation communications concerning the Asserted Patents occurred via PPS whose headquarters are in Frisco, Texas. Pandya Decl. ¶ 12; (Ex. D). Also, SAP, HPE, and PPS, each have offices located in the Sherman Division. Pandya Decl. ¶ 5; (Exs. D, I). Further, several witnesses are physically present within the Sherman Division: Ms. Kumar and Dr. Ho (Exs. G; S at 19, 27; AA ¶ 2, 6); Mr. Tumu and Mr. Padakal, Pandya Decl. ¶¶ 14–15; and Mr. Jones (Exs.

J at 21; V).  No entity or individual related to this case has a physical presence within the Marshall Division.  Pandya Decl. ¶ 5; (Exs. B, D, I, K, M, N).  These circumstances provide the Sherman Division with a greater localized interest in this case.  But Valtrus does not specify a meaningful connection between SPE and this Division.  In fact, Valtrus fails to demonstrate that SPE has any physical presence in this Division.  Rather, all related entities, potential witnesses, and relevant documents are closer or within the Sherman Division.  *Farmobile LLC v. Farmers Edge Inc.*, No. 2:21-cv-00411-JRG, 2022 WL 2653893, at *6 (E.D. Tex. July 7, 2022) (holding that the localized interest factor weighs in favor of transfer "where a movant has a local interest in the transferee venue and no presence in the transferor venue").  Therefore, as this Court has previously held, this factor favors transfer. *Viking Techs.*, 2021 WL 3520756, at *7 ("The Court agrees with Defendants that this factor favors transfer because, relative to the Marshall Division, potential jurors in the Sherman Division have a greater interest in adjudicating the rights of businesses that have a material physical presence in their immediate community.").

3.   The Familiarity of the Forum with the Law that Will Govern the Case and the Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law

The remaining two public-interest factors are neutral and not applicable to this Motion.

## IV.   CONCLUSION

On balance, the public- and private-interest factors either favor transfer or are neutral.  As the Fifth Circuit has counseled, "The facts and circumstances of this case are wholly grounded in the transferee forum (the [Sherman] Division), which is a clearly more convenient venue, and this case has no connection to the Marshall Division."  *In re Radmax*, 720 F.3d at 290 ("In *Volkswagen II*, 545 F.3d at 318, we classified as an 'extraordinary error[]' the 'fact that not a single relevant factor favors the [plaintiffs'] chosen venue.'").  SAP therefore requests that the Court grant its Motion and transfer this case to the Sherman Division under 28 U.S.C. § 1404(a).

Dated:   March 20, 2024

Respectfully submitted,

By:   */s/ Thomas M. Melsheimer*

Thomas M. Melsheimer
State Bar No. 13922550
tmelsheimer@winston.com
M. Brett Johnson
State Bar No. 00790975
mbjohnson@winston.com
Michael A. Bittner
State Bar No. 24064905
mbittner@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

**ATTORNEYS FOR
SAP AMERICA, INC. and SAP SE**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served by email on all counsel of record via email on March 20, 2024.

/s/ Thomas M. Melsheimer
Thomas M. Melsheimer

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned counsel certifies that on March 20, 2024, counsel for SAP conferred with counsel for Valtrus, and Valtrus opposes the Motion.

/s/ Thomas M. Melsheimer
Thomas M. Melsheimer

Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| Valtrus Innovations Ltd. | § | |
| | § | |
| **Plaintiff** | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | **2:24-CV-00021-JRG** |
| SAP America, Inc. and SAP, SE. | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## UNOPPOSED MOTION TO AMEND BRIEFING SCHEDULE FOR DEFENDANTS SAP AMERICA, INC. AND SAP SE'S MOTION FOR INTRADISTRICT TRANSFER

Plaintiff Valtrus Innovations Ltd. moves the court for an Order amending the briefing schedule for Defendants SAP America, Inc. and SAP SE's (collectively, "Defendants" or "SAP") Motion for Intradistrict Transfer Under 28 U.S.C. § 1404(a) (Dkt. No. 22, "Transfer Motion") filed on March 20, 2024. Defendants are unopposed to this request.

Good cause exists for the extension. Defendants' Transfer Motion presents factual issues about the evidence and witnesses that will be relevant to this case and the location(s) of such evidence and witnesses. Because of these issues, Plaintiff anticipates serving venue discovery on Defendants consisting of interrogatories, requests for production, and deposition notices related to certain facts surrounding the arguments raised in Defendants' Transfer Motion. Accordingly, Plaintiff asks that the Court enter an Order allowing Plaintiff to propound the following venue discovery (to be served within three (3) business days of this filing):

- 10 Requests for Production with responses due 14 calendar days after service

- 8 Interrogatories with responses due 14 calendar days after service

- 13 hours of deposition testimony (depositions of Defendants and their witnesses limited to 10 hours).

The parties have agreed that the above venue discovery will not count against the discovery limitations set forth in the parties' forthcoming Proposed Discovery Order. Additionally, to permit time to complete the requested discovery, Plaintiff respectfully requests that the Court enter an Order providing for (i) Plaintiff to raise any disputes regarding the sufficiency of any of Defendants' venue discovery responses to Plaintiff to the Court within seven calendar days after service of the response, unless otherwise agreed by the parties; (ii) the parties to complete venue discovery by the later of (a) May 15, 2024 or (b) if Plaintiff raises a dispute with the Court regarding the sufficiency of Defendants' venue discovery responses, within two weeks of the Court's order concerning any such dispute, unless the Court orders additional compliance, in which case, within two weeks after the date for such compliance; and (iii) Plaintiff to file its brief in opposition to Defendants' Transfer Motion within two weeks after the close of venue discovery.[1]

The parties have met and conferred, and Defendants are unopposed to the relief requested in this motion. Accordingly, Plaintiff requests the Court enter the attached proposed order.

---

[1] If there are delays regarding third-party venue discovery, the parties agree to negotiate in good faith to extend the close of venue discovery related to third parties and/or propose a supplemental briefing schedule to the Court.

Respectfully submitted,

/s/ *Matthew G. Berkowitz with permission Claire Abernathy Henry*
Matthew G. Berkowitz – LEAD ATTORNEY
Patrick Colsher
Savannah H. Carnes
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
scarnes@reichmanjorgensen.com

Philip J. Eklem
peklem@reichmanjorgensen.com
Reichman Jorgensen Lehman & Feldberg LLP
1909 K Street NW, Suite 800
Washington DC, 20006
Tel: (202) 894-7310

Khue V. Hoang
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com

*Of Counsel:*

Andrea L. Fair
Texas Bar No. 24078488
Claire Abernathy Henry
Texas State Bar No. 24053063

WARD, SMITH & HILL, PLLC
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
andrea@wsfirm.com
claire@wsfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF CONFERENCE

I certify that, pursuant to Local Rule CV-7(i), counsel for Valtrus Innovations Ltd. and Defendants SAP America, Inc. and SAP, SE have complied with the meet and confer requirement of the Court and this motion is unopposed. The parties met and conferred on March 27, 2024, and reached an agreement as to the form and substance of the attached order.

*/s/ Claire Abernathy Henry*
Claire Henry

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 2, 2024 the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel of record who have consented to electronic service.

*/s/ Claire Abernathy Henry*
Claire Henry

Exhibit C

Gregory S. Arovas, P.C. (*pro hac vice* forthcoming)
Todd M. Friedman, P.C. (*pro hac vice* forthcoming)
Christopher DeCoro (*pro hac vice* forthcoming)
Chris T. Ilardi (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800
garovas@kirkland.com
tfriedman@kirkland.com
cdecoro@kirkland.com
chris.ilardi@kirkland.com

Brandon H. Brown, P.C.
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400
bhbrown@kirkland.com

Tiffany M. Knapp (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500
tiffany.knapp@kirkland.com

*Attorneys for Plaintiff Red Hat, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RED HAT, INC., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 5:22-cv-5289 |
| | ) |
| v. | ) |
| | ) **COMPLAINT FOR TORTIOUS** |
| VALTRUS INNOVATIONS, LTD., | ) **INTERFERENCE AND** |
| | ) **DECLARATORY JUDGMENT** |
| Defendant. | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| | ) |
| | ) |

Plaintiff Red Hat, Inc. ("Red Hat"), for its complaint against Defendant Valtrus Innovations, Ltd. ("Valtrus" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.    This action arises from Valtrus's interference with Red Hat's contractual relationships with its customers by asserting false claims of patent infringement against use and sale by these customers of Red Hat Enterprise Linux ("RHEL" or "Red Hat Enterprise Linux"). Red Hat Enterprise Linux cannot infringe its patents because, as Valtrus knows, these products are already licensed. Valtrus's false assertions to the contrary amount to a bad faith attempt to extract unwarranted licensing payments by interfering with business operations and relationships of Red Hat and its customers.

2.    Moreover, even if the asserted patents were not licensed, Red Hat Enterprise Linux cannot infringe for the additional reason that it does not practice the patents asserted by Valtrus against Red Hat's customers. The infringement assertions are therefore groundless for this reason as well.

3.    To remove the cloud of false accusations and uncertainty that Valtrus has cast over Red Hat's customer relationships and products, Red Hat brings this action to seek relief for tortious interference with contractual relationships and to seek a declaration resolving the concrete and immediate controversy over alleged infringement of the asserted patents by Red Hat's products.

## PARTIES

4.    Plaintiff Red Hat, Inc., is a Delaware corporation with a principal place of business at 100 East Davie Street, Raleigh, North Carolina, 27601.

5.    On information and belief, defendant Valtrus Innovations, Ltd., is an Irish entity organized and existing under the laws of the Republic of Ireland. The address of the registered office of Valtrus is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

## JURISDICTION AND VENUE

6.    The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 2201, 1331, 1332, 1367, 1338(a), 2201. Regarding the action for tortious interference with contractual relationships, there is diversity of citizenship and the amount in controversy exceeds $75,000. The

COMPLAINT FOR TORTIOUS INTERFERENCE          1          Case No. 5:22-cv-5289
AND DECLARATORY JUDGMENT

actions for declaratory judgment of non-infringement arise under federal patent law.  All of these actions form part of the same case or controversy.

7.     Personal jurisdiction over Valtrus is appropriate here because Valtrus has purposefully directed activities or transactions to this forum and has performed acts purposefully availing itself of the privilege of conducting activities in this forum relating to the subject matter of this case.  Valtrus has tortiously interfered with Red Hat's contractual customer relationships through conduct directed at this District, including sending letters to multiple Red Hat customers located in this District containing false assertions of patent infringement.  On information and belief, Valtrus's assertions have included multiple instances of communications and interactions with Red Hat customers located in this District, including substantive technical conversations regarding Red Hat's software and its alleged infringement and substantive financial and business conversations regarding Red Hat customers' use of Red Hat software.  Further, on information and belief, Valtrus obtained several of the patents asserted by contracting with a Hewlett Packard entity and signatory located in this District.  Upon information and belief, this conduct directed at this District included an expectation by Valtrus of ongoing communications and interactions with inventors of certain asserted patents who are located in this District, as well as expected witnesses in this District regarding Valtrus's patent infringement allegations and licensing conduct.  Red Hat's allegations are made based on reasonable investigation and, to the extent necessary, can be further developed through jurisdictional discovery.

8.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the dispute occurred in this District and because the Court has personal jurisdiction over Valtrus, as alleged herein.

## DIVISIONAL ASSIGNMENT

9.     For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), a substantial portion of the events at issue occurred in San Jose, California, in the San Jose Division.

## BACKGROUND

10.     Red Hat was founded in 1993 and is the world's leading provider of enterprise open source solutions.  Red Hat offers a broad portfolio of software solutions, including the Linux operating

system, hybrid cloud infrastructure, middleware, agile integration, cloud-native application development, and management and automation solutions. Red Hat's offerings enable flexible, powerful IT infrastructure solutions for enterprises to work across platforms and environments and to benefit from the interoperability, workload portability, and flexibility of open source software in hybrid enterprise environments. As part of its efforts to operate transparently and responsibly, Red Hat is a leading contributor to free and open source software ("FOSS").

11. Over nearly three decades, Red Hat has grown from a handful of employees to over 20,000 employees. Red Hat has more than 100 locations in more than 40 countries. Throughout this growth, Red Hat has remained committed to the open source development model. Many of Red Hat's thousands of employees have contributed and continue to contribute to the FOSS ecosystem (including those products and/or services relevant in this action) by developing and releasing code under FOSS licenses.

12. The worldwide business community has come to trust and rely upon Red Hat's long-standing commitment to open source and transparent software development. Over 90% of Fortune 500 companies rely on Red Hat's technology in their computer systems, and Red Hat's open source solutions support the operations of every major commercial bank, healthcare provider, communication service provider, and airline, as well as many other businesses and organizations, throughout the world.

13. Red Hat's commitment to open source development is fueled by its substantial innovation in operating systems, data centers, application development, and more, all of which has led to industry recognition, including Forbes consistently ranking Red Hat as among the most innovative companies in the United States since 2012.

14. Intellectual property is an important part of Red Hat's innovation, and Red Hat engineers have submitted over 4,400 U.S. patent applications and have received over 3,400 U.S. patents.

15. Red Hat likewise respects the intellectual property rights of others. To that end, Red Hat stands by its software products and services, which are protected by the Red Hat Open Source

Assurance Program, under which Red Hat will defend and indemnify its customers against lawsuits alleging intellectual property infringement, subject to the terms of the publicly-available Open Source Assurance Agreement (attached as Exhibit 5). False claims of patent infringement, such as Valtrus's assertions discussed herein, undermine the trust and relationship between Red Hat and its customers regarding unhindered use of open source software solutions.

16. Red Hat opposes patent aggression against free and open source software. Since 2002, Red Hat has issued the Red Hat Patent Promise (attached as Exhibit 6), by which Red Hat agrees that to the extent a party makes, uses, sells, offers to sell, imports, or otherwise transfers covered free and open source software, Red Hat will not use such actions as a basis for enforcing its patents against that party. Red Hat has worked hard to discourage patent attacks against open source software, though this and a range of other initiatives. Red Hat has never used its patents offensively.

17. Red Hat Enterprise Linux is an open source, enterprise distribution of the Linux operating system made specifically for the business market. Red Hat Enterprise Linux is deployed in over 9 million physical servers (16% of all servers installed) and has evolved in tandem with information technology demands, including support for edge computing, hybrid cloud, SAP workloads, SQL servers, and containers. Red Hat Enterprise Linux runs a tremendous amount of business. For example, the software and applications running on Red Hat Enterprise Linux will touch $13 trillion of business revenue this year. And half of all new workloads in the past 24 months have been deployed on Red Hat Enterprise Linux.

18. On information and belief, Valtrus began contacting Red Hat Enterprise Linux customers in early 2021, including multiple customers located in this District. These customers contract with Red Hat and pay for subscriptions to Red Hat Enterprise Linux, which they use and rely upon for the operation of their businesses. On information and belief, these customers do not use modified or customized versions of Red Hat Enterprise Linux, but use Red Hat Enterprise Linux as it is provided by Red Hat.

19.     Valtrus has accused multiple Red Hat Enterprise Linux customers of infringing the patents identified below ("Valtrus Patents") through their use of the Red Hat Enterprise Linux product for its intended functionality:

       a.   U.S. Patent No. 8,230,204 ("the '204 Patent," attached as Ex. 1),

       b.   U.S. Patent No. 7,620,984 ("the '984 Patent," attached as Ex. 2),

       c.   U.S. Patent No. 7,383,471 ("the '471 Patent," attached as Ex. 3), and

       d.   U.S. Patent No. 7,533,109 ("the '109 Patent," attached as Ex. 4).

20.     On information and belief, Valtrus provided Red Hat's customers with claim charts purporting to demonstrate how at least one claim of the Valtrus Patents is allegedly infringed by Red Hat Enterprise Linux.  These claim charts rely almost exclusively upon Red Hat documentation (such as Red Hat product documentation, user manuals directing the operating of Red Hat software, and Red Hat websites) and accused Red Hat Enterprise Linux functionality.  The charts do not include any evidence or allegations that the customers infringe the limitations beyond their use of Red Hat Enterprise Linux as it is intended to be used, and implicitly include assertions of both direct infringement and indirect (joint and contributory) infringement by Red Hat.

21.     Red Hat and its software, and accordingly also Red Hat's customers, are the beneficiaries of multiple license agreements covering the Valtrus Patents, including the Open Invention Network License ("OIN License") and other licenses entered into by the patents' previous owners, Hewlett Packard Company and Hewlett Packard Enterprise Co. ("HPE").  These licenses encumber the Valtrus Patents and limit and/or bar Valtrus from obtaining royalties from Red Hat and users of its software.  On information and belief, Valtrus would have learned about licenses encumbering the Valtrus Patents during their efforts to acquire the patents.

22.     On information and belief, Valtrus has asserted to multiple Red Hat customers that they need a license to the Valtrus Patents due to their use of Red Hat Enterprise Linux—with the knowledge that these assertions are false because Red Hat Enterprise Linux is already covered by licenses to which Red Hat is a party.  On information and belief, Valtrus has failed to inform the Red Hat

customers it has contacted about these licenses, and has sought to obtain royalties to which it is not entitled.

23. Red Hat is contractually obligated to defend and indemnify its customers for patent infringement claims by Valtrus pursuant to various contracts, including the Red Hat Open Source Assurance Program and other contracts with customers. Red Hat has already received requests for indemnification as a result of Valtrus sending patent license demands to Red Hat customers.

24. In addition to being covered by a license, Red Hat Enterprise Linux does not infringe the Valtrus Patents and Red Hat has not induced others to infringe or contributed to the infringement by others of the Valtrus Patents because the claims of the patents are not practiced by Red Hat products.

25. Valtrus's bad faith assertions of patent infringement against Red Hat's customers and products have cast a cloud of false accusations and uncertainty over Red Hat's customer relationships in the apparent hope of seeking to leverage this harm to extract undeserved payments for patents that are already licensed and are in any event not infringed and have already caused damage to those relationships. Red Hat therefore brings this case to clear itself and its products and to protect its customer relationships from Valtrus's false assertions.

**COUNT I**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

26. Red Hat realleges and incorporates paragraphs 1 to 25 as if fully set forth herein.

27. Red Hat has maintained valid contracts with its customers regarding its Red Hat Enterprise Linux product.

28. On information and belief, Valtrus had knowledge of the existence of these valid contracts between Red Hat and its customers. For example, Valtrus has contacted multiple Red Hat customers regarding their use and/or sale of Red Hat Enterprise Linux, including multiple customers located in this District. On information and belief, Valtrus is aware that Red Hat's customers purchase, resell, subscribe to, and/or use Red Hat Enterprise Linux under contracts with Red Hat.

29. Valtrus knew that accusing Red Hat Enterprise Linux customers of infringement via their use and/or sale of Red Hat Enterprise Linux would necessarily cause interference with and

COMPLAINT FOR TORTIOUS INTERFERENCE        6        Case No. 5:22-cv-5289
AND DECLARATORY JUDGMENT

disruption of Red Hat's contractual relationship with its customers, including at least pursuant to the Red Hat Open Source Assurance Program as well as with Red Hat's ongoing subscription-based products.

30.     Valtrus has sent numerous letters to Red Hat customers that assert infringement of several Valtrus patents against Red Hat Enterprise Linux.  These assertions were made in bad faith despite, on information and belief, Valtrus knowing that Red Hat Enterprise Linux is already subject to multiple licenses encumbering the Valtrus patents and without Valtrus informing said customers of any such license.  This has been done in an apparent attempt by Valtrus to leverage the harm to Red Hat's customer relationships in order to extract undeserved licensing payments.

31.     Valtrus's conduct has interfered with Red Hat's contractual relationships with its customers and has harmed Red Hat, including by introducing false accusations and uncertainty into Red Hat's relationship and reputation with its customers and into customers' trust in Red Hat's long-standing commitment to open source and transparent software development.  As a result of Valtrus's assertions, Red Hat has already received indemnity requests from customers, which have and will continue to lead to customers questioning the value of Red Hat's products relative to other products. This makes Red Hat's performance under its contracts more costly and burdensome, including expenses already incurred by Red Hat for internal investigation regarding the claims made by Valtrus.

**COUNT II**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF**
**U.S. PATENT NO. 8,230,204**

32.     Red Hat realleges and incorporates paragraphs 1 to 31 as if fully set forth herein.

33.     Valtrus Innovations, Ltd. is the owner of the '204 Patent, entitled "Migration of system images."  The '204 Patent issued on July 24, 2012.

34.     As detailed above, Valtrus has sent patent assertion letters to multiple Red Hat Enterprise Linux customers, including multiple customers located in this District, alleging that Red Hat's customers require a license to the '204 Patent for their use and/or resale of Red Hat Enterprise Linux.

35. On information and belief, Valtrus has provided multiple Red Hat Enterprise Linux customers with a claim chart purporting to demonstrate how claim 1 of the '204 Patent is allegedly infringed by Red Hat Enterprise Linux. On information and belief, these claim charts rely almost entirely upon citations to Red Hat documents. Red Hat is also subject to indemnification obligations to its customers in connection with Valtrus's infringement assertions. There is thus a concrete and immediate controversy between Valtrus and Red Hat regarding alleged infringement of the '204 Patent by Red Hat products.

36. The use and distribution of Red Hat Enterprise Linux is licensed under the '204 Patent. Thus, the use and distribution of Red Hat Enterprise Linux, to the extent it allegedly practices the claims of the '204 Patent, does not infringe the '204 Patent because it is authorized and licensed.

37. Further, Red Hat Enterprise Linux (including Red Hat OpenShift and related products) does not infringe the '204 Patent and Red Hat has not contributed to or induced infringement of the '204 Patent for the additional reason that Red Hat products to not practice the limitations of the '204 patent. By way of example, neither Red Hat nor Red Hat Enterprise Linux has infringed any claim of the '204 Patent (under any sub-section of 35 U.S.C. § 271) because Red Hat Enterprise Linux does not "paus[e] operation of the process using hibernation semantics," as required by all the claims of the '204 Patent.

38. To resolve the controversy between the parties, Red Hat seeks a judicial declaration that Red Hat Enterprise Linux does not infringe any claim of the '204 Patent because Red Hat Enterprise Linux is authorized and licensed under the '204 Patent and because Red Hat Enterprise Linux does not practice any claim of the '204 Patent.

## COUNT III
### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF
### U.S. PATENT NO. 7,620,984

39. Red Hat realleges and incorporates paragraphs 1 to 38 as if fully set forth herein.

40. Valtrus Innovations Ltd., is the owner of the '984 Patent, entitled "Method of managing computer system." The '984 Patent issued on November 11, 2009.

41.     As detailed above, Valtrus has sent patent assertion letters to multiple Red Hat Enterprise Linux customers, including multiple customers located in this District, alleging that Red Hat's customers require a license to the '984 Patent for their use and/or resale of Red Hat Enterprise Linux.

42.     On information and belief, Valtrus has provided multiple Red Hat Enterprise Linux customers with a claim chart purporting to demonstrate how claim 1 of the '984 Patent is allegedly infringed by Red Hat Enterprise Linux.  On information and belief, these claim charts rely almost entirely upon citations to Red Hat documents.  Red Hat is also subject to indemnification obligations to its customers in connection with Valtrus's infringement assertions.  There is thus a concrete and immediate controversy between Valtrus and Red Hat regarding alleged infringement of the '984 Patent by Red Hat products.

43.     The use and distribution of Red Hat Enterprise Linux is licensed under the '984 Patent. Thus, the use and distribution of Red Hat Enterprise Linux, to the extent it allegedly practices the claims of the '984 Patent, does not infringe the '984 Patent because it is authorized and licensed.

44.     Further, Red Hat Enterprise Linux (including Red Hat OpenShift and related products) does not infringe the '984 Patent and Red Hat has not contributed to or induced infringement of the '984 Patent for the additional reason that Red Hat products to not practice the limitations of the '984 patent.  By way of example, neither Red Hat nor Red Hat Enterprise Linux has infringed any claim of the '984 Patent (under any sub-section of 35 U.S.C. § 271) because Red Hat Enterprise Linux does not comprise a "module modifying access control provided by the virtual machine monitor," as required by all the claims of the '984 Patent.

45.     To resolve the controversy between the parties, Red Hat seeks a judicial declaration that Red Hat Enterprise Linux does not infringe any claim of the '984 Patent because Red Hat Enterprise Linux is authorized and licensed under the '984 Patent and because Red Hat Enterprise Linux does not practice any claim of the '984 Patent.

**COUNT IV**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF**
**U.S. PATENT NO. 7,383,471**

46.     Red Hat realleges and incorporates paragraphs 1 to 45 as if fully set forth herein.

47.     Valtrus Innovations Ltd. is the owner of the '471 Patent, entitled "Diagnostic memory dumping." The '471 Patent issued on June 3, 2008.

48.     As detailed above, Valtrus has sent patent assertion letters to multiple Red Hat Enterprise Linux customers, including multiple customers located in this District, alleging that Red Hat's customers require a license to the '471 Patent for their use and/or resale of Red Hat Enterprise Linux.

49.     On information and belief, Valtrus has provided multiple Red Hat Enterprise Linux customers with a claim chart purporting to demonstrate how claim 1 of the '471 Patent is allegedly infringed by Red Hat Enterprise Linux. On information and belief, these claim charts rely almost entirely upon citations to Red Hat documents. Red Hat is also subject to indemnification obligations to its customers in connection with Valtrus's infringement assertions. There is thus a concrete and immediate controversy between Valtrus and Red Hat regarding alleged infringement of the '471 Patent by Red Hat products.

50.     The use and distribution of Red Hat Enterprise Linux is licensed under the '471 Patent. Thus, the use and distribution of Red Hat Enterprise Linux, to the extent it allegedly practices the claims of the '471 Patent, does not infringe the '471 Patent because it is authorized and licensed.

51.     Further, Red Hat Enterprise Linux (including Red Hat OpenShift and related products) does not infringe the '471 Patent and Red Hat has not contributed to or induced infringement of the '471 Patent for the additional reason that Red Hat products to not practice the limitations of the '471 patent. By way of example, neither Red Hat nor Red Hat Enterprise Linux has infringed any claim of the '471 Patent (under any sub-section of 35 U.S.C. § 271) because Red Hat Enterprise Linux does not "copy[] contents of a memory of the computer to a persistent storage device in response to [a] memory dump request," as required by all the claims of the '471 Patent.

52. To resolve the controversy between the parties, Red Hat seeks a judicial declaration that Red Hat Enterprise Linux does not infringe any claim of the '471 Patent because Red Hat Enterprise Linux is authorized and licensed under the '471 Patent and because Red Hat Enterprise Linux does not practice any claim of the '471 Patent.

**COUNT V**
**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF**
**U.S. PATENT NO. 7,533,109**

53. Red Hat realleges and incorporates paragraphs 1 to 52 as if fully set forth herein.

54. Valtrus Innovations Ltd. is the owner of the '109 Patent, entitled "System and method of providing reservation masks within a compute environment." The '109 Patent issued on May 12, 2009.

55. As detailed above, Valtrus has sent patent assertion letters to multiple Red Hat Enterprise Linux customers, including multiple customers located in this District, alleging that Red Hat's customers require a license to the '109 Patent for their use and/or resale of Red Hat Enterprise Linux.

56. On information and belief, Valtrus has provided multiple Red Hat Enterprise Linux customers with a claim chart purporting to demonstrate how claim 16 of the '109 Patent is allegedly infringed by Red Hat Enterprise Linux. On information and belief, these claim charts rely almost entirely upon citations to Red Hat documents. Red Hat is also subject to indemnification obligations to its customers in connection with Valtrus's infringement assertions. There is thus a concrete and immediate controversy between Valtrus and Red Hat regarding alleged infringement of the '109 Patent by Red Hat products.

57. The use and distribution of Red Hat Enterprise Linux is licensed under the '109 Patent. Thus, the use and distribution of Red Hat Enterprise Linux, to the extent it allegedly practices the claims of the '109 Patent, does not infringe the '109 Patent because it is authorized and licensed.

58. Further, Red Hat Enterprise Linux (including Red Hat OpenShift and related products) does not infringe the '109 Patent and Red Hat has not contributed to or induced infringement of the '109 Patent for the additional reason that Red Hat products to not practice the limitations of the '109

patent. By way of example, neither Red Hat nor Red Hat Enterprise Linux has infringed any claim of the '109 Patent (under any sub-section of 35 U.S.C. § 271) because Red Hat Enterprise Linux does not comprise executable instructions that "defin[e] a length of time for action on a particular [computing device operational] item and review[] the time information [of] the particular item to determine whether the length of time for action has passed or will pass while the particular item is in the queue in which it is positioned and therefore the particular item should be discarded," as required by all the claims of the '109 Patent.

59.     To resolve the controversy between the parties, Red Hat seeks a judicial declaration that Red Hat Enterprise Linux does not infringe any claim of the '109 Patent because Red Hat Enterprise Linux is authorized and licensed under the '109 Patent and because Red Hat Enterprise Linux does not practice any claim of the '109 Patent.

## JURY DEMAND

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. P. 38, Red Hat requests trial by jury for all causes of action, claims, or issues in this action that are so triable.

## REQUEST FOR RELIEF

WHEREFORE, Red Hat respectfully requests the Court to enter judgment in its favor and against the Defendant as follows:

1.     Judgment that Defendant is liable for tortious interference with contractual relationships between Red Hat and its customers;

2.     Damages in an amount to be determined at trial;

3.     Punitive damages in an amount to be determined at trial;

4.     Injunctive relief, including an order prohibiting Defendants and their officers, employees or agents from (1) asserting that Red Hat or its customers infringe the Valtrus Patents or any other patent; and (2) taking any action to suggest that Red Hat or its customers require a license from Defendant for use of the Valtrus Patents or any other patent.

5.     A declaration that neither Red Hat nor its products and/or services have infringed or do infringe under 35 U.S.C. § 271 any claim of the Valtrus Patents;

6.    Declaring this to be an exceptional case within the meaning of 35 U.S.C. § 285;

7.    For an award of costs and reasonable attorneys' fees incurred in connection with this action; and

8.    For such other and further relief as the Court deems just and proper.

DATED: September 16, 2022          Respectfully Submitted,

/s/ Brandon H. Brown, P.C.
Gregory S. Arovas, P.C. (*pro hac vice* forthcoming)
Todd M. Friedman, P.C. (*pro hac vice* forthcoming)
Christopher DeCoro (*pro hac vice* forthcoming)
Chris T. Ilardi (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800
garovas@kirkland.com
tfriedman@kirkland.com
cdecoro@kirkland.com
chris.ilardi@kirkland.com

Brandon H. Brown, P.C.
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400
bhbrown@kirkland.com

Tiffany M. Knapp (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500
tiffany.knapp@kirkland.com

*Attorneys for Plaintiff Red Hat, Inc.*

Exhibit D

Matthew G. Berkowitz (SBN 310426)
SHEARMAN & STERLING LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Fax: 650.838.3699
Email: matthew.berkowitz@sheaman.com

Thomas R. Makin (admitted *Pro Hac Vice*)
David J. Cooperberg (admitted *Pro Hac Vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212.848.4000
Email: thomas.makin@shearman.com
           david.cooperberg@shearman.com

L. Kieran Kieckhefer (SBN 251978)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
Fax: 415.616.1339
Email: kieran.kieckhefer@shearman.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RED HAT, INC., | Case No.: 4:22-cv-05289-YGR |
| Plaintiff, | **Hon. Judge Yvonne Gonzalez Rogers** |
| v. | **NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULES 12(B)(2) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| VALTRUS INNOVATIONS, LTD., | |
| Defendant. | Date:       January 17, 2023<br>Time:       2:00 p.m.<br>Location: Courtroom 1 – FOURTH FLOOR |
| | *[Declarations of Angela Quinlan, Paul Riley, and Matthew Berkowitz; and Proposed Order filed concurrently herewith]* |

1   TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

2   RECORD:

3        PLEASE TAKE NOTICE that on January 17, 2023 at 2:00 p.m., or as soon thereafter as the

4   matter may be heard before The Honorable Judge Yvonne Gonzalez Rogers in the United States

5   District Court for the Northern District of California in the Oakland Federal District Courthouse,

6   1301 Clay Street, Courtroom 1, Fourth Floor, Defendant Valtrus Innovations, Ltd. ("Valtrus" or

7   "Defendant") will and hereby does move the Court, for an order dismissing the Complaint filed by

8   Plaintiff Red Hat, Inc. ("Red Hat" or "Plaintiff") in its entirety pursuant to Rule 12(b)(2) of the

9   Federal Rules of Civil Procedure; and, in the alternative, Valtrus moves for an order dismissing Red

10  Hat's claim for tortious interference with contractual relations pursuant to Rule 12(b)(6) of the

11  Federal Rules of Civil Procedure.

12       This Motion is made on the grounds that the Court lacks personal jurisdiction over Valtrus

13  and that Red Hat has failed to state a claim for tortious interference with contractual relations.

14       Valtrus is an Irish entity with its principal place of business in Dublin, Ireland. Valtrus is not

15  registered to conduct business in California; does not have a registered agent for service of process in

16  California; does not have offices, employees, Board Members, service providers (other than lawyers),

17  contractors, equipment, bank accounts, or other assets in California; is not subject to and has never

18  paid taxes in California; does not manufacture or sell products in California; has never granted a post-

19  acquisition license of any patent at issue to a resident of this district; has not conducted live, in-person

20  meetings in this district concerning any of its patents; has not entered into California for any business

21  reason, including for the purpose of signing contracts; does not recruit employees in California; and

22  does not own, lease, or rent any property in California. Further, no lawsuit has ever been filed by

23  Valtrus in California for any reason. Valtrus's only lawsuit in the United States is a patent

24  infringement litigation against Google in the District Court for the Northern District of Texas.

25       An exercise of personal jurisdiction would also be unduly burdensome for Valtrus given that:

26  (i) it has no employees in the United States, (ii) its parent company, Key Patent Innovations, Ltd.

27  ("KPI," another Irish entity), has no employees in the United States; (iii) the company with which

28  KPI contracts to provide patent licensing consulting services to Valtrus—Patent Platform Services

LLC ("PPS")—is a Delaware entity with a principal place of business in Frisco, Texas; and (iv) the PPS employees responsible for preparing and presenting claim charts for and licensing the patents at issue reside in Texas, New Jersey, and Pennsylvania—not California. Nor does this district have a unique or particular interest in adjudicating this dispute, as Red Hat is a North Carolina company and therefore is also a non-resident.

For all of these reasons, exercising personal jurisdiction over Valtrus would not comport with due process. The present action should be dismissed.

With respect to Red Hat's tortious interference with contractual relations allegations, even if assumed to be true, they fail to establish anything beyond the mere, and improbable, possibility that the elements required to sustain its claim have been met. Red Hat does not specifically identify: any contracting parties, whether Valtrus approached any such party with an offer to license, or any breach or disruption to any specific contract (or for that matter, any other damage). In fact, Red Hat fails to specifically identify a single customer that has availed itself of Red Hat's optional Open Source Assurance Program—the contract with which Valtrus allegedly has interfered—under which Red Hat apparently assumes certain defense or indemnification duties. Further, Red Hat's allegations regarding Valtrus's knowledge and intentional acts, as well as Red Hat's allegations of actual breach or disruption, implausibly rest on (i) presumed knowledge of the contract by Valtrus and (ii) alleged third parties' enforcement—not breach—of their contracts with Red Hat. If this action is not dismissed for want of personal jurisdiction, Red Hat's tortious interference claim should be dismissed.

The Motion will be and is based on this Notice of Motion and Motion, the accompanying Memorandum, the accompanying declarations, the pleadings and papers filed herein, as well as upon such and other further matters, papers, and arguments as may be presented to the Court.

Dated:  December 7, 2022                Respectfully submitted,

By: */s/ Matthew G. Berkowitz*
    Matthew G. Berkowitz
    SHEARMAN & STERLING LLP

*Attorney for Defendant*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. iii

TABLE OF AUTHORITIES ........................................................................................... iv

STATEMENT OF THE ISSUES TO BE DECIDED.......................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.  PRELIMINARY STATEMENT ...........................................................................1

II.  THE PARTIES.......................................................................................................3

III.  LEGAL STANDARDS ..........................................................................................5

    A.  Exercising Personal Jurisdiction ...............................................................5

    B.  Pleading Requirements Under Rule 12(b)(6) ............................................7

IV.  ARGUMENT ..........................................................................................................8

    A.  This Court Lacks Personal Jurisdiction Over Valtrus...............................8

    B.  Red Hat Has Failed to State a Claim for Intentional Interference with Contractual Relations .................................................................................17

V.  CONCLUSION.....................................................................................................20

## **TABLE OF AUTHORITIES**

Page

**Cases**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358 (Fed. Cir. 2012)..................................6

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784 (9th Cir. 1977) .....................................6

*Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368 (Fed. Cir. 2022)....................................14, 15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................................13

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009) ...............5, 10, 12

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008) .............................5, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................7

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356 (Fed. Cir. 2006)......................................................................................6, 10

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017)....................................5, 6, 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...........................................................6

*Campbell Pet Co. v. Miale*, 541 F.3d 879 (Fed. Cir. 2008)......................................................8

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ..............................................................6, 8

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998).................................5

*Davis v. Nadrich*, 174 Cal. App. 4th 1, 94 Cal. Rptr. 3d 414 (2009) .......................................7, 17

*Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004)..........................................................................................6

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ..............................................7

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367 (Fed. Cir. 2004)......................................................................................18

*Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. 915 (2011)...............................5, 8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...........................9, 10

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) .....................5, 8

*Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000 (9th Cir. 2011)..................................................7

*Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No. 19-cv-01389-EJD,
2022 U.S. Dist. LEXIS 121213 (N.D. Cal. July 8, 2022)......................................11, 13, 15, 16

*Lyft, Inc. v. AGIS Software Dev. LLC*, No. 21-cv-04653-BLF, 2022 U.S. Dist.
LEXIS 16359 (N.D. Cal. Jan. 28, 2022)...............................................................................11

*Matthews Intern. Corp. v. Biosafe Engineering, LLC*, 695 F. 3d 1322 (Fed. Cir.
2012) ......................................................................................................................................18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) .................................6, 7

*New World Int'l, Inc. v. Ford Glob. Techs.*, LLC, 859 F.3d 1032 (Fed. Cir. 2017) ............6, 10, 12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir.
2008) ......................................................................................................................................12

*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) ....................................................8

*PNY Techs., Inc. v. Miller, Kaplan, Arase & Co, LLP*, No. 15-cv-01728-MMC,
2016 U.S. Dist. LEXIS 133837 (N.D. Cal. Sep. 28, 2016) ................................................19

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir.
1998) ......................................................................................................................................16

*Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147 (Fed. Cir. 2021).........................................15, 17

*Trindade v. Reach Media Grp., LLC*, No. 12-CV-4759-PSG, 2013 U.S. Dist.
LEXIS 107707 (N.D. Cal. July 31, 2013) ..........................................................................7, 18

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)..............................................14

*Xerox Corp. v. Monument Peak Ventures, LLC*, No. 20-CV-6263-FPG, 2021 U.S.
Dist. LEXIS 165011 (W.D.N.Y. Aug. 31, 2021)..................................................................16

**Statutes**

28 U.S.C. §1782.................................................................................................................................13

1
<u>**STATEMENT OF THE ISSUES TO BE DECIDED**</u>

2  1. Whether this Court lacks personal jurisdiction over Valtrus Innovations, Ltd., an Irish

3    entity with no place of business or employees based in California, in the instant action

4    for declaratory judgment and tortious interference.

5  2. Whether Red Hat has stated a plausible claim for relief for tortious interference with

6    contractual relations.

7
<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

8
**I. PRELIMINARY STATEMENT**

9   The instant action, which seeks a determination that Red Hat—a North Carolina company—

10 does not infringe, directly or indirectly, certain Valtrus patents, and which further asserts a tortious

11 interference claim against Valtrus, must be dismissed because this Court lacks personal jurisdiction

12 over Valtrus.

13   The sole allegations relied on by Red Hat in its Complaint to establish this Court's personal

14 jurisdiction over Valtrus are:

15  1. Valtrus sending notice of infringement to certain—*unnamed in the Complaint*—

16    customers of Red Hat in this district;

17  2. Valtrus having follow-up communications and interactions with certain of these

18    unnamed Red Hat customers in unspecified locations, some of which were allegedly

19    "substantive";

20  3. Valtrus obtaining "several of the patents asserted" in those letters by contracting with a

21    Hewlett Packard entity and signatory located in this District;[1] and

22

23

---

[1] The '204, '984, and '109 patents identified in Red Hat's Complaint were actually conveyed to Valtrus jointly by Hewlett Packard Enterprise Development LP ("HPED"), a Texas company with principal place of business in Houston, Texas, and Hewlett Packard Enterprise Company ("HPE"), a Delaware corporation identified as having a principal place of business in San Jose, California at the time of assignment; Declaration of Matthew G. Berkowitz ("Berkowitz Decl.") ¶ 3 (citing Ex. 1 thereto (public assignment record at USPTO)). The '471 patent identified in Red Hat's Complaint was conveyed to Valtrus indirectly by these same entities via OT Patent Escrow, LLC, a Delaware entity with principal place of business in Chicago, Illinois. Berkowitz Decl. ¶ 4 (citing Exs. 2 and 3 thereto (public assignment records at USPTO). On information and belief, HPE's principal place of business is now Spring, Texas. Berkowitz Decl. ¶ 5 (citing Ex. 4 thereto ("HPE celebrates grand opening of Houston headquarters")).

1

4. Red Hat's factually-unsupported presumption that there is "An expectation by Valtrus of ongoing communications and interactions with inventors of certain asserted patents who are located in this District, as well as [with] expected witnesses in this District regarding Valtrus's patent infringement allegations and licensing conduct."

Dkt. 1 ("Complaint") ¶ 7.

These vague allegations are insufficient for this Court to exercise personal jurisdiction over Valtrus in accordance with standards of federal due process and the California long-arm statute, given the undisputable facts.

Valtrus is an Irish entity with its principal place of business in Dublin, Ireland. Valtrus is not registered to conduct business in California; does not have a registered agent for service of process in California; does not have offices, employees, Board Members, service providers (other than lawyers), contractors, equipment, bank accounts, or other assets in California; is not subject to and has never paid taxes in California; does not manufacture or sell products in California; has never granted a post-acquisition license of any patent at issue to a resident of this district; has not conducted live, in-person meetings in this district concerning any of its patents; has not entered into California for any business reason, including for the purpose of signing contracts; does not recruit employees in California; and does not own, lease, or rent any property in California. Further, no lawsuit has ever been filed by Valtrus in California for any reason. Valtrus's only lawsuit in the United States is a patent infringement litigation filed by Valtrus against Google in the District Court for the Northern District of Texas.

An exercise of personal jurisdiction would also be unduly burdensome for Valtrus given that: (i) it has no employees in the United States, (ii) its parent company, Key Patent Innovations, Ltd. ("KPI," another Irish entity), has no employees in the United States; (iii) the company with which KPI contracts to provide patent licensing consulting services to Valtrus—Patent Platform Services LLC ("PPS")—is a Delaware entity with a principal place of business in Frisco, Texas; and (iv) the PPS employees responsible for preparing and presenting claim charts for and licensing the patents at issue reside in Texas, New Jersey, and Pennsylvania—not California. Declaration of Paul Riley

("Riley Decl.") ¶ 5. Nor does this district have a unique or particular interest in adjudicating this dispute, as Red Hat is a North Carolina company and therefore is also a non-resident.

Accordingly, Red Hat's Complaint for Declaratory Judgment should be dismissed for lack of personal jurisdiction.

With respect to Red Hat's tortious interference with contractual relations allegations, even if assumed to be true, they fail to establish anything beyond the mere, and improbable, possibility that the elements required to sustain its claim have been met. Red Hat does not specifically identify: any contracting parties, whether Valtrus approached any such party with an offer to license, or any breach or disruption to any specific contract (or for that matter, any other damage). In fact, Red Hat fails to specifically identify a single customer that has availed itself of Red Hat's optional Open Source Assurance Program—the contract with which Valtrus allegedly has interfered—under which Red Hat apparently assumes certain defense or indemnification duties. Further, Red Hat's allegations regarding Valtrus's knowledge and intentional acts, as well as Red Hat's allegations of actual breach or disruption, implausibly rest on (i) presumed knowledge of the contract by Valtrus and (ii) alleged third parties' enforcement—not breach—of their contracts with Red Hat. If this action is not dismissed for want of personal jurisdiction, Red Hat's tortious interference claim should be dismissed.

## II.  THE PARTIES

Valtrus is the sole owner of all rights and title in and to U.S. Patent Nos. 8,230,204 ("the '204 Patent), 7,620,984 ("the '984 Patent"), 7,383,471 ("the '471 Patent"), and 7,533,109 ("the '109 Patent") (collectively, "the Challenged Patents"). Complaint, ¶ 19.

Valtrus is an Irish entity with its principal place of business at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland. Complaint, ¶ 5; Declaration of Angela Quinlan ("Qunilan Decl.") ¶ 3. Valtrus's Managing Member is Angela Quinlan, who resides in Wicklow, Ireland. *Id*. ¶ 2. Valtrus's other board members are Máiréad Lyons and Glen Gibbons, who both reside in Ireland; Paul Riley, who resides in Pennsylvania; and Paul Seaman, who resides in New Jersey. *Id*. ¶ 4. Valtrus has no U.S. employees. *Id*. ¶ 5.

3

1    Valtrus is not registered to conduct business in California; does not have a registered agent for

2    service of process in California; does not have offices, employees, Board Members, service providers

3    (other than lawyers), contractors, equipment, bank accounts, or other assets in California; is not

4    subject to and has never paid taxes in California; does not manufacture or sell products in California;

5    has never granted a post-acquisition license of any patent at issue to a resident of this district; has not

6    conducted live, in-person meetings in this district concerning any of its patents; has not entered into

7    California for any business reason, including for the purpose of signing contracts; does not recruit

8    employees in California; and does not own, lease, or rent any property in California. Quinlan Decl. ¶

9    6. Further, no lawsuit has ever been filed by Valtrus in California for any reason. *Id*. ¶ 7. Valtrus's

10   only lawsuit in the United States is a patent infringement litigation filed by Valtrus against Google in

11   the District Court for the Northern District of Texas. *Id*. ¶ 8. Valtrus's parent, KPI, is also an Irish

12   entity with a principal place of business in Dublin, Ireland and has no employees in the United States.

13   *Id*. ¶ 9. KPI contracts with PPS, a Delaware entity with a principal place of business in Frisco, Texas,

14   to provide licensing consulting services to Valtrus. *Id*. ¶ 10.

15   The PPS employees responsible for preparing and presenting claim charts for and licensing

16   the patents at issue reside in Pennsylvania, New Jersey, and Texas—not in California. Riley Decl. ¶

17   5. These employees include Jin-Meng Ho, PPS Vice President and IP Fellow of PPS and primary

18   technical consultant regarding Valtrus patents, and Kalpana ("Kapu") Kumar, PPS's Chief Operating

19   Officer and primary patent licensing consultant regarding Valtrus patents, who each reside in Texas

20   (Ms. Kumar also maintains a second home in New Jersey). *Id*. ¶ 6.

21   After filing its Complaint, Red Hat attempted to serve it on Valtrus by serving it personally on

22   Ms. Quinlan in Ireland, Ms. Kapu at her second home in New Jersey, Mr. Seaman in New Jersey, and

23   Mr. Riley in Pennsylvania. Dkt. No. 21 at 1, 5, 8; Riley Decl. ¶¶ 2, 6; Quinlan Decl. ¶ 4.

24   Red Hat is a corporation existing under the laws of Delaware with its principal place of

25   business located in Raleigh, North Carolina.  Complaint, ¶ 4.

26

27

28

III.   **LEGAL STANDARDS**

A.   **Exercising Personal Jurisdiction**

Rule 12(b)(2) requires a district court to dismiss an action when the Court lacks personal jurisdiction over a defendant. In a case involving patent claims, like the present one, Federal Circuit law governs the inquiry into personal jurisdiction. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1340 (Fed. Cir. 2008) ("[B]ecause the non-patent issues in this case are 'intimately linked to patent law,' Federal Circuit law regarding due process must be applied to the question of personal jurisdiction over [Defendant] with respect to all claims.") (citation omitted).

Personal jurisdiction exists for an out-of-state defendant when the forum state's long-arm statute permits service of process and the assertion of personal jurisdiction does not violate federal due process. *Avocent Huntsville Corp.*, 552 F.3d at 1329. Because California's long-arm statute permits service of process to the full extent allowed by the due-process clause of the U.S. Constitution, the court's inquiry centers on whether jurisdiction comports with federal due process. *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998).

Under the due-process clause, courts have recognized "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citations omitted).

A court may exercise general jurisdiction over a corporate defendant only if the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1785 (2017) (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. 915, 919 (2011)).

Where a defendant is not subject to general personal jurisdiction in the forum state, a district court may nonetheless exercise specific personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1018 (Fed. Cir. 2009). The due-process inquiry for specific jurisdiction is whether the defendant has sufficient minimum contacts with the forum such that the assertion of jurisdiction in the forum "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (citations omitted);

5

*New World Int'l, Inc. v. Ford Glob. Techs*., LLC, 859 F.3d 1032, 1037 (Fed. Cir. 2017). "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (cleaned up). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*.

To establish specific jurisdiction, the plaintiff must demonstrate that "(1) the defendant purposefully directs its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc*., 444 F.3d 1356, 1363 (Fed. Cir. 2006). Whether assertion of personal jurisdiction is reasonable and fair is governed by the *Burger King* factors, which include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985),

The plaintiff bears the burden of making a *prima facie* showing that the defendant is subject to personal jurisdiction. *See Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004). In meeting this burden, the plaintiff cannot "simply rest on the bare allegations of its complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc*., 551 F.2d 784, 787 (9th Cir. 1977). And while the court must accept uncontested allegations as true, it need not consider "bare formulaic accusations" that a defendant maintains sufficient contacts with the forum state. *AFTG-TG, LLC v. Nuvoton Tech. Corp*., 689 F.3d 1358, 1365 (Fed. Cir. 2012).

In addition, the court also "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011).

### B.   Pleading Requirements Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, (2007)). To be "plausible on its face," a plaintiff's factual allegations must support a reasonable inference of liability stronger than a mere possibility; otherwise, the claim must be dismissed. *Iqbal*, 556 U.S. at 678-79. In other words, plaintiffs must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss under Rule 12(b)(6), the Court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). However, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Courts should not assume facts not alleged. *Iqbal*, 556 U.S. at 679. Nor must the court accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Also, as noted above, courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo*, 647 F.3d at 1223.

To state a claim for intentional interference with contractual relations under California law, a plaintiff must adequately plead facts sufficient to plausibly establish: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10, 94 Cal. Rptr. 3d 414, 421 (2009) (internal quotation and citation omitted); *see also Trindade v. Reach Media Grp., LLC*, No. 12-CV-4759-PSG, 2013 U.S. Dist. LEXIS 107707, at *51 (N.D. Cal. July 31, 2013).

## IV.    ARGUMENT

### A.    This Court Lacks Personal Jurisdiction Over Valtrus

This Court does not have personal jurisdiction over Valtrus. General jurisdiction does not exist because Valtrus is not "at home" in California. Specific jurisdiction is also lacking, both because Valtrus does not have the requisite minimum contacts with the district, and because the exercise of specific jurisdiction would not comport with traditional notions of fair play and substantial justice.

### 1.    General Jurisdiction Does Not Exist Over Valtrus Because Valtrus is Not "At Home" in California

General jurisdiction exists only when the defendant's contacts with the forum are so "continuous and systematic" that the defendant is "essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citing *Goodyear*, 564 at 919). "[S]poradic and insubstantial contacts with the forum state . . . are not sufficient." *Campbell Pet Co. v. Miale*, 541 F.3d 879, 884 (Fed. Cir. 2008). Moreover, "even continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Goodyear*, 564 U.S. at 927 (quoting *Int'l Shoe*, 326 U.S. at 318). Thus, the plaintiff bears a high burden to establish general jurisdiction. *Avocent*, 552 F.3d at 1330.

Although there is no concrete test for determining what contacts support exercise of general jurisdiction, the Supreme Court has held that the following contacts, taken together, satisfy due process: (1) maintaining an office in the forum state; (2) keeping company files and conducting directors' meetings in that office; (3) carrying on correspondence relating to the business in that office; (4) distributing salary checks drawn on active bank accounts located in the forum state; (5) engaging a bank from the forum state to act as a transfer agent; and (6) supervising from the forum state policies dealing with the rehabilitation of the corporation's properties outside the forum state. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952); *Daimler AG v. Bauman*, 571 U.S. 117, 129 (2014). The Supreme Court has also advised that the following factors may be relevant to the analysis: (1) having authorization to do business in the forum state; (2) having an agent for service of process within the forum; (3) selling products and soliciting business in the forum; (4) signing contracts in the forum; (5) recruiting employees from the forum state; and (6) owning real or personal

property in the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411, (1984).

None of these factors are present here. *See generally* Complaint.

It is undisputed that Valtrus is an Irish entity with its principal place of business located in Dublin, Ireland. Complaint, ¶ 5; Quinlan Decl. ¶ 3. Valtrus has no U.S. employees and its Board members reside outside this district. *Id*. ¶¶ 2, 4, and 5. Valtrus is not registered to conduct business in California and, in fact, does no business and has filed no lawsuits in this district. *See* above at Section II; Quinlan Decl. ¶¶ 6–7. Similarly, Valtrus's parent, KPI, is an Irish entity with a principal place of business in Dublin, Ireland; and it has no employees in the United States. *Id*. ¶ 9. And, while KPI contracts with PPS to provide licensing consulting services to Valtrus, PPS is a Delaware entity with a principal place of business in Frisco, Texas. Riley Decl. ¶ 4. The PPS employees responsible for preparing and presenting claim charts for and licensing the patents at issue reside in Pennsylvania, New Jersey, and Texas—not in California. *Id*. ¶ 5.

Red Hat does not specifically explain which, if any, of its allegations could support general jurisdiction. Instead, with respect to both its patent declaratory judgment claims and its "interference" claim),[2] Red Hat points to the following as allegedly supporting jurisdiction: Valtrus sending notice of infringement to certain—*unnamed*—customers of Red Hat in the district; Valtrus having follow-up communications and interactions with certain of these *unnamed* customers in *unspecified* locations, some of which were allegedly "substantive"; Valtrus obtaining "several of the patents asserted" by contracting with a Hewlett Packard entity and signatory located in this District; and Red Hat's factually-unsupported speculation that there is "An expectation by Valtrus of ongoing communications and interactions with inventors of certain asserted patents who are located in this District, as well as [with] expected witnesses in this District regarding Valtrus's patent infringement allegations and licensing conduct." Complaint, ¶ 7.

Red Hat's Complaint does not, and cannot, establish contacts that are so "continuous and systematic" as to render Valtrus "essentially at home" in California. *See Autogenomics, Inc*., 566 F.3d

---

[2] As discussed further below in Section IV.B, Red Hat's tortious interference allegations entirely fail to state a claim.

9

at 1017 (holding that "sporadic" or "insubstantial" contacts are not sufficient to establish personal jurisdiction). The allegations fall far short of what is required. *See Daimler*, 571 U.S. at 157 (defendant corporation with multiple offices, continuous operations, and billions of dollars in sales in California was not "at home" there because California was neither the defendant corporation's principal place of business nor its state of incorporation); *Helicopteros*, 466 U.S. at 416 (no general jurisdiction over defendant in Texas where defendant did not have a place of business in Texas and had never been licensed to do business in the state, even though defendant "[s]ent its chief executive officer to Houston for a contract-negotiation session; accept[ed] into its New York bank account checks drawn on a Houston bank; purchas[ed] helicopters, equipment, and training services from Bell Helicopter for substantial sums; and sen[t] personnel to Bell's facilities in Fort Worth for training"); *Autogenomics*, 566 F.3d at 1017-18 (no general jurisdiction in California over nonresident patent owner that did not have actual physical presence or license to do business in California—*even though* owner had attended three conferences in California, had collaborative agreement with California company, sold patented product in California that constituted about 1% of its revenue in year sold, had granted non-exclusive license to patent to California company, and representatives for owner had traveled to California to meet with representatives of plaintiff competitor to negotiate license).

    2. <u>Valtrus is Not Subject to Specific Personal Jurisdiction in California</u>

    To establish specific jurisdiction, the plaintiff must demonstrate that "(1) the defendant purposefully directs its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). The first two elements alternately referred to as "minimum contacts." *New World Int'l*, 859 F.3d at 1037. Specific jurisdiction focuses on the "relationship among the defendant, the forum, and the litigation." *Daimler*, 571 U.S. at 126. In the context of declaratory judgment actions against a patentee, "only enforcement or defense efforts related to the patent … are to be considered for establishing specific personal jurisdiction." *Autogenomics,* 566 F.3d at 1020; *see also New World Int'l*, 859 F.3d at 1040.

      a. Red Hat has not—and cannot—meet its burden of alleging minimum enforcement and defense efforts in this district.

Red Hat cannot show that "(1) the defendant purposefully directs its activities at residents of the forum, [and that] (2) the claim arises out of or relates to those activities."

With respect to both its declaratory judgment and "interference" claims in the Complaint, Red Hat asks this Court to exercise personal jurisdiction over Valtrus based solely on allegations that: Valtrus sent notices of infringement to certain—*unnamed*—customers of Red Hat in the district; Valtrus had follow-up communications and interactions with certain of these *unnamed* customers in *unspecified* locations, some of which were allegedly "substantive"; Valtrus obtained "several of the patents asserted" by contracting with a Hewlett Packard entity and signatory located in this District; and there is "An expectation by Valtrus of ongoing communications and interactions with inventors of certain asserted patents who are located in this District, as well as [with] expected witnesses in this District regarding Valtrus's patent infringement allegations and licensing conduct." Complaint, ¶ 7.

Red Hat does not, and cannot, assert that Valtrus has had communications with Red Hat in this district or elsewhere, Quinlan Decl. ¶ 11, which alone should render inadequate Valtrus's alleged contacts in this district. *Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No. 19-cv-01389-EJD, 2022 U.S. Dist. LEXIS 121213, at *19 (N.D. Cal. July 8, 2022) ("[T]he Court notes that neither [declaratory judgment] Plaintiff is a California resident nor are [declaratory judgment plaintiffs'] principal places of business located in California…. This alone distinguishes the present case from the body of Federal Circuit decisions that analyze whether a defendant's notice or infringement letter sent to a plaintiff would satisfy minimum contacts in plaintiff's home forum.").

Instead, Red Hat alleges that Valtrus has sent letters to certain *unnamed* customers of Red Hat in this district, and has had "conversations" with certain of these customers.[3]  These vague allegations fall far short of meeting Red Hat's burden of showing that Valtrus purposefully directed its activities at residents of the forum. *Lyft, Inc. v. AGIS Software Dev. LLC*, No. 21-cv-04653-BLF, 2022 U.S. Dist. LEXIS 16359, at *9 (N.D. Cal. Jan. 28, 2022) (finding general allegations of a patentee's

---

[3] Red Hat's failure to specifically name any customers in the district is curious in view of the fact that Red Hat has alleged certain specifics regarding alleged communications with such customers, including identifying specific patents at the core of the communications. Complaint, ¶¶ 34, 41, 48, and 55.

1  licensing negotiations with entities in the district insufficient to establish the requisite minimum

2  contacts to support an exercise of personal jurisdiction).

3          Red Hat's remaining allegations do not make up the difference.

4          Red Hat alleges that several of the patents asserted by Valtrus in letters to unnamed customers

5  were obtained "by contracting with a Hewlett Packard entity and signatory located in this District."

6  Complaint, ¶ 7. But Red Hat does not specify which Hewlett Packard entity or what, if any, interest

7  was conveyed by such entity. And, in fact, according to public records, the identified patents were

8  conveyed jointly by Hewlett Packard Enterprise Development LP ("HPED"), a Texas company with

9  principal place of business in Houston, Texas and Hewlett Packard Enterprise Company, a Delaware

10  corporation now headquartered in Spring Texas. Berkowitz Decl. ¶¶ 3–5, Ex.'s 1-4. And, in any

11  event, patent acquisition activity has no bearing on whether this Court has personal jurisdiction over

12  Valtrus. When deciding the question of personal jurisdiction over a foreign patentee in a declaratory

13  judgment action such as this one, it is only the patentee's enforcement or defense efforts relating to

14  the challenged patent(s) that are to be given any weight in the minimum contact analysis.

15  *Autogenomics*, 566 F.3d at 1020; *see also New World*, 859 F.3d at 1040.

16          Also inconsequential to the minimum contacts analysis is Red Hat's factually-unsupported

17  presumption that Valtrus has an "expectation … of ongoing communications and interactions with

18  [*unnamed*] inventors of certain asserted patents who are located in this District, as well as [*unnamed*]

19  expected witnesses in this District regarding Valtrus's patent infringement allegations and licensing

20  conduct." Complaint, ¶ 7. Valtrus has had no contact with the inventors of any Valtrus Patent, as

21  defined in paragraph seven of Red Hat's Complaint, or with "expected witnesses in this District

22  regarding Valtrus's patent infringement allegations and licensing conduct." Quinlan Decl. ¶ 13. In

23  fact, as of Red Hat's filing of this suit, and through to the present date, Valtrus has not brought any

24  actions in this, or any other district, for infringement of any of the patents that Red Hat identifies in

25  its Complaint. *Id.* And, of course, Red Hat's suit does not seek a finding of patent invalidity or

26  unenforceability; and an inventor's testimony is irrelevant to claim construction, *O2 Micro Int'l Ltd.*

27  *v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 n.3 (Fed. Cir. 2008). In other words, inventor

28

testimony is wholly irrelevant to this litigation, even if Valtrus had contacted them (which it did not). All of this only underscores the purely speculative nature of Red Hat's allegations.

As discussed above, it is undisputed that Valtrus is an Irish entity with its principal place of business located in Dublin, Ireland. Complaint, ¶ 5; Quinlan Decl. ¶ 3. Valtrus has no U.S. employees and its Board members reside outside this district. *Id*. ¶ 2, 4, and 5. Valtrus is not registered to conduct business in California and, in fact, does no business and has filed no lawsuits in this district. *See* above at Section II; Quinlan Decl. ¶¶ 6–7. Similarly, Valtrus's parent, KPI, is an Irish entity with a principal place of business in Dublin, Ireland; and it has no employees in the United States. *Id*. ¶ 9. And, while KPI contracts with PPS to provide licensing consulting services to Valtrus, PPS is a Delaware entity with a principal place of business in Frisco, Texas. Riley Decl. ¶ 4. The PPS employees responsible for preparing and presenting claim charts for and licensing the patents at issue reside in Pennsylvania, New Jersey, and Texas—not in California. *Id*. ¶ 5.

For all of these above reasons, Valtrus lacks the required minimum contacts, and Red Hat's claims should be dismissed for lack of personal jurisdiction.

Red Hat's personal jurisdiction case is far weaker than other cases in which no personal jurisdiction was found. For example, in *Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No. 19-cv-01389-EJD, 2022 U.S. Dist. LEXIS 121213 (N.D. Cal. July 8, 2022), this court found no "purposeful availment" of this forum by patentee, and thus no personal jurisdiction over patentee, despite: five years of patentee visiting the forum to discuss licensing; patentee's hiring of a U.S. attorney and resident of the district as the "Director, Worldwide Licensing"; patentee's licensing agreement and negotiations with a third-party forum resident; two of patentee's board members being district residents; and patentee's previously availing itself of this district court by requesting judicial assistance to compel documents pursuant to 28 U.S.C. § 1782. *Id*. at *32.

> b.  Personal jurisdiction over Valtrus would not comport with fair play and substantial justice.

"[T]he exercise of jurisdiction must be reasonable under the circumstances. The [*Burger King*] factors relevant to such an analysis include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief,

the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1786 (2017) (internal citations and quotations omitted).

As explained above, the only alleged contacts that Red Hat has identified that are theoretically relevant to the specific personal jurisdiction inquiry are Valtrus's notice letters and licensing communications with unspecified Red Hat customers in the district. Even if these licensing offers were somehow deemed sufficient to establish the requisite minimum contacts for personal jurisdiction, they are certainly insufficient to support a finding that personal jurisdiction would be fair or reasonable under the circumstances.

The first *Burger King* factor, the burden on Valtrus of litigating in California, is of "primary concern" in the reasonableness analysis. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). This factor weighs strongly against an exercise of personal jurisdiction.

Valtrus is an Irish entity, with no presence in California, as is its parent, KPI. Quinlan Decl. ¶¶ 2–7, and 9. Red Hat has not alleged, and Valtrus has not participated in, any live in-person meetings with Red Hat or its customers in this district. *Id.* ¶¶ 11–12. The Valtrus-related persons Red Hat sought to serve with the Complaint reside in Pennsylvania, New Jersey, and Texas. Riley Decl. ¶¶ 2, 6; Quinlan Decl. ¶ 4; Dkt. No. 21 at 1, 5, 8. Valtrus's primary technical consultant regarding Valtrus patents and its primary patent licensing consultant regarding Valtrus patents both live in Texas and work at PPS, a Delaware entity with a principal place of business in Frisco, Texas. Riley Decl. ¶¶ 4–6. And, Valtrus's only lawsuit in the United States is a patent infringement litigation filed by Valtrus in Texas against Google. Quinlan Decl. ¶¶ 7–8. Based on these facts, being haled into court in California would impose a substantial burden on Valtrus, and one that was not reasonably foreseeable. *Cf. Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1379-1380 (Fed. Cir. 2022) (finding exercise of personal jurisdiction not unreasonably burdensome where defendant had traveled to forum to meet plaintiff so as to establish a "territorial presence" that made suits there "reasonably foreseeable.").

The second *Burger King* factor, California's interest in adjudicating the dispute, likewise weighs against an exercise of personal jurisdiction over Valtrus.

As discussed directly above, Valtrus is an Irish entity with no place of business in California. Red Hat's principal place of business is in North Carolina. Complaint, ¶ 4. Thus, California has essentially no interest in this action. *See Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No. 19-cv-01389-EJD, 2022 U.S. Dist. LEXIS 121213, at *19 (N.D. Cal. July 8, 2022) (observing that a forum's interest is low where plaintiff does not reside in the forum); *Apple Inc. v. Zipit Wireless, Inc*., 30 F.4th 1368, 1380 (Fed. Cir. 2022) (stating that a forum's interest in adjudication is strongly dependent on whether the plaintiff resides in the forum).[4]

For at least the same reasons, the third *Burger King* factor—Red Hat's interest in obtaining convenient and effective relief—also weighs against an exercise of personal jurisdiction. Red Hat's principal place of business is in North Carolina, and Red Hat does not allege that it has any relevant employees or documents in California. In addition, Valtrus agrees—based on the facts presented above—that personal jurisdiction over Valtrus in this matter would be proper in Texas (Quinlan Decl. ¶ 14), which is a forum closer than California to North Carolina. Therefore, it cannot be said that litigating in this district would be required for Red Hat to obtain convenient and effective relief.

The fourth *Burger King* factor, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," necessarily includes resolution by negotiation and settlement. Therefore, it also weighs against an exercise of personal jurisdiction over Valtrus.

While the Federal Circuit has recently declared that there is no bright-line rule ***foreclosing*** the exercise of personal jurisdiction based on the direction of notice of infringement letters and related communications toward residents of a district (*see Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021)), courts have never held it reasonable to exercise personal jurisdiction over a patentee based on the type of contacts alleged here—*i.e.,* an indeterminate number of letters to

---

[4] Even though not properly alleged, Red Hat's tortious interference claim would have to presume that it owes defense and indemnity to the unnamed California customers, who Red Hat admits "do not use ***modified or customized*** versions of Red Hat Enterprise Linux." Complaint, ¶ 18 (emphasis added). Therefore, these unnamed customers (and, accordingly, California as well) have no real interest in the litigation. Also of note, the agreement allegedly tortiously interfered with has ***New York*** choice of law and a ***North Carolina*** forum. Complaint, Ex. 5.

unnamed residents in a district and certain follow-up communications. *See, e.g.*, *Xerox Corp. v. Monument Peak Ventures, LLC*, No. 20-CV-6263-FPG, 2021 U.S. Dist. LEXIS 165011, at *5–6, 10 (W.D.N.Y. Aug. 31, 2021) (finding exercise of specific personal jurisdiction over defendant in action seeking declaratory judgment of noninfringement unreasonable where minimum contacts were limited to licensing communications and discussions with in-district plaintiff and additional licensing communications with third parties in the district.); *cf. Apple Inc. v. Zipit Wireless, Inc*., 30 F.4th 1368, 1373, 1380 (Fed. Cir. 2022) (indicating that this factor weighs against a finding of personal jurisdiction over a defendant attempting to settle disputes out of court, unless defendant's efforts go further, *e.g.*, by extending communications over the course of several years, reaching beyond license negotiations to negotiations for the sale of its patents, and asserting willful infringement of the patents at issue). The reason courts decline to find personal jurisdiction over a patent-right holder under facts such as here is that "a right holder should be permitted to send a notice letter to a party in a particular forum to try to settle disputes without being haled into court in that forum." *Apple Inc. v. Zipit Wireless, Inc*., 30 F.4th 1368, 1377 (Fed. Cir. 2022).

The fifth *Burger King* factor, the shared interest of the several States in furthering fundamental substantive social policies, also weighs against exercising personal jurisdiction. There is no shared social policy interest of the several states that compels this court to burden defendant with an exercise of personal jurisdiction. To the contrary, the only shared social policy interest is the promotion of efficient out-of-court settlement without the risk of being haled into court wherever prospective licensees might be located.

Consistent with the above *Burger King* factor analysis, courts regularly conclude that it is unreasonable, and contrary to public interest, to exercise personal jurisdiction over foreign patentees merely based on licensing and other negotiations directed at private settlement of disputes. *Xerox Corp. v. Monument Peak Ventures, LLC*, No. 20-CV-6263-FPG, 2021 U.S. Dist. LEXIS 165011, at *5–6, 10 (W.D.N.Y. Aug. 31, 2021); *Lenovo (United States) Inc. v. IPCom GmbH & Co. KG*, No. 19-cv-01389-EJD, 2022 U.S. Dist. LEXIS 121213, at *32 (N.D. Cal. July 8, 2022); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355, 1357 (Fed. Cir. 1998) (finding lack of personal jurisdiction over patentee who had sent notice of infringement and follow-up communications to

declaratory judgment plaintiff in district); *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021) ("Red Wing remains correctly decided….").

### B. Red Hat Has Failed to State a Claim for Intentional Interference with Contractual Relations[5]

Under California law, and the pleading standards applicable to this Court, Red Hat is required to allege facts plausibly establishing each element of its claim for intentional interference with contractual relations, *i.e.*, (1) a valid contract between Red Hat and one of its customers; (2) Valtrus's knowledge of this contract; (3) Valtrus's intentional acts designed to induce a breach or disruption of the contract; (4) actual breach or disruption of the contract; and (5) resulting damage. *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10, 94 Cal. Rptr. 3d 414, 421 (2009).

Red Hat has failed to plausibly allege facts establishing any of these elements.

Critically, Red Hat's Complaint fails to sufficiently identify a single contract between itself and any third-party customer in this district, or elsewhere, *i.e.*, Red Hat fails to plausibly plead the first element of its tort claim. Surely, Red Hat would be in possession of facts sufficient to plausibly establish this claim element, were such facts in existence, yet Red Hat's Complaint instead relies on vague and conclusory statements—*e.g.,* "Red Hat has maintained valid contracts with its customers regarding its Red Hat Enterprise Linux product"—that fall far short of the required pleading standard.

Having failed to identify the contract with which Valtrus has allegedly interfered, Red Hat cannot, as a matter of logic, assert facts sufficient to plausibly establish the remaining claim elements. However, Red Hat's Complaint is deficient for the following additional reasons.

Regarding the second element of the intentional interference claim, Valtrus's knowledge of this contract, Red Hat fails to plausibly allege that Valtrus had knowledge of any contract between Red Hat and any unnamed customer allegedly contacted by Valtrus. At most, Red Hat merely alleges that certain of its customers worldwide have opted into the Red Hat Open Source Assurance Program, requiring Red Hat to undertake certain patent infringement defense and indemnification obligations.

---

[5] Though Red Hat's Complaint asserts a claim for tortious interference with contractual relations, no such claim exists under California law. Therefore, for the analysis herein, Valtrus interprets Red Hat's claim as one for intentional interference with contractual relations under California law. There is no California action for "negligent interference with contractual relationship." *See Davis v. Nadrich*, 174 Cal. App. 4th 1, 9, 94 Cal. Rptr. 3d 414, 421 (2009).

1  Complaint ¶¶ 23, 29. As expressly stated in the Red Hat Open Source Assurance Agreement

2  (Complaint, Ex. 5), Red Hat's customers are not automatically enrolled in this program; rather,

3  customers may voluntarily opt into the program by agreeing to certain terms, including the payment

4  of certain fees and providing Red Hat with the right to control and conduct the defense of the claim

5  for which indemnification is sought. Red Hat does not allege that Valtrus had knowledge of the

6  identity of its unnamed customers that have opted into this program. And, in fact, Valtrus has no

7  knowledge of whether any Red Hat customer in California has opted into the Red Hat Open Source

8  Assurance Program. Quinlan Decl. ¶ 15. Therefore, Red Hat fails to plausibly allege Valtrus's

9  knowledge of any contract. *Trindade v. Reach Media Grp., LLC*, No. 12-CV-4759-PSG, 2013 U.S.

10  Dist. LEXIS 107707, at *52-53 (N.D. Cal. July 31, 2013) (finding allegations suggesting only

11  "generalized knowledge" of contracts between a publisher network and its advertisers insufficient to

12  meet pleading standard for tortious interference of contractual relations claim).

13      Regarding the third element of the intentional interference claim, Red Hat fails to plausibly

14  allege that Valtrus committed intentional acts designed to induce a breach or disruption of any

15  presumed Red Hat contract—at least as a result of its failure to plausibly plead the first two elements:

16  existence of a specific contract and Valtrus's knowledge of that contract. *See Trindade*, 2013 U.S.

17  Dist. LEXIS 107707, at *52-53 ("Because [the complaint] fails to sufficiently allege that [defendant]

18  had anything more than generalized knowledge of any contractual relationships, it likewise fails to

19  allege that [defendant] developed the requisite intent to disrupt those relationships.").

20      But, even assuming Valtrus had knowledge of a particular contract between Red Hat and one

21  of its customers, sending a letter asserting that that contractee "need[s] a license to [a] Valtrus Patent"

22  (Complaint ¶ 22) does not plausibly establish an "intentional act" of interference. Federal law

23  preempts state law when it comes to sending such notices, and immunizes notices of infringement

24  and offers to license from tortious interference claims so long as patent holder's infringement

25  allegations are not "objectively baseless."  *See e.g.*, *Matthews Intern. Corp. v. Biosafe Engineering,*

26  *LLC*, 695 F. 3d 1322 (Fed. Cir. 2012) ("Federal patent law preempts state-law tort liability for a

27  patentholder's good faith conduct in communications asserting infringement of its patent and warning

28  about potential litigation.") (internal quotations omitted); *Globetrotter Software, Inc. v. Elan Comput.*

18

*Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) ("A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless."). Red Hat's claim for intentional interference with contractual relations does not allege facts that plausibly establish objective baselessness. Red Hat alleges only that Valtrus sent notices to Red Hat customers stating that Red Hat Enterprise Linux infringes several Valtrus patents "knowing that Red Hat Enterprise Linux is already subject to multiple licenses" (Complaint ¶¶ 30) that "limit and/or bar Valtrus from obtaining royalties from Red Hat and users of its software" (Complaint ¶ 21). Even if Valtrus had knowledge of any such licenses, Red Hat's complaint admits that such licenses may be *limited* and falls far short of plausibly alleging that any particular claim of infringement by a Red Hat customer is completely barred by any particular provision of a binding license agreement.

Further, it is illogical to infer Valtrus's intent to trigger a Red Hat contractee's breach or disruption of the Red Hat's Open Source Assurance Program—a program that grants the contractee "defense and indemnification rights" (Complaint ¶¶ 23, 29)—through Valtrus's alleged notice communications with such contractee. To the contrary, the logical deduction is that such contractees would fully comply with the terms of the Assurance Program upon receipt of such a notice from Valtrus. Red Hat's claim seems to be that Valtrus caused Red Hat customers to follow their contract and ask for an indemnity—a bargained-for cost and not an interference.

Regarding the fourth and fifth elements of the intentional interference claim, Red Hat fails to plausibly allege "actual breach or disruption of the contractual relationship" and "resulting damage." As an initial matter, Red Hat's Complaint does not identify which of its customers requested indemnification, or whether such customers reside in this district, deficiencies that independently render Red Hat's intentional interference claim deficient. Regardless, and as previously noted, Red Hat does not allege that any of its customers breached or otherwise sought to be excused from performance under any agreement as a result of any act of Valtrus. *See PNY Techs., Inc. v. Miller, Kaplan, Arase & Co, LLP*, No. 15-cv-01728-MMC, 2016 U.S. Dist. LEXIS 133837, at *31 (N.D. Cal. Sep. 28, 2016) (finding no breach or disruption where third-party contractee merely "sought to enforce the terms of the license agreement and included no claim seeking rescission or otherwise to

be excused from further performing thereunder.")   Red Hat can hardly claim "disruption" merely based on receiving claims for indemnification from unspecified customers, exactly as contemplated in the Open Source Assurance Program.

**V.     CONCLUSION**

        For the reasons described herein, Red Hat's Complaint should be dismissed in its entirety for reasons of lack of personal jurisdiction. In the alternative, Red Hat's claim for tortious interference with contractual relations should be dismissed for failure to state a claim.


Dated:  December 7, 2022                    Respectfully submitted,

                                            SHEARMAN & STERLING LLP


                                            By: */s/ Matthew G. Berkowitz*
                                                 Matthew G. Berkowitz

                                            *Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the Northern District of California using the CM/ECF System on December 7, 2022.

I certify that all counsel of record who are deemed to have consented to electronic service are being served on December 7, 2022 with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3). Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

Dated:  December 7, 2022               By: */s/ Matthew G. Berkowitz*
                                              Matthew G. Berkowitz

Exhibit E

1 | Gregory S. Arovas, P.C. (admitted *pro hac vice*)
2 | Todd M. Friedman, P.C. (admitted *pro hac vice*)
3 | Christopher DeCoro (admitted *pro hac vice*)
   | Chris T. Ilardi (admitted pro hac vice)
4 | KIRKLAND & ELLIS LLP
   | 601 Lexington Ave.
5 | New York, NY 10022
   | (212) 446-4800
6 | garovas@kirkland.com
   | tfriedman@kirkland.com
7 | cdecoro@kirkland.com
   | chris.ilardi@kirkland.com
8 |
9 | Brandon H. Brown, P.C.
   | KIRKLAND & ELLIS LLP
   | 555 California Street, 27th Floor
10 | San Francisco, CA 94104
   | (415) 439-1400
11 | bhbrown@kirkland.com
12 | Tiffany M. Knapp (admitted *pro hac vice*)
   | KIRKLAND & ELLIS LLP
13 | 200 Clarendon Street
   | Boston, MA 02116
14 | (617) 385-7500
   | tiffany.knapp@kirkland.com
15 |
16 | *Attorneys for Plaintiff*

Matthew G. Berkowitz (SBN 310426)
SHEARMAN & STERLING LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Fax: 650.838.3699
Email: matthew.berkowitz@sheaman.com

Thomas R. Makin (admitted *pro hac vice*)
David J. Cooperberg (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212.848.4000
Email: thomas.makin@shearman.com
        david.cooperberg@shearman.com

L. Kieran Kieckhefer (SBN 251978)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
Fax: 415.616.1339
Email: kieran.kieckhefer@shearman.com

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| RED HAT, INC., | Case No.: 4:22-cv-05289-YGR |
| Plaintiff, | **JOINT STIPULATION CONCERNING JURISDICTIONAL DISCOVERY** |
| v. | |
| VALTRUS INNOVATIONS, LTD., | **Hon. Judge Yvonne Gonzalez Rogers** |
| Defendant. | Complaint Filed: September 16, 2022 |

The parties in the above action, through counsel, stipulate to the following, including the following extensions made pursuant to Local Rule 6-1(a):

1. Plaintiff filed the Complaint in this action on September 16, 2022. (Dkt. 1).

2. Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) on December 7, 2022, asserting that this Court lacks personal jurisdiction over Defendant and that Complaint fails to state a plausible claim for relief for tortious interference with contractual relations. (Dkt. 39). Currently, Plaintiff's response brief is due December 21, 2022; Defendant's reply brief is due December 28, 2022; and the motion hearing is set for January 17, 2023. The parties agree that Plaintiff is entitled to discovery regarding personal jurisdiction and that the deadline for Plaintiff to respond to the motion should be stayed to allow Plaintiff the opportunity to complete this discovery. The parties agree that such discovery will be limited to facts related to the issues raised in Defendant's motion. The parties agree that they will negotiate in good faith to limit the scope and amount of discovery and the length of depositions. The parties further agree that they will negotiate in good faith as to the timing for responses to discovery requests with the goal of expediting response times and completing necessary discovery by the dates contemplated herein.

3. The parties agree that, provided that Plaintiff promptly serves focused discovery as set out above, and that the parties agree on scope by December 22, 2022, Defendant will substantially complete its production of documents and provide its final responses to the above-contemplated written discovery by January 20, 2023, and that all discovery (including depositions) will be completed by February 3, 2023.

4. The parties previously agreed that Defendant would answer or otherwise respond to the complaint on November 14, 2022. (Dkt. 9). The parties subsequently stipulated to additional extensions until November 28, 2022 and December 7, 2022. (Dkts. 34, 37).

5. The parties have now agreed that Plaintiff's response brief to Defendant's motion to dismiss will be due February 23, 2023, and that Defendant's reply brief will be due March 9, 2023.

6. The stipulated extension does not affect the initial case management conference, currently scheduled for January 23, 2023, or any other dates set by the Court's Notice Setting Case Management Conference (Dkt. 27), as modified by the Court's Notice Continuing Case Management Conference (Dkt. 33). However, the parties agree that further litigation, including contention discovery contemplated by the Local Patent Rules and other non-jurisdictional discovery should be stayed until resolution of Defendant's motion. The parties intend to file a joint motion to this effect.

Dated: December 15, 2022

Respectfully submitted,

By: */s/ Brandon Brown*

Gregory S. Arovas, P.C. (admitted *pro hac vice*)
Todd M. Friedman, P.C. (admitted *pro hac vice*)
Christopher DeCoro (admitted *pro hac vice*)
Chris T. Ilardi (admitted pro hac vice)
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800
garovas@kirkland.com
tfriedman@kirkland.com
cdecoro@kirkland.com
chris.ilardi@kirkland.com

Brandon H. Brown, P.C.
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400
bhbrown@kirkland.com

Tiffany M. Knapp (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500
tiffany.knapp@kirkland.com

*ATTORNEYS FOR PLAINTIFF RED HAT, INC.*

SHEARMAN & STERLING LLP

By: */s/ Matthew G. Berkowitz*
    Matthew G. Berkowitz
    SHEARMAN & STERLING LLP
    1460 El Camino Real, 2nd Floor
    Menlo Park, CA 94025
    Telephone: 650.838.3600
    Fax: 650.838.3699
    Email: matthew.berkowitz@sheaman.com

*Attorney for Valtrus Innovations, Ltd.*

## CIVIL LOCAL RULE 5-1 ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: December 15, 2022        */s/ Brandon H. Brown*
                                      Brandon H. Brown, P.C.

Exhibit F

Delaware.gov        Governor | General Assembly | Courts | Elected Officials | State Agencies

---

Department of State: Division of Corporations

Allowable Characters

| | |
|---|---|
| **HOME** | Entity Details |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | **5699265** | Incorporation Date / Formation Date: | **2/25/2015** (mm/dd/yyyy) |
| Entity Name: | **HEWLETT PACKARD ENTERPRISE COMPANY** | | |
| Entity Kind: | **Corporation** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | |
|---|---|
| Name: | **THE CORPORATION TRUST COMPANY** |
| Address: | **CORPORATION TRUST CENTER 1209 ORANGE ST** |
| City: | **WILMINGTON** |
| County: | **New Castle** |
| State: | **DE** |
| Postal Code: | **19801** |
| Phone: | **302-658-7581** |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]      [ New Entity Search ]

---

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware gov

_Delaware.gov_                                                    Governor | General Assembly | Courts | Elected Officials | State Agencies

---

Department of State: Division of Corporations

Allowable Characters

| HOME | Entity Details |
|------|----------------|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | **2945436** | Incorporation Date / Formation Date: | **9/17/1998** (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **RED HAT, INC.** | | |
| Entity Kind: | **Corporation** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **THE CORPORATION TRUST COMPANY** | | |
|---|---|---|---|
| Address: | **CORPORATION TRUST CENTER 1209 ORANGE ST** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **302-658-7581** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.
Would you like ○ Status ○ Status,Tax & History Information

Submit

View Search Results          New Entity Search

---

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware gov

_Delaware.gov | Governor | General Assembly | Courts | Elected Officials | State Agencies

---

Department of State: Division of Corporations

Allowable Characters

| HOME | Entity Details |
| --- | --- |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 2148316 | Incorporation Date / Formation Date: | 1/4/1988 (mm/dd/yyyy) |
| --- | --- | --- | --- |
| Entity Name: | SAP AMERICA, INC. | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | THE CORPORATION TRUST COMPANY | | |
| --- | --- | --- | --- |
| Address: | CORPORATION TRUST CENTER 1209 ORANGE ST | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19801 |
| Phone: | 302-658-7581 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[Submit]

[View Search Results]     [New Entity Search]

---

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware gov

_Delaware.gov · Governor | General Assembly | Courts | Elected Officials | State Agencies

---

Department of State: Division of Corporations

Allowable Characters

| | |
|---|---|
| **HOME** | Entity Details |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 3058821 | Incorporation Date /<br>Formation Date: | 6/18/1999<br>(mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | T-MOBILE USA, INC. | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | **CORPORATION SERVICE COMPANY** | | |
|---|---|---|---|
| Address: | **251 LITTLE FALLS DRIVE** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19808** |
| Phone: | **302-636-5401** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.
Would you like ○ Status ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]        [ New Entity Search ]

---

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware gov

Delaware.gov | Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

HOME

| Entity Details |
|---|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 2018751 | Incorporation Date / Formation Date: | 10/7/1983 (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | VERIZON COMMUNICATIONS INC. | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | THE CORPORATION TRUST COMPANY | | |
|---|---|---|---|
| Address: | CORPORATION TRUST CENTER 1209 ORANGE ST | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19801 |
| Phone: | 302-658-7581 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[Submit]

[View Search Results]     [New Entity Search]

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware gov